**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**

| | | |
|---|---|---|
| TERI DEAN, | ) | |
| | ) | |
| Plaintiff, | ) | Cause No. 5:19-cv-06022 |
| | ) | |
| v. | ) | JURY TRIAL DEMANDED |
| | ) | |
| EDWARD BEARDEN, | ) | |
| ELIJAH L. MOSIER, | ) | |
| TODD E. MUSTAIN, | ) | |
| KEVIN L. REED, | ) | |
|    All named individuals in their Individual | ) | |
|    Capacities, and | ) | |
| ANNE L. PRECYTHE, | ) | |
|    Director of the Missouri Department | ) | |
|    of Corrections, in her Individual and | ) | |
|    Official Capacities, | ) | |
| | ) | |
| Defendants. | ) | |

## FIRST AMENDED COMPLAINT

Plaintiff Teri Dean, by her attorneys, as and for her First Amended Complaint, hereinafter states and alleges as follows:

## PRELIMINARY STATEMENT

1. Plaintiff Teri Dean ("Plaintiff") was harassed, abused and sexually assaulted by Defendant Corrections Officers Edward Bearden, Elijah L. Mosier, Todd E. Mustain and Kevin L. Reed (collectively, "Defendant Corrections Officers" or "the Defendant Corrections Officers"). This harassment, abuse, and sexual assault all occurred while Plaintiff was confined at the Chillicothe Correctional Center, a women's prison in Missouri, between June 2012 and October 2018. Defendant Anne L. Precythe and other prison officials knew or should have known that the Defendant Corrections Officers were sexually assaulting Plaintiff and did nothing to prevent or stop the attacks. Plaintiff has suffered severe physical and emotional trauma due to the actions of

Defendants Edward Bearden, Elijah L. Mosier, Todd E. Mustain, Kevin L. Reed, and Anne L. Precythe ("Defendants" or "all Defendants").

2.     Plaintiff brings this action pursuant to 42 U.S.C §1983, seeking compensatory damages and punitive damages against all Defendants for violations of her constitutional rights while acting under color of state law, together with reasonable attorney's fees and costs pursuant to 42 U.S.C. §1988.

3.     Plaintiff also seeks injunctive relief under 18 U.S. Code § 3626.

4.     Plaintiff asserts various supplemental state law claims against each individual defendant.

## JURISDICTION AND VENUE

5.     Jurisdiction of the Court is properly invoked pursuant to federal question jurisdiction under 28 U.S.C. §§1331 and 1343(a)(3) and (4) and the aforementioned statutory provisions.

6.     Plaintiff's claim for attorney's fees and costs is authorized by 42 U.S.C. § 1988.

7.     Venue is proper pursuant to 28 U.S.C. §1391(b)(2).  All actions alleged herein occurred in Chillicothe, Missouri, which is located in the Western District of Missouri.

## PARTIES

8.     Plaintiff was at all relevant times an inmate of the Chillicothe Correctional Center, a women's prison run by the State of Missouri Department of Corrections.

9.     Defendant Edward Bearden (hereinafter "Bearden" or "Defendant Bearden") was at all relevant times a Corrections Officer at the Chillicothe Correctional Center.  Defendant Bearden ceased working at the Chillicothe Correctional Center in August 2018.  Defendant Bearden is sued in his individual capacity.

10.     Defendant Elijah L. Mosier (hereinafter "Mosier" or "Defendant Mosier") was at all relevant times a Sergeant at the Chillicothe Correctional Center.  Upon information and belief, Defendant Mosier is still employed at the prison.  Defendant Mosier is sued in his individual capacity.

11.     Defendant Todd E. Mustain (hereinafter "Mustain" or "Defendant Mustain") was at all relevant times a Corrections Officer at the Chillicothe Correctional Center. Upon information and belief, Defendant Mustain is still employed at the prison.  Defendant Mustain is sued in his individual capacity.

12.     Defendant Kevin L. Reed (hereinafter "Reed" or "Defendant Reed") was at all relevant times a Corrections Officer at the Chillicothe Correctional Center.  Upon information and belief, Defendant Reed is no longer employed at the prison and was escorted out of the prison in late-September or early-October 2018.  Defendant Reed is sued in his individual capacity.

13.     Defendant Anne L. Precythe (hereinafter "Precythe" or "Defendant Precythe") has been the Director of the Department of Corrections in the State of Missouri since February 9, 2017. Upon information and belief, Precythe is still the Missouri Director of the Department of Corrections.  Defendant Precythe is sued in her individual and official capacities.

## FACTS

14.     Plaintiff was at the Chillicothe Correctional Center between June 2012 and October 2018.

15.     In October 2018, Plaintiff was transferred to Women's Eastern Reception, Diagnostic and Correctional Center in Vandalia, Missouri ("Vandalia").

16.     Approximately fifteen years of Plaintiff's sentence remain.

17.     Plaintiff has routinely been subjected to horrific sexual misconduct by each of the Defendant Corrections Officers during her time at the Chillicothe Correctional Center.

18.     When Plaintiff finally felt safe enough to risk reporting the Defendant Corrections Officers' behavior, she experienced retaliation for her reports.

19.     On at least two occasions, Plaintiff has suffered retaliation during visits with her minor son.  During one visit with her son Plaintiff was pulled away for an "appointment" by someone she had never seen before even though she was in the middle of her son's visit.  On a different occasion, she missed her son's visit entirely because she was put in "the hole," which is the term for solitary confinement (a form of punishment for prisoners which deprives them of various privileges, including freedom to move within the prison and visits from family), for accidentally switching her phone call.

20.     Plaintiff was continuously retaliated against by being put in "the hole" on several occasions for occurrences that would otherwise not warrant this punishment.

21.     After Plaintiff reported Defendant Corrections Officers' inappropriate conduct, the Chillicothe Correctional Center listened to Plaintiff's phone calls and opened her mail.  Even when Plaintiff received appropriately marked "legal mail," her mail was routinely opened without her permission. Plaintiff's mail had also been significantly delayed in reaching her.

22.     After a trip to "the hole" for a "drug investigation" in July 2018, Plaintiff was not given her barbershop job back. This is despite the fact that she was put in "the hole" three separate times previously and was always given her job back.

23.     Plaintiff's personal pictures were also damaged, and coffee was spilled all over Plaintiff's possessions, all while she was in "the hole."

24.     In an alarming example of the retaliation Plaintiff has suffered, Plaintiff's personal calendar and journals were taken from her room and destroyed while she was in "the hole" for a "drug investigation." Other inmates at Chillicothe Correctional Center reported that the prison officers went through Plaintiff's property for approximately three hours. This calendar and these journals contained details of Defendant Corrections Officers' inappropriate conduct that Plaintiff has suffered during her time at the Chillicothe Correctional Center.

25.     Even Plaintiff's health has been the subject of pointed retaliation. Despite the fact that Plaintiff has Crohn's disease and must take medication every day, her Crohn's medication has been withheld from her.

26.     After coming forward, Plaintiff was abruptly transferred from Chillicothe to Vandalia in October 2018 while her attackers, namely Defendant Moiser and Defendant Mustain, remained employed at the Chillicothe Correctional Center.

   A.     SEXUAL MISCONDUCT BY DEFENDANT EDWARD BEARDEN

27.     Defendant Bearden's assaults of Plaintiff occurred from June 2012 through July 2018.

28.     Plaintiff was subjected to physical abuse by Defendant Bearden during her shifts at the barbershop as well between June 2013 and July 2018.

29.     On multiple occasions while Plaintiff cut Bearden's hair, Bearden would grope Plaintiff inappropriately. Bearden would also run his hands up Plaintiff's legs and rub his head in between her breasts. On at least two of these occasions, both in 2015, Plaintiff tried to prevent Bearden from groping her by cutting him with scissors. Both instances drew blood, but Bearden did not report Plaintiff either time.

30.     Defendant Bearden inappropriately groped Plaintiff every single time Plaintiff cut Bearden's hair.

31.     Defendant Bearden also forcefully sexually assaulted Plaintiff in other areas of the prison, namely in the utility closet in Seven House and the utility closet in the recreation ("rec") building.  When Plaintiff went to put towels away, for example, Bearden followed her into the closet and pushed her up against the wall.  Bearden attempted to slide his hands up inside Plaintiff's shirt on multiple occasions.

32.     Defendant Bearden repeatedly assaulted Plaintiff in this manner in the utility closet in the rec building eight to ten times.

33.     Defendant Bearden repeatedly assaulted Plaintiff in this manner in the utility closet on Seven House four to five times.

34.     In addition to grouping Plaintiff in the barbershop and in utility closets, Bearden conducted pat downs that were overly-violating between July 2012 and 2015, when Chillicothe Correctional Center finally banned cross-gender pat-downs.

35.     Specifically, Bearden began to regularly engage in overly-violating pat downs of Plaintiff while she was leaving the cafeteria. These pat downs were inappropriate, unwanted, and uncomfortable for Plaintiff.

36.     Defendant Bearden picked and chose women upon which he conducted overly-violating pat downs as they left the cafeteria. Bearden would frisk Plaintiff, and other women, so intrusively that he could tell if they were wearing a tampon or pad.

37.     Prior to implementation of the Prison Rape Elimination Act, in 2003, and more specifically prior to the Act's banning of cross-gender pat downs, in 2015, cross-gender pat downs were common occurrences at the Chillicothe Correctional Center.

38.     Defendant Bearden's overly-violating pat downs ended after the Chillicothe Correctional Center was prohibited from permitting cross-gender pat downs.

39.     Defendant Bearden also made inappropriate sexual gestures that were directed at Plaintiff while she was working in the barbershop.  Defendant Bearden gestured more than once at his groin area and described the length of his penis to Plaintiff.

40.     Whenever Defendant Bearden sat in the "bubble" of the hallway, a control center manned by the prison guards, he told Plaintiff to "come touch this" and gestured at his penis. Bearden also inappropriately directed Plaintiff to "look at my bulge."  These inappropriate sexual comments were made every time Bearden sat in the "bubble."

41.     Defendant also Bearden also verbally assaulted Plaintiff between June 2012 and July 2018.

42.     During Plaintiff's shifts at the barbershop, Defendant Bearden directed sexually aggressive comments at Plaintiff.  These comments included the following: "My boys are shaven" and "I have a man cut down there."

43.     During Plaintiff's shifts at the barbershop, Defendant Bearden made unsolicited, sexually suggestive comments to Plaintiff.  These comments included, "You look sexy today" and "I would like to pull your hair."

44.     In "reward" for his conduct, Bearden presented Plaintiff with confiscated items, such as colored pencils; however, Plaintiff refused all of Bearden's attempts at giving her these "gifts."

45.     Plaintiff was physically and emotionally injured by Defendant Bearden's attacks.

46.      All of the actions of Defendant Bearden were without the consent of Plaintiff, were offensive, unwanted and unwelcome, and caused Plaintiff's serious emotional and physical harm.

47.     All of Defendant Bearden's actions were done under color of state law.

**B.     SEXUAL MISCONDUCT BY DEFENDANT ELIJAH L. MOSIER**

48.     Defendant Mosier's assaults of Plaintiff occurred from 2013, when Plaintiff was moved to Seven House, through October 2018, when Plaintiff was transferred to Vandalia.

49.     Defendant Mosier both verbally and physically assaulted Plaintiff.

50.     Defendant Mosier's physical assaults of Plaintiff began in early-2014, when Plaintiff started the midnight shift at the barbershop, and continued through July/August 2018.

51.     Mosier pushed Plaintiff up against walls, pushed up against her, and rubbed his hands all over her.  Mosier also stuck his hands down Plaintiff's pants and proceeded to kiss her.

52.     Mosier attacked and assaulted Plaintiff in the utility closet in One House ("the hole"), the laundry room/storage area in One House ("the hole"), the utility closet in Seven House, and the laundry room in Seven House.

53.     Defendant Mosier has repeatedly attacked and assaulted Plaintiff between twenty and thirty times.

54.     Ten to twelve of Defendant Moiser's physical assaults on Plaintiff included digital penetration with two fingers.

55.     When Defendant Mosier sexually accosted Plaintiff, she feared to push him off because he was a higher-ranking sergeant within the Chillicothe Correctional Center.  During each of the sexual assaults, Plaintiff was concerned that pushing Mosier away could result in him wielding his high rank to punish Plaintiff by placing her in "the hole," destroying her room, or having her possessions taken from her room.

56. Defendant Mosier's verbal assaults on Plaintiff began in 2013, when Plaintiff was moved to 7 House, and continued through October 2018, when Plaintiff was transferred to Vandalia.

57. Specifically, Mosier made sexually suggestive comments directed at Plaintiff and frequently watched Plaintiff dress and undress. Defendant Mosier would say things like, "Let me see your boobs," and "I'll be by your room at 7:15."

58. Plaintiff never accepted presents from Defendant Mosier; however, Plaintiff's roommate at one time accepted benefits and presents from Defendant Mosier. In turn, Mosier would "write off their room" so that it would not be searched.

59. The Chillicothe Correctional Center was alerted about the relationship between Mosier and another offender. The other offender denied the existence of any such relationship with Mosier when the Chillicothe Correctional Center investigated the tip, but the other offender continued to tell Plaintiff the details of her relationship with Mosier up through early-October 2018 when Plaintiff left the Chillicothe Correctional Center.

60. Upon information and belief, Defendant Mosier has also assaulted three to four other women offenders currently incarcerated at the Chillicothe Correctional Center and continues to do so today violating federal and state law.

61. Plaintiff was physically and emotionally injured by Defendant Mosier's attacks.

62. All of the actions of Defendant Mosier were without the consent of Plaintiff, were offensive, unwanted and unwelcome, and caused Plaintiff serious emotional and physical harm.

63. All of Defendant Mosier's actions were done under color of state law.

## C.    SEXUAL MISCONDUCT BY DEFENDANT TODD E. MUSTAIN

64.    Defendant Mustain's assaults of Plaintiff occurred between late-2012, when Plaintiff was moved to Six House, and August 2018, when Plaintiff was last in "the hole" at Chillicothe Correctional Center.

65.    Defendant Mustain has both physically and verbally abused Plaintiff.

66.    Physically, Mustain followed Plaintiff into utility closets in Five House, Six House and Seven House, and rubbed Plaintiff's private parts over her clothes and attempted to kiss her.

67.    Defendant Mustain repeatedly attacked and assaulted Plaintiff four to five times.

68.    Utility closets were areas known by Defendant Mustain to be devoid of any security cameras.

69.    Verbally, Defendant Mustain directed sexually explicit comments at Plaintiff, such as, "I've been waiting to see what you looked like down there since you got here."

70.    Upon information and belief, Mustain also had a "voluntary relationship" with another offender who was later transferred to Vandalia after an investigation into her relationship with Mustain.  Mustain's actions with this other offender went without punishment.

71.    Upon information and belief, Mustain has been under investigation several times for over-familiarizing himself with offenders.

72.    At one point, Mustain was moved from the Six House to the 2 House (mental health house) in 2018, presumably to remove him from contact with certain offenders.

73.    Upon information and belief, Defendant Mustain continues to sexually assault women at the Chillicothe Correctional Center thereby continuously violating federal and state law.

74.    Plaintiff was physically and emotionally injured by Defendant Mustain's attacks.

75.     All of the actions of Defendant Mustain were without the consent of Plaintiff, were offensive, unwanted and unwelcome, and caused Plaintiff serious emotional and physical harm.

76.     All of Defendant Mustain's actions were done under color of state law.

### D.     SEXUAL MISCONDUCT BY DEFENDANT KEVIN L. REED

77.     Reed's assaults of Plaintiff occurred in December 2017.

78.     Upon information and belief, Reed worked in the prison kitchen in December 2017.

79.     Upon information and belief, Reed was escorted out of the Chillicothe Correctional Center in late-September or early-October 2018.

80.     Reed both verbally and physically assaulted Plaintiff in a sexual manner while Plaintiff worked in the kitchen, on the 4:00 a.m. – 10:00 a.m. shift, in December 2017.

81.     Reed verbally and physically assaulted Plaintiff in this sexual manner every day Plaintiff worked in December 2017.

82.     Reed routinely called Plaintiff into the kitchen solely so he could rub himself inappropriately against Plaintiff's body.  Reed physical assaults also resulted in him grabbing Plaintiff's breasts over her clothing.  These physical assaults also occurred in the kitchen's chemical closet.

83.     Reed also made sexually aggressive comments and gestures to Plaintiff.  On various occasions, Reed said, "I want to bend you over this desk," "I'd like you to get on top of me and sit on me," and "I'd like to get you on the office desk."  On more than one occasion, Reed would brandish a banana, cucumber or a carrot and say that he was "bigger than that," referring to the size of his penis.

84.     Plaintiff was physically and emotionally injured by Defendant Reed attacks.

85.     All of the actions of Defendant Reed were without the consent of Plaintiff, were offensive, unwanted and unwelcome, and caused Plaintiff serious emotional and physical harm.

86.     All of Defendant Reed's actions were done under color of state law.

**E.     PERSONAL INVOLVEMENT OF DEFENDANT ANNE L PRECYTHE**

87.     Defendant Precythe has been the Director of the Department of Corrections in the State of Missouri since February 9, 2017.

88.     On May 29, 2018, a lawsuit was filed against Defendant Bearden alleging sexual assaults.  Two more lawsuits with the same or similar allegations were filed shortly thereafter.

89.     By June 2, 2018, local and national newspapers highlighted that a Missouri prison guard had been sued three times, in federal court, for sexually assaulting "numerous female inmates at the Chillicothe Correctional Center."

90.     Defendant Precythe knew or should have known, by at least June 2018, about Defendant Bearden's propensity to engage in sexual behaviors with offenders at the Chillicothe Correctional Center.

91.     Upon information and belief, Precythe knew or should have known that Bearden was sexually assaulting Plaintiff.  It was Precythe's duty to discover and prevent sexual assaults of offenders at all Missouri penal institutions.  All of Defendant Precythe's actions were done under color of state law.

92.     Defendant Precythe allowed Defendant Bearden to remain at the Chillicothe Correctional Center though August 2018.

93.     Defendant Precythe allowed Defendant Bearden to continue having direct contact with the woman offenders at the Chillicothe Correctional Center though August 2018.

94.     Upon information and belief, Precythe knew or should have known that Mosier was also sexually assaulting Plaintiff.  It was Precythe's duty to discover and prevent sexual assaults of offenders at all Missouri penal institutions.  All of Defendant Precythe's actions were done under color of state law.

95.     Upon information and belief, Precythe knew or should have known that Mustain was also sexually assaulting Plaintiff.  It was Precythe's duty to discover and prevent sexual assaults of offenders at all Missouri penal institutions.  All of Defendant Precythe's actions were done under color of state law.

96.     Upon information and belief, Precythe knew or should have known that Reed was sexually assaulting or had sexually assaulted Plaintiff.  It was Precythe's duty to discover and prevent sexual assaults of offenders at all Missouri penal institutions.  All of Defendant Precythe's actions were done under color of state law.

97.     Defendant Precythe's actions and inactions allowed Plaintiff to suffer continuous and repeated sexual assaults while incarcerated at the Chillicothe Correctional Center.

98.     Defendant Precythe's actions and inactions allowed and continue to allow the Chillicothe Correctional Center to run as it does: allowing and encouraging continuous and repeated sexual assaults to occur to other woman offender's currently incarcerated at the Chillicothe Correctional Center.

**SECTION 1983 CLAIMS**

**COUNT I – DEFENDANT BEARDEN'S SEXUAL MISCONDUCT
VIOLATED THE 8TH AMENDMENT
(AGAINST DEFENDANT EDWARD BEARDEN)**

99.     Plaintiff incorporates and adopts by reference each and every allegation set forth in paragraphs 1 through 98 above as fully set forth herein.

100.     Bearden, at all relevant times, acted under color of state law.

101.     The acts and conduct of Bearden were calculated to and did deprive Plaintiff of her clearly established right to be free from cruel and unusual punishment in the form of violent bodily intrusion.

102.     As a direct and proximate result of the acts and conduct of Bearden, Plaintiff suffered serious bodily pain, injury, and emotional distress.

103.     The acts and conduct of Bearden were committed unlawfully, intentionally, and with malice or reckless disregard for the rights of Plaintiff.

## COUNT II – DEFENDANT MOSIER'S SEXUAL MISCONDUCT VIOLATED THE 8TH AMENDMENT (AGAINST DEFENDANT ELIJAH L. MOSIER)

104.     Plaintiff incorporates and adopts by reference each and every allegation set forth in paragraphs 1 through 98 above as fully set forth herein.

105.     Mosier, at all relevant times, acted under color of state law.

106.     The acts and conduct of Mosier were calculated to and did deprive Plaintiff of her clearly established right to be free from cruel and unusual punishment in the form of violent bodily intrusion.

107.     As a direct and proximate result of the acts and conduct of Mosier, Plaintiff suffered serious bodily pain, injury, and emotional distress.

108.     The acts and conduct of Mosier were committed unlawfully, intentionally, and with malice or reckless disregard for the rights of Plaintiff.

**COUNT III – DEFENDANT MUSTAIN'S SEXUAL MISCONDUCT
VIOLATED THE 8TH AMENDMENT
(AGAINST DEFENDANT TODD E. MUSTAIN)**

109. Plaintiff incorporates and adopts by reference each and every allegation set forth in paragraphs 1 through 98 above as fully set forth herein.

110. Mustain, at all relevant times, acted under color of state law.

111. The acts and conduct of Mustain were calculated to and did deprive Plaintiff of her clearly established right to be free from cruel and unusual punishment in the form of violent bodily intrusion.

112. As a direct and proximate result of the acts and conduct of Mustain, Plaintiff suffered serious bodily pain, injury, and emotional distress.

113. The acts and conduct of Mustain were committed unlawfully, intentionally, and with malice or reckless disregard for the rights of Plaintiff.

**COUNT IV – DEFENDANT REED'S SEXUAL MISCONDUCT
VIOLATED THE 8TH AMENDMENT
(AGAINST DEFENDANT KEVIN L. REED)**

114. Plaintiff incorporates and adopts by reference each and every allegation set forth in paragraphs 1 through 98 above as fully set forth herein.

115. Reed, at all relevant times, acted under color of state law.

116. The acts and conduct of Reed were calculated to and did deprive Plaintiff of her clearly established right to be free from cruel and unusual punishment in the form of violent bodily intrusion.

117. As a direct and proximate result of the acts and conduct of Reed, Plaintiff suffered serious bodily pain, injury, and emotional distress.

118.    The acts and conduct of Reed were committed unlawfully, intentionally, and with malice or reckless disregard for the rights of Plaintiff.

## COUNT V – DEFENDANT PRECYTHE'S FACILITATION OF INDIVIDUAL DEFENDANTS' MISCONDUCT VIOLATED THE 8TH AMENDMENT (AGAINST DEFENDANT ANNE L. PRECYTHE)

119.    Plaintiff incorporates and adopts by reference each and every allegation set forth in paragraphs 1 through 98 above as fully set forth herein.

120.    At all relevant times, Precythe was acting under color of state law.

121.    At all relevant times, Precythe was performing governmental functions.

122.    Precythe was responsible for the prevention of sexual violence against offenders in Missouri's correctional facilities, and through her acts and omissions, facilitated the sexual abuse of Plaintiff.

123.    By her policies, practices, acts and omissions, Precythe caused Plaintiff to be subjected to sexual assaults in violation of her rights under the Eighth Amendment.

124.    Upon information and belief, Precythe was specifically aware of widespread allegations of sexual misconduct at Missouri penal institutions.

125.    Upon information and belief, Precythe was specifically aware of allegations of sexual misconduct by Bearden prior to and during the course of his abuse of Plaintiff.

126.    Upon information and belief, Precythe was specifically aware of allegations of sexual misconduct by Mosier prior to and during the course of his abuse of Plaintiff.

127.    Upon information and belief, Precythe was specifically aware of allegations of sexual misconduct by Mustain prior to and during the course of his abuse of Plaintiff.

128.    Upon information and belief, Precythe was specifically aware of allegations of sexual misconduct by Reed prior to and during the course of his abuse of Plaintiff.

129. Defendant Precythe knew that staff who rape and sexually abuse inmates routinely utilize physical areas outside the view of monitored security cameras and other staff.

130. Defendant Precythe failed to employ obvious measures to reduce the risk of rape and sexual abuse of incarcerated inmates by corrections officers.

131. The pattern of sexual abuse by prison staff and the failure or refusal of Defendant Precythe to operate, supervise, maintain and control its operations properly and to take action to curb the misconduct, demonstrates a policy of deliberate indifference which tacitly authorized the abuse of Plaintiff.

132. The customs, policies, usages, practices, and procedures of Precythe constituted deliberate indifference to the safety, well-being and constitutional rights of the Plaintiff and were the direct and proximate cause of the constitutional violations suffered by Plaintiff as alleged herein.

133. The customs, policies, usages, practices, and procedures of Defendant Precythe were the moving force behind the constitutional violations suffered by Plaintiff as alleged herein.

134. Precythe has failed and continues to fail to protect Plaintiff from known and serious harm and has placed Plaintiff at the risk of irreparable harm where Defendant Mosier and Defendant Mustain remain employed by the Missouri Department of Corrections.

135. Precythe knew of or consciously disregarded the obvious risk of the constitutional harms perpetrated against Plaintiff and failed to intervene, mitigate, or stop the events.

136. Due to Precythe's practices and policies aforesaid, the Plaintiff suffered and continues to suffer physical, psychological and emotional injuries, pain, and suffering.

## MISSOURI STATE LAW CLAIMS

### COUNT VI – COMMON LAW NEGLIGENCE
### (AGAINST ALL DEFENDANTS IN THEIR INDIVIDUAL CAPACITIES)

137.   Plaintiff incorporates and adopts by reference each and every allegation set forth in paragraphs 1 through 136 above as fully set forth herein.

138.   Defendants Precythe, Bearden, Mosier, Mustain, and Reed ("Defendants") owed a duty of care to Plaintiff during the times she was in the care and control of Defendants.

139.   Defendants breached this duty of care to Plaintiff by failing to protect her from sexual abuse and harassment.

140.   As a direct and proximate result of Defendants' breach, Plaintiff suffered physical injury and emotional distress.

### COUNT VII – ASSAULT
### (AGAINST DEFENDANT EDWARD BEARDEN)

141.   Plaintiff incorporates and adopts by reference each and every allegation set forth in paragraphs 1 through 136 above as fully set forth herein.

142.   Between June 2012 and July 2018, Defendant Bearden made offensive comments and gestures towards Plaintiff with intent to cause Plaintiff bodily harm, offensive contact, and apprehension of bodily harm and offensive contact.

143.   Defendant Bearden was in the apparent present ability to effectuate these attempts.

144.   Defendant Bearden's attempts were unwanted, unlawful and unjustified.

145.   As a direct and proximate result of Defendant Bearden's attempts, Plaintiff was continuously caused to suffer great bodily harm, physical injuries, mental pain, and anguish.

## COUNT VIII – BATTERY
## (AGAINST DEFENDANT EDWARD BEARDEN)

146.    Plaintiff incorporates and adopts by reference each and every allegation set forth in paragraphs 1 through 136 above as fully set forth herein.

147.    Between June 2012 and July 2018, Defendant Bearden intentionally assaulted and touched Plaintiff.

148.    Defendant Bearden's actions were unwanted, unlawful and unjustified.

149.    Defendant Bearden's contact with Plaintiff was offensive and intended to place Plaintiff in apprehension of bodily harm.

150.    The touching by Defendant Bearden was offensive because it offended a reasonable sense of personal dignity.

151.    As a direct and proximate result of Defendant Bearden's batteries upon Plaintiff, Plaintiff was caused to suffer great bodily harm, physical injury, and mental pain and suffering.

## COUNT IX – NEGLIGENCE PER SE
## (AGAINST DEFENDANT EDWARD BEARDEN)

152.    Plaintiff incorporates and adopts by reference each and every allegation set forth in paragraphs 1 through 136 above as fully set forth herein.

153.    By and through the enactment of Section 566.145 of the Missouri Revised Statutes, the State of Missouri has proscribed all sexual contact with incarcerated individuals by staff working within a correctional facility.

154.    Plaintiff is a member of the class of individuals protected by Section 566.145.

155.    Defendant Bearden's actions violated the statute, directly and proximately resulting in injuries to Plaintiff of the exact nature intended to be prevented by the statute.

## COUNT X – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## (AGAINST DEFENDANT EDWARD BEARDEN)

156. Plaintiff incorporates and adopts by reference each and every allegation set forth in paragraphs 1 through 136 above as fully set forth herein.

157. In addition to repeated sexual assaults, Defendant Bearden used his position of trust and control within the Chillicothe Corrections Center to humiliate and degrade Plaintiff.

158. Defendant Bearden's conduct was intentional and his objective was to cause extreme emotional distress to Plaintiff.

159. Defendant Bearden's conduct was so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.

160. Defendant Bearden's conduct caused severe emotional distress to Plaintiff and this emotional distress resulted in bodily harm and mental anguish.

## COUNT XI – ASSAULT
## (AGAINST DEFENDANT ELIJAH L. MOSIER)

161. Plaintiff incorporates and adopts by reference each and every allegation set forth in paragraphs 1 through 136 above as fully set forth herein.

162. Between 2013 and July 2018, Defendant Mosier made offensive comments and gestures towards Plaintiff with intent to cause Plaintiff bodily harm, offensive contact, and apprehension of bodily harm and offensive contact.

163. Defendant Mosier was in the apparent present ability to effectuate these attempts.

164. Defendant Mosier's attempts were unwanted, unlawful and unjustified.

165. As a direct and proximate result of Defendant Mosier's attempts, Plaintiff was continuously caused to suffer great bodily harm, physical injuries, mental pain, and anguish.

## COUNT XII – BATTERY
## (AGAINST DEFENDANT ELIJAH L. MOSIER)

166.    Plaintiff incorporates and adopts by reference each and every allegation set forth in paragraphs 1 through 136 above as fully set forth herein.

167.    Between early-2014 and July/August 2018, Defendant Mosier intentionally assaulted and touched Plaintiff.

168.    Defendant Mosier's actions were unwanted, unlawful and unjustified.

169.    Defendant Mosier's contact with Plaintiff was offensive and intended to place Plaintiff in apprehension of bodily harm.

170.    The touching by Defendant Mosier was offensive because it offended a reasonable sense of personal dignity.

171.    As a direct and proximate result of Defendant Mosier's batteries upon Plaintiff, Plaintiff was caused to suffer great bodily harm, physical injury, and mental pain and suffering.

## COUNT XIII – NEGLIGENCE PER SE
## (AGAINST DEFENDANT ELIJAH L. MOSIER)

172.    Plaintiff incorporates and adopts by reference each and every allegation set forth in paragraphs 1 through 136 above as fully set forth herein.

173.    By and through the enactment of Section 566.145 of the Missouri Revised Statutes, the State of Missouri has proscribed all sexual contact with incarcerated individuals by staff working within a correctional facility.

174.    Plaintiff is a member of the class of individuals protected by Section 566.145.

175.    Defendant Mosier's actions violated the statute, directly and proximately resulting in injuries to Plaintiff of the exact nature intended to be prevented by the statute.

## COUNT XIV – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## (AGAINST DEFENDANT ELIJAH L. MOSIER)

176.    Plaintiff incorporates and adopts by reference each and every allegation set forth in paragraphs 1 through 136 above as fully set forth herein.

177.    In addition to repeated sexual assaults, Defendant Mosier used his position of trust and control within the Chillicothe Corrections Center to humiliate and degrade Plaintiff.

178.    Defendant Mosier's conduct was intentional and his objective was to cause extreme emotional distress to Plaintiff.

179.    Defendant Mosier's conduct was so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.

180.    Defendant Mosier's conduct caused severe emotional distress to Plaintiff and this emotional distress resulted in bodily harm and mental anguish.

## COUNT XV – ASSAULT
## (AGAINST DEFENDANT TODD E. MUSTAIN)

181.    Plaintiff incorporates and adopts by reference each and every allegation set forth in paragraphs 1 through 136 above as fully set forth herein.

182.    Between 2013 and 2018, Defendant Mustain made offensive comments and gestures towards Plaintiff with intent to cause Plaintiff bodily harm, offensive contact, and apprehension of bodily harm and offensive contact.

183.    Defendant Mustain was in the apparent present ability to effectuate these attempts.

184.    Defendant Mustain's attempts were unwanted, unlawful and unjustified.

185.    As a direct and proximate result of Defendant Mustain's attempts, Plaintiff was continuously caused to suffer great bodily harm, physical injuries, mental pain, and anguish.

## COUNT XVI – BATTERY
## (AGAINST DEFENDANT TODD E. MUSTAIN)

186.    Plaintiff incorporates and adopts by reference each and every allegation set forth in paragraphs 1 through 136 above as fully set forth herein.

187.    Between 2013 and 2018, Defendant Mustain intentionally assaulted and touched Plaintiff.

188.    Defendant Mustain's actions were unwanted, unlawful and unjustified.

189.    Defendant Mustain's contact with Plaintiff was offensive and intended to place Plaintiff in apprehension of bodily harm.

190.    The touching by Defendant Mustain was offensive because it offended a reasonable sense of personal dignity.

191.    As a direct and proximate result of Defendant Mustain's batteries upon Plaintiff, Plaintiff was caused to suffer great bodily harm, physical injury, and mental pain and suffering.

## COUNT XVII – NEGLIGENCE PER SE
## (AGAINST DEFENDANT TODD E. MUSTAIN)

192.    Plaintiff incorporates and adopts by reference each and every allegation set forth in paragraphs 1 through 136 above as fully set forth herein.

193.    By and through the enactment of Section 566.145 of the Missouri Revised Statutes, the State of Missouri has proscribed all sexual contact with incarcerated individuals by staff working within a correctional facility.

194.    Plaintiff is a member of the class of individuals protected by Section 566.145.

195.    Defendant Mustain's actions violated the statute, directly and proximately resulting in injuries to Plaintiff of the exact nature intended to be prevented by the statute.

## COUNT XVIII – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## (AGAINST DEFENDANT TODD E. MUSTAIN)

196.    Plaintiff incorporates and adopts by reference each and every allegation set forth in paragraphs 1 through 136 above as fully set forth herein.

197.    In addition to repeated sexual assaults, Defendant Mustain used his position of trust and control within the Chillicothe Corrections Center to humiliate and degrade Plaintiff.

198.    Defendant Mustain's conduct was intentional and his objective was to cause extreme emotional distress to Plaintiff.

199.    Defendant Mustain's conduct was so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.

200.    Defendant Mustain's conduct caused severe emotional distress to Plaintiff and this emotional distress resulted in bodily harm and mental anguish.

## COUNT XIX – ASSAULT
## (AGAINST DEFENDANT KEVIN L. REED)

201.    Plaintiff incorporates and adopts by reference each and every allegation set forth in paragraphs 1 through 136 above as fully set forth herein.

202.    In December 2017, Defendant Reed made offensive comments and gestures towards Plaintiff with intent to cause Plaintiff bodily harm, offensive contact, and apprehension of bodily harm and offensive contact.

203.    Defendant Reed was in the apparent present ability to effectuate these attempts.

204.    Defendant Reed's attempts were unwanted, unlawful and unjustified.

205.    As a direct and proximate result of Defendant Reed's attempts, Plaintiff was continuously caused to suffer great bodily harm, physical injuries, mental pain, and anguish.

## COUNT XX – BATTERY
### (AGAINST DEFENDANT KEVIN L. REED)

206. Plaintiff incorporates and adopts by reference each and every allegation set forth in paragraphs 1 through 136 above as fully set forth herein.

207. In December 2017, Defendant Reed intentionally assaulted and touched Plaintiff.

208. Defendant Reed's actions were unwanted, unlawful and unjustified.

209. Defendant Mustain's contact with Plaintiff was offensive and intended to place Plaintiff in apprehension of bodily harm.

210. The touching by Defendant Reed was offensive because it offended a reasonable sense of personal dignity.

211. As a direct and proximate result of Defendant Reed's batteries upon Plaintiff, Plaintiff was caused to suffer great bodily harm, physical injury, and mental pain and suffering.

## COUNT XXI – NEGLIGENCE PER SE
### (AGAINST DEFENDANT KEVIN L. REED)

212. Plaintiff incorporates and adopts by reference each and every allegation set forth in paragraphs 1 through 136 above as fully set forth herein.

213. By and through the enactment of Section 566.145 of the Missouri Revised Statutes, the State of Missouri has proscribed all sexual contact with incarcerated individuals by staff working within a correctional facility.

214. Plaintiff is a member of the class of individuals protected by Section 566.145.

215. Defendant Mustain's actions violated the statute, directly and proximately resulting in injuries to Plaintiff of the exact nature intended to be prevented by the statute.

## COUNT XXII – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## (AGAINST DEFENDANT KEVIN L. REED)

216.    Plaintiff incorporates and adopts by reference each and every allegation set forth in paragraphs 1 through 136 above as fully set forth herein.

217.    In addition to repeated sexual assaults, Defendant Reed used his position of trust and control within the Chillicothe Corrections Center to humiliate and degrade Plaintiff.

218.    Defendant Reed's conduct was intentional and his objective was to cause extreme emotional distress to Plaintiff.

219.    Defendant Reed's conduct was so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.

220.    Defendant Reed's conduct caused severe emotional distress to Plaintiff and this emotional distress resulted in bodily harm and mental anguish.

## COUNT XXIII – NEGLIGENCE
## (AGAINST DEFENDANT ANNE L. PRECYTHE IN HER INDIVIDUAL CAPACITY)

221.    Plaintiff incorporates and adopts by reference each and every allegation set forth in paragraphs 1 through 136 above as fully set forth herein.

222.    Defendant Precythe owed Plaintiff and others a duty to take reasonable steps to ensure Plaintiff and others are not repeatedly sexually assaulted while incarcerated.

223.    Defendant Precythe owed Plaintiff a duty to protect her and keep her safe from being sexually assaulted.

224.    Defendant Precythe breached her duty of care and was thereby negligent in that she:

a.  Failed to employ obvious measures to reduce the risk of rape and sexual abuse of incarcerated offenders by Correctional Officers at the Chillicothe Correctional Center;

b.  Failed to ensure security cameras were installed in all areas of the Chillicothe Correctional Center;

c.  Failed to ensure security cameras were watched at the Chillicothe Correctional Center to prevent officers from going into areas with offenders alone;

d.  Failed to remove Defendant Bearden from Chillicothe Correctional Center at any time after federal lawsuits were pending against him alleging sexual behaviors, specifically assaults, with/on offenders;

e.  Allowed Defendant Bearden to continue working at Chillicothe Correctional Center with direct contact with offenders when she knew or should have known about Defendant Bearden's propensity to engage in sexual behaviors with offenders;

f.  Allowed Defendant Moiser to continue working at Chillicothe Correctional Center with direct contact with offenders when she knew or should have known about Defendant Moiser's propensity to engage in sexual behaviors with offenders;

g.  Allowed Defendant Mustain to continue working at Chillicothe Correctional Center with direct contact with offenders when she knew or should have known about Defendant Mustain's propensity to engage in sexual behaviors with offenders;

225.     As a direct and proximate result of Defendant Precythe's actions and inactions, set forth in previous paragraphs, Plaintiff has suffered permanent and progressive physical and mental injuries including past, present and future physical and mental pain and suffering.

**COUNT XXIV – VICARIOUS LIABILITY/RESPONDEAT SUPERIOR**
**(AGAINST DEFENDANT ANNE L. PRECYTHE IN HER INDIVIDUAL CAPACITY)**

226.     Plaintiff incorporates and adopts by reference each and every allegation set forth in paragraphs 1 through 136 above as fully set forth herein.

227.     As to Counts I-IV, VI-XXII, Precythe was the employer of the Defendant Corrections Officers, with the attendant right to control their actions in the scope of their employment. Furthermore, the injuries caused by Bearden, Mosier, Mustain, and Reed occurred within the scope of their employment.

228.     Precythe is vicariously liable for counts I-IV, VI-XXII.

**COUNT XXV – PREMISES LIABILITY**
**(AGAINST DEFENDANT ANNE L. PRECYTHE IN HER INDIVIDUAL CAPACITY)**

229.     Plaintiff incorporates and adopts by reference each and every allegation set forth in paragraphs 1 through 136 above as fully set forth herein.

230.     Precythe at all times relevant controlled or had the right to control the space in which the Defendant Corrections Officers assaulted Plaintiff.

231.     There existed a defective and dangerous condition at the prison in that the physical layout of the facilities were such that the Defendant Corrections Officers could sexually assault Plaintiff out of the view of other Department of Corrections staff, and out of the view of surveillance cameras.

232.     These defective and dangerous conditions created a condition through which the Defendant Corrections Officers were able to sexually assault Plaintiff without being discovered.

233. Precythe knew or by using ordinary care could have known of this condition.

234. Precythe failed to use ordinary care to eliminate this condition and failed to use ordinary care to warn Plaintiff of the condition.

235. Such failures by Precythe caused or contributed to cause the numerous and repeated assaults on Plaintiff by the Defendant Correcions Officers.

236. Plaintiff was harmed and sustained damage as a result of these failures by Precythe.

## JURY DEMAND

237. Plaintiff hereby demands a trial by jury of all issues in this matter.

## RELIEF

WHEREFORE, Plaintiff prays for a Judgment against Defendants, jointly and severally, for medical costs to be incurred, other compensatory damages in an amount to be determined at trial, punitive damages against all defendants in an amount to be determined at trial, attorney's fees, costs and disbursements pursuant to law, and such other and further relief as this Court deems just and proper.

Furthermore, Plaintiff prays for prospective injunctive relief under 18 U.S. Code § 3626 against Anne L. Precythe, in her official capacity, to remove Defendant Mustain and Defendant Moiser from the Chillicothe Correctional Center immediately to prevent a continuation and repeated violation of federal law. Plaintiff further prays that Defendant Mustain and Defendant Moiser are banned from ever working at the Chillicothe Correctional Center or any other women's prison's run by the Missouri Department of Corrections, and such other and further relief as this Court deems just and proper.

Respectfully submitted,

/s/ Jenifer C. Snow
Jenifer C. Snow, Mo. #67345
Ryan J. Gavin, Mo. #48691
Kamykowski, Gavin & Smith, P.C.
222 S. Central, Suite 1100
St. Louis, Mo. 63105
314-665-3280 fax: 314-762-6721
jenifer@kgslawfirm.com
ryan@kgslawfirm.com

John. J. Ammann, Mo. #34308
Brendan D. Roediger, Mo. #60585
Susan McGraugh, Mo. #37430
Saint Louis University Legal Clinic
100 North Tucker
St. Louis, Mo. 63101
314-977-2778 fax: 314-977-1180
john.ammann@slu.edu
brendan.roediger@slu.edu
susan.mcgraugh@slu.edu

***Attorneys for Plaintiff Teri Dean***