## Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

Karen Backues Keil,   )
                      )
     Plaintiff,       )
                      )
v.                    ) Case No. 5:18-CV-06074-BP
                      )
MHM Services, Inc.,   )
a Virginia Corporation )
John Dunn, and        )
Edward Bearden,       )
                      )
     Defendants.      )

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

Lynnsey Betz,         )
                      )
     Plaintiff,       )
v.                    ) Case No. 5:18-CV-06079-FJG
                      )
Edward Bearden, et al., )
                      )
     Defendants.      )

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

Ashley Zieser,        )
                      )
     Plaintiff,       )
v.                    ) Case No. 5:18-CV-06103-FJG
                      )
Edward Bearden, et al., )
                      )
     Defendants.      )

## Page 2

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

Teri Dean,            )
                      )
     Plaintiff,       )
v.                    ) Case No. 5:19-CV-06022-SRB
                      )
Edward Bearden, et al., )
                      )
     Defendants.      )

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

Jane Doe,             )
                      )
     Plaintiff,       )
v.                    ) Case No. 19-CV-6161-BP
                      )
Edward Bearden, in his )
Individual Capacity,  )
                      )
     Defendant.       )

VIDEO RECORDED VIDEOCONFERENCE DEPOSITION
OF
ANNE PRECYTHE
     The Video Recorded Videoconference Deposition
of ANNE PRECYTHE, a witness called at the instance
of the Plaintiffs, for purposes of DISCOVERY taken
on April 28, 2021 at 9:01 a.m., via Zoom, before
Julie Ann Whiting, Missouri Certified Court Reporter
and Registered Professional Reporter, pursuant to
Notice.

## Page 3

INDEX
Examination by Ms. Snow        Page 9
Examination by Ms. Wang        Page 84
Examination by Mr. Buchheit    Page 85

## Page 4

PLAINTIFF'S EXHIBIT INDEX
Exhibit 1            Page 42
(Kansas City Star news article dated
May 30, 2018)
Exhibit 2            Page 43
(News Roundup e-mail dated 6/4/18)

Exhibit 3            Page 49
(Article entitled 2 Lawsuits Allege
Inmate Sexual Assault by Missouri Guard
dated 6/6/16)
Exhibit 4            Page 50
(News Roundup e-mail dated 6/11/18)

Exhibit 5            Page 56
(News Roundup e-mail dated 6/19/18)
Exhibit 6            Page 59
(Article entitled Missouri Prison Guard
Sued for Third Time Over Alleged Sex
Assaults of Inmates dated 7/2/2018)
Exhibit 7            Page 60
(Springfield News-Leader article entitled
Missouri Investigates After 3 Women Allege
Sexual Assault by Same Prison Guard dated
7/3/18)
Exhibit 8            Page 69
(Email from John Ammann dated 3/19/18)
Exhibit 9            Page 72
(E-mail from Stacey Ross dated 6/28/18)

Exhibit 10           Page 75
(Document entitled Exhibit 47 containing
documents MDOC 002361 through MDOC 002367)

Exhibit 11           Page 61
(E-mail from Anne Precythe to Edward
Bearden dated 8/17/18)

(Whereupon, the exhibits were attached to
the original and copies.)

1 (Pages 1 to 4)

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 5:19-cv-06022-BP   Document 93-3   Filed 08/13/21   Page 1 of 39

## Page 5

1  A P P E A R A N C E S
2  APPEARING VIA VIDEOCONFERENCE
FOR THE PLAINTIFFS:
3
The Law Offices of Joan M. Swartz
4  Jenifer C. Snow, Esq.
3348 Greenwood Boulevard
5  St. Louis, Missouri  63143
(314)471-2032
6  jsnow@jmsllc.com
7  - and -
8  St. Louis University Legal Clinic
John J. Ammann, Esq.
9  Brendan D. Roediger, Esq.
10 North Tucker
10 St. Louis, Missouri  63101
(314)977-2778
11 john.ammann@slu.edu
brendan.roediger@slu.edu
12
13 APPEARING VIA VIDEOCONFERENCE
FOR DEFENDANT ANNE PRECYTHE:
14
Office of Attorney General
15 State of Missouri
Zachary Buchheit, Esq.
16 207 West High Street
Jefferson City, Missouri  65101
17 (573)751-3321
zachary.buchheit@ago.mo.gov
18
19 APPEARING VIA VIDEOCONFERENCE
FOR DEFENDANT KEVIN L. REED:
20
Office of Attorney General
21 State of Missouri
Christal Wang, Esq.
22 207 West High Street
Jefferson City, Missouri  65101
23 (573)751-3321
christal.wang@ago.mo.gov
24
25

## Page 6

1  A P P E A R A N C E S (CONTINUED)
2  APPEARING VIA VIDEOCONFERENCE
FOR DEFENDANTS EDWARD BEARDEN,
3  ELIJAH MOSIER AND TODD MUSTAIN:
4  Office of Attorney General
State of Missouri
5  Nicolas J. Taulbee, Esq.
207 West High Street
6  Jefferson City, Missouri  65101
(573)751-3321
7  nicolas.taulbee@ago.mo.gov
8
9
10
11
12
13
14
15
16
17 THE VIDEOGRAPHER:
18 John Niehaus, CLVS
Alaris Litigation Services
19 711 North 11th Street
St. Louis, Missouri  63101
20 (314)644-2191
21
22 REPORTED VIA VIDEOCONFERENCE BY:
23 Julie Ann Whiting, CCR 830(MO), RPR
Alaris Litigation Services
24 711 North 11th Street
St. Louis, Missouri  63101
25 (314)644-2191

## Page 7

1  IT IS HEREBY STIPULATED AND AGREED, by and
2  between counsel for Plaintiffs and counsel for
3  Defendants, that the Video Recorded
4  Videoconference Deposition of ANNE PRECYTHE may
5  be taken in shorthand by Julie Ann Whiting, a
6  Certified Court Reporter, and afterwards
7  transcribed into typewriting, and the signature
8  of the witness is expressly not waived.
9  (Deposition start time:  9:01 a.m.)
10 * * * * *
11 THE VIDEOGRAPHER:  We're on the record.
12 Today's date is April 28th, 2021, and the time
13 is approximately 9:01 a.m.  This is the Video
14 Recorded Deposition of Anne Precythe in the
15 matter of Karen Backues Keil versus MHM
16 Services, Inc. et al., Case Number
17 5:18-CV-06074-BP, in the United States District
18 Court for the Western District of Missouri.
19 This deposition is being held at remote
20 locations.  The reporter's name is
21 Julie Whiting.  My name is John Niehaus.  I'm
22 the legal videographer.  We are with Alaris
23 Litigation Services.
24 Would the court reporter please administer
25 the remote stipulation and swear in the

## Page 8

1  deponent?
2  COURT REPORTER:  This is Julie Whiting,
3  and I am a Certified Court Reporter for the
4  State of Missouri.  This deposition is being
5  taken remotely, and those participating in this
6  deposition today are attending in person via
7  videoconference, with the witness appearing
8  from Jefferson City, Missouri.
9  The attorneys participating in this
10 proceeding acknowledge their understanding that
11 I am not physically present with the witness
12 and that I will be reporting this proceeding
13 remotely.  They further acknowledge that I will
14 not be administering the oath in person, but am
15 doing so remotely.  The parties and their
16 counsel consent to this arrangement and waive
17 any objections to this manner of proceeding.
18 Counsel, please indicate your individual
19 agreement verbally on the record by stating
20 your name and that you stipulate to these
21 terms, after which I will swear in the witness
22 and we may begin.
23 MS. SNOW:  Jenifer Snow on behalf of
24 Plaintiffs.  I stipulate.
25 MR. BUCHHEIT:  Zach Buchheit on behalf of

2 (Pages 5 to 8)

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 5:19-cv-06022-BP   Document 93-3   Filed 08/13/21   Page 2 of 39

## Page 9

1    Director Anne Precythe, and we stipulate to
2    those terms.
3        MR. TAULBEE:  Nicolas Taulbee on behalf of
4    Edward Bearden, Elijah Mosier, and Todd
5    Mustain, and we stipulate to those terms.
6        MS. WANG:  Christal Wang on behalf of
7    Defendant Kevin Reed.  I also stipulate to the
8    terms.
9        MR. BUCHHEIT:  Jenifer, do you also want
10   to go ahead and agree that an objection by one
11   is an objection by all?
12       MS. SNOW:  That's fine.
13       MR. BUCHHEIT:  Great.
14       (Discussion off the record.)
15       (Off the record at 9:04 a.m.)
16       (On the record at 9:06 a.m.)
17       THE VIDEOGRAPHER:  We're back on the
18   record at approximately 9:06 a.m.
19           EXAMINATION
20   QUESTIONS BY MS. SNOW:
21       Q    Good morning, Director Precythe.  How are
22   you doing today?
23       A    Just fine.  Thank you.
24       Q    My name is Jenifer Snow, and I represent
25   several Plaintiffs in lawsuits pending in the

## Page 10

1    District Court of the Western District of Missouri.
2    Do you understand you're here today due to being
3    named in the Teri Dean lawsuit specifically?
4        A    Yes.
5        Q    And just before we get going, for the
6    record, state your full name, please.
7        A    Anne Precythe.
8        Q    And I imagine you've given depositions
9    before.  Is that -- is that a true statement?
10       A    Yes.
11       Q    And how many depos have you given over the
12   years, if you could estimate?
13       A    Five.
14       Q    Oh, okay.  And how -- what is the most
15   recent?
16       A    The most recent one was Paul Watts.
17       Q    And what was that about?
18       A    It was an employee discrimination case.
19       Q    And have you ever been deposed in a 1983
20   action?
21       A    I don't recall.
22       Q    Okay.  Have you ever given deposition
23   testimony regarding allegations of sexual assault or
24   sexual harassment or sexual abuse?
25       A    Yes.

## Page 11

1        Q    And how many times?
2        A    One.
3        Q    And what was, I guess, either the
4    Plaintiff name or the case name for that?
5        A    I don't recall the Plaintiff name in that
6    case.  It was around the Kansas City Reentry Center
7    allegations from 2016, is what I recall.
8        Q    Okay.  Any other depositions regarding
9    assault, harassment, abuse?
10       A    Not that I'm aware of.
11       Q    Have you ever given testimony at a trial?
12       A    No.
13       Q    Okay.  What did you review to prepare for
14   today?
15       A    What did I review?
16       Q    Yes.
17       A    Nothing.
18       Q    Okay.  Are you aware that -- are you aware
19   of what Interrogatories and Requests for Production
20   are if I use those terms?
21       A    Yes.
22       Q    Okay.  Are you aware that you have served
23   Answers to Interrogatories and now several
24   Supplemental Responses to Requests for Production in
25   this lawsuit?

## Page 12

1        A    Yes.
2        Q    Did you review any of those answers or
3    responses --
4        A    No.
5        Q    -- before today?  Did you review any of
6    those answers or responses at any time before they
7    were given to me?
8        A    No, not that I'm aware of.
9        Q    Is it fair to say you also have not
10   reviewed any of the documents that your lawyer,
11   Zach Buchheit, has produced in this litigation?
12       A    That is correct.
13       Q    If I told you there were several answers
14   and responses in your discovery that said either you
15   don't know or maybe it said investigation continues
16   or will supplement, as you prepared for today, I
17   guess, even mentally or talking to Zach, are you
18   aware of anything in your possession responsive to
19   anything that we requested that you have not either
20   given Zach or that Zach has not given us?
21       MR. BUCHHEIT:  Let me just object.  It's a
22   bit vague, but you can answer.
23       A    Can you repeat the question?
24       Q    (By Ms. Snow)  Yeah.  And maybe I'll
25   rephrase it to make it a little more clear.  I'm

3 (Pages 9 to 12)

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 5:19-cv-06022-BP   Document 93-3   Filed 08/13/21   Page 3 of 39

## Page 13

1    just trying to figure out -- we asked for a lot of
2    information, both -- both from you and your
3    department in this litigation and we have been
4    given, I would say, very little.  And I am just
5    wondering if you know of anything else that's going
6    to come our way, or if you, you know, gave Zach
7    20,000 e-mails and you know he only gave us about
8    12.  I'm just wondering if you know of anything that
9    you have that's responsive to what we requested that
10   we do not have yet?
11      A   I do not.
12      Q   Director, are you married?
13      A   Yes.
14      Q   And what is your husband's name?
15      A   Henry C. -- H.C.
16      Q   And what does he do?
17      A   He is a sweet potato salesman.
18      Q   Okay.  And I assume he is now in Missouri?
19      A   He lives in Jefferson City with me, yes.
20      Q   And I believe your little bio on-line says
21   you have two daughters; is that correct?
22      A   We do.
23      Q   And do they live here now, or do they
24   still live elsewhere?  Like, I think you came from
25   North Carolina.  Do they live out east still, or do

## Page 14

1    they live here, too?
2       A   They're still in North Carolina.
3       Q   And what do they do?
4       A   One is a stay-at-home mom and one works
5    for a treatment program in North Carolina.
6       Q   Okay.  And I can tell from your accent you
7    are probably not from Missouri.  Where were you born
8    and raised?
9       A   I'm from North Carolina and have lived
10   there for 50-some years before I moved to
11   Jefferson City.
12      Q   And I believe you were appointed Director
13   in February of 2017.  Is that true?
14      A   I was confirmed in February of 2017.  I
15   got here in January of 2017.
16      Q   Okay.  So from the date you were born
17   until 2017, you were in North Carolina?
18      A   Correct.
19      Q   Okay.  Are you aware -- and let's just --
20   sorry.  Strike that.
21          What -- you worked for the North Carolina
22   Department of Public Safety and with correction
23   centers; correct?
24      A   With the Division of Community
25   Corrections, yes.

## Page 15

1       Q   Okay.  And I just kind of want to know
2    your job titles out in North Carolina.
3       A   So I was the Director for Community
4    Corrections, which is comparable to Probation and
5    Parole here in the State of Missouri.  I was a
6    Interstate Compact Administrator.  I was an
7    administrator of -- I forget -- I actually forget
8    the title -- of services within the Department of
9    Public Safety Community Corrections.  So I oversaw
10   the Sex Offender Supervision Unit, the Electronic
11   Monitoring Station, evidence-based practices,
12   justice reinvestment, Interstate Compact, and then I
13   was a Community Corrections Analyst for the
14   department and I was also a Probation and Parole
15   officer.
16      Q   And then you came here again in 2017 and
17   you've served as the Director ever since.  True?
18      A   Yes.
19      Q   And what are your just overall
20   responsibilities as Director?  Just explain that to
21   the jury, because they probably have no idea what --
22   what being the Director at the Department of
23   Corrections at the State of Missouri means.
24      A   Right.  So I'm responsible for the
25   oversight of approximately 10,000-plus employees,

## Page 16

1    24,000 inmates, and about 59,000 people under
2    probation or parole supervision.  We have 20
3    different institutions across the State of Missouri,
4    two transition centers, and six community
5    supervision centers that we operate that are 24/7
6    facilities.
7           We deal with things from lethal fences at
8    our institutions, to the largest healthcare contract
9    in the State of Missouri.  We're responsible for
10   providing safety for our offenders inside our
11   institutions.  We've been working on culture change
12   across the department with staff.  And there's a lot
13   that goes on in our -- in our department.  We're a
14   very -- we're the largest State department in
15   Missouri.
16      Q   And what would you say in 2017 when you
17   became Director what the, I guess, kind of state or
18   status of the Department of Corrections -- and I'm
19   talking about the employees and I'm talking about
20   the inmates and the offenders, just kind of the
21   whole system.  What would you say the state of that
22   was in 2017 when you started working here?
23          MR. BUCHHEIT:  Objection.  Vague,
24   ambiguous.  If you understand, you can answer.
25      A   Right.  When I got here, the department

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334

1  was in need of some leadership.  There were a lot of
2  inconsistencies across the 20 institutions.  Our
3  four divisions were very siloed.  So we have
4  Division of Prisons, we have Division of Probation
5  and Parole, Division of Offender Programs and
6  Rehabilitative Services, and our Division of Human
7  Services.  And all the divisions were very siloed.
8  People didn't know where we were headed as a
9  department.  They didn't know how they fit in to the
10 work that we did.  They didn't feel valued.
11     So we've spent a lot of time working on
12 helping supervisors communicate with their teams.
13 And at the same time, we've been employing
14 evidence-based practices in both our institutional
15 settings, as well as community supervision.  So
16 we've been adding a lot of structure and I've built
17 a lot more -- we've increased our resources for
18 using data about how we manage inside our prisons
19 and with our offender population, as well as how
20 we're changing the culture within our institutions.
21     Q    (By Ms. Snow)  And is that culture more
22 officer-based or offender/inmate-based, or both?
23     A    We focused mostly on staff when I got
24 here.  Offender management happens and has been
25 happening for a very long time.  There were a lot of

1  things that needed to be paid attention to for
2  staff, and then staff ultimately impact the offender
3  population.
4      Q    When you started as the Director for the
5  Department of Corrections in Missouri, would you
6  agree that correctional officers struggle in a
7  culture of harassment and neglect?
8      MR. BUCHHEIT:  Objection.  Vague and
9  ambiguous.
10     A    I had heard a lot of complaints from our
11 staff about harassment, retaliation, and
12 discrimination.
13     Q    (By Ms. Snow)  And those complaints have
14 stayed kind of consistent over the -- over the last
15 several years.  Is that a true statement, or would
16 you disagree with that?
17     A    I would disagree with that.
18     Q    And when we're talking about harassment,
19 are we talking about officer-on-officer harassment
20 or officer-on-offender harassment, or both?
21     A    Staff-on-staff harassment, primarily.
22     Q    And what about staff-on-offender or
23 staff-on-inmate harassment?
24     A    I'm not as familiar with the number of
25 complaints that we have regarding those.

1      Q    Okay.  So you focus kind of on -- I mean,
2  would it be fair to say that you, over the last
3  several years, have helped clean up and you were
4  brought in to kind of clean up the staff-on-staff
5  harassment?
6      MR. BUCHHEIT:  Objection.  Vague,
7  ambiguous.
8      A    We have focused on helping staff have
9  outlets to be able to report allegations of
10 harassment and then how we respond and -- how we
11 report and respond to those allegations.
12     Q    (By Ms. Snow)  And whose focus is it to
13 worry about the offenders having outlets?
14     A    So we ensure that the offenders have
15 outlets to report allegations and complaints of any
16 type of mistreatment, misconduct, whatever.  We have
17 that in place.
18     Q    And when you say we, are you talking
19 about -- I want to make sure moving forward we're
20 kind of talking about the same group of people.
21 Would it be fair to say that you're talking about
22 the leadership team when you say we?
23     A    Yes.  The department as a whole and
24 thinking about leadership, whether it's at a
25 particular institution or the executive team.  I

1  mean, we ensure that we have the practices and
2  policies in place for staff and offenders.
3      Q    Okay.  And who -- who reports directly to
4  you?
5      A    The four division directors and my
6  Director for the Office of Professional Standards,
7  the reentry manager, and my deputy department
8  Director and then my executive assistant.
9      Q    So I just want to make sure I have those
10 people's names, just so when we're talking later
11 about names, I want to make sure there's no
12 confusion.  So you said your division directors.
13 So is that --
14     A    Correct.
15     Q    -- Jeff Norman?
16     A    Yes.
17     Q    And Julie Kemp -- Kemp -- Kempker?
18     A    Kempker.  Kempker.
19     Q    And Travis Terry?
20     A    Yes.
21     Q    And Susan Pulliam?
22     A    Pulliam.
23     Q    And then you said the Director of Office
24 of Professional Standards, so Matt Briesacher?
25     A    Yes.

ALARIS LITIGATION SERVICES
www.alaris.us        Phone: 1.800.280.3376        Fax: 314.644.1334
Case 5:19-cv-06022-BP    Document 93-3    Filed 08/13/21    Page 5 of 39

## Page 21

1      Q    And then I believe you said Deputy
2   Director, so Matt Strum?
3      A    Sturm.
4      Q    And then who else did you say?
5      A    My executive assistant, Donna Higgins, and
6   our reentry manager, Ken Chapman.
7          MR. BUCHHEIT:  Hey, Jenifer?  Can we take
8      a quick five-minute break?
9          MS. SNOW:  Sure.
10         MR. BUCHHEIT:  Thanks.
11         THE VIDEOGRAPHER:  Going off the record at
12     approximately 9:22 a.m.
13         (Off the record at 9:22 a.m.)
14         (On the record at 9:26 a.m.)
15         THE VIDEOGRAPHER:  We're back on the
16     record at approximately 9:26 a.m.
17     Q    (By Ms. Snow)  So Director Precythe, I
18  believe we were talking about just before the quick
19  break just people who reported to you directly, and
20  you just gave me, I believe, eight names.  Anyone
21  else that reports directly to you on a regular
22  basis?
23     A    No.
24     Q    And when we say -- when I say reports
25  directly to you, I mean about basically the ins and

## Page 22

1   outs of what's going on in the prison systems across
2   the state.  Is that a fair summarization of that, or
3   what -- what does it mean -- you're kind of shaking
4   your head no.  What -- when I say reports directly
5   to you, what are they reporting to you about?
6      A    The people that report directly to me --
7   report information directly to me are my four
8   Division Directors and the Office of Professional
9   Standards Director.
10     Q    And who is your Communications Director?
11     A    Karen Pojmann.
12     Q    And does she directly report to you?
13     A    So when we talk -- if you're asking does
14  she -- maybe I need you to ask -- I need to be
15  clear --
16     Q    Sure.
17     A    -- more clear about what you mean by
18  directly report.
19     Q    Does she have to -- when she is speaking,
20  she is speaking on behalf of the Department of
21  Corrections when she speaks out to the press or
22  gives statements to the press.  Is that true?
23     A    That's correct.
24     Q    Does she check with you before giving
25  statements?

## Page 23

1      A    Sometimes she does.
2      Q    Does she --
3      A    We trust her not to have to run everything
4   through me or my deputy.
5      Q    So it's not required that she run it
6   through -- through you or Matt before she talks to
7   any press?
8      A    No.
9      Q    If she comments about lawsuits
10  specifically, does that change that answer?  In
11  other words, if she is giving a comment about a
12  recently filed lawsuit, does she have to run that
13  through you or Matt, or you still just kind of give
14  her the discretion to make comments to the press as
15  she sees fit?
16         MR. BUCHHEIT:  Objection.  Vague,
17     ambiguous.  If you understand the question.
18     Q    (By Ms. Snow)  Yeah.  And Director
19  Precythe, I -- I didn't really run over the ground
20  rules of the deposition with you, but if you ever
21  think that a question I'm asking is too vague or you
22  don't understand, just tell me and I'll do my
23  best to rephrase it.  Okay?
24     A    Okay.
25         MR. BUCHHEIT:  Hey, can you give us a

## Page 24

1   second?
2          THE WITNESS:  Yeah.
3          MR. BUCHHEIT:  I think we're going to plug
4      in our --
5          THE WITNESS:  My battery just showed up
6   running low.  Okay.  Thank you.
7          MS. SNOW:  Now I don't remember my
8   question that Zach thought was very vague.
9   Julie, can you help me out?
10         (Record read.)
11     A    I trust Karen to get the information she
12  needs from the most appropriate person prior to
13  making comments to the media.
14     Q    (By Ms. Snow)  And so for a lawsuit
15  about -- I mean, obviously we all know why we're
16  here today.  There are several lawsuits against
17  correctional officers that worked or used to work at
18  Chillicothe Correctional Center; correct?  That's
19  why we're here today?
20     A    Yes.
21     Q    And you are aware -- well, strike that.
22         Are you aware that there are now five
23  lawsuits that have been filed against Edward Bearden
24  specifically?
25     A    I was not.

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 5:19-cv-06022-BP    Document 93-3    Filed 08/13/21    Page 6 of 39

## Page 25

1    Q   You were not.  When did you become aware
2  that there are now five pending lawsuits against
3  Edward Bearden?
4    A   Just now.
5    Q   Just now, as in when your deposition was
6  requested for this case or when you were named in
7  this case?  What do you mean by just now?
8    A   Just now, when you said -- I mean, I
9  didn't know there were five cases.  I was familiar
10  with one.
11    Q   Okay.  And is that one the Teri Dean case?
12    A   It's the one that I've been prepared on.
13    Q   So the -- the only one that you're a
14  named -- a named party in?
15    A   Correct.
16    Q   Okay.  And that case was filed in February
17  of 2019.  At that point, did you know Edward Bearden
18  was involved in other lawsuits?
19    A   I did not.
20    Q   And just to go back to who reports
21  directly to you, are you guys all located at the
22  same -- same office?
23    A   We are.
24    Q   And I believe before the deposition
25  started, you called it the Broadway Building in

## Page 26

1  Jeff City.  So all of you guys are at the Broadway
2  Building in Jeff City?
3    A   No.
4    Q   Who --
5    A   My office is in another location in
6  Jefferson City.  I'm at the Attorney General's
7  office here in the Broadway Building right now.
8    Q   I got you.  But your office in Jeff City,
9  is that -- is that referred to sometimes as the
10  Central Office?
11    A   Yes.
12    Q   And are all of the people that you listed
13  for me or I attempted to list for you, with
14  incorrect spellings sometimes, are all of those
15  people also in the Central Office?
16    A   They are.
17    Q   Okay.  Is your Communications Director in
18  the Central Office as well?
19    A   Yes.
20    Q   Do you know Ryan Bangert in the AG's
21  office?  Does that name ring a bell to you?
22    A   The name is familiar.  The name is
23  familiar.
24    Q   He's -- he's no longer there.  I just --
25  do you know if you ever had any correspondence --

## Page 27

1  correspondences with him in either 2017 or 2018?
2    A   I don't recall.
3    Q   Sorry.  I was going to finish that as --
4  to -- to kind of limit it a little bit, because I'm
5  sure maybe you had an e-mail or two from him over
6  the years, but specifically regarding any sexual
7  assault or sexual harassment allegations that
8  occurred in Chillicothe at any time?  You don't
9  remember if you had any correspondences with
10  Ryan Bangert about any of that?
11    A   I don't recall.
12    Q   So obviously I -- I know that the Attorney
13  General's office is who handles the lawsuits, you
14  know, from the legal side of things when
15  offenders or -- sorry -- when officers are sued.
16        Who inside the Department of Corrections
17  kind of on your end handles all of that?
18    A   Matt Briesacher oversees our litigation
19  pieces.
20    Q   And he's one of the people that you said
21  reports directly to you; right?
22    A   Correct.
23    Q   Do you and Matt Briesacher have regular
24  meetings to discuss litigation specifically?  Does
25  he give you reports sometimes?  I mean, I kind of

## Page 28

1  just want to learn or know about how he kind of
2  keeps you informed about lawsuits that are pending
3  or that have been recently filed or both.
4        MR. BUCHHEIT:  Objection, compound.  Which
5    question are you asking?
6    Q   (By Ms. Snow)  I mean, I'm just kind of --
7  I just kind of want to know -- I mean, there's not a
8  specific question.  I just want to know -- you told
9  me that Matt Briesacher reports to you, and you just
10  told me that as the Director of the Office of
11  Professional Standards, or OPS, he is basically who
12  handles all of the litigation from the Department of
13  Corrections for things.  We obviously know the
14  Attorney Generals handle it from the legal side of
15  things.  I just want to know what you -- kind of
16  your relationship with Matt Briesacher as far as
17  litigation goes.  I mean, do you meet regularly?  Do
18  you meet weekly, monthly?  Does he give you reports?
19  I mean, I just --
20        MR. BUCHHEIT:  Objection.  Vague,
21    compound, ambiguous.
22    Q   (By Ms. Snow)  I'll try rephrasing the
23  question until I get an answer.  I just want to
24  know -- I mean, I can -- do you understand what I'm
25  asking, Director Precythe?

7 (Pages 25 to 28)

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 5:19-cv-06022-BP     Document 93-3     Filed 08/13/21     Page 7 of 39

## Page 29

1      MR. BUCHHEIT:  Do you know which question
2  she's asking?
3      THE WITNESS:  No.
4      Q   (By Ms. Snow)  Yeah, I mean I'll try to
5  break it down.  Matt Briesacher, you just told me --
6  well, we already established he's kind of on a
7  leadership team or he reports directly to you and he
8  works out of the Central Office.  True?
9      A   Correct.
10      Q   And you also just informed me that he is
11  the person within the Department of Corrections that
12  handles the litigation any time correctional
13  officers are sued or any time you are sued or named
14  in a lawsuit or any time the Department of
15  Corrections is involved in --
16      MR. BUCHHEIT:  Objection.
17      Q   (By Ms. Snow)  -- litigation.  He is the
18  person that handles that.
19      MR. BUCHHEIT:  Objection.  Objection.
20  Misstates testimony.
21      THE WITNESS:  Do I answer?
22      MR. BUCHHEIT:  You can answer if you
23  understand the question.
24      A   He is one of the people in our office that
25  handles litigation.

## Page 30

1      Q   (By Ms. Snow)  Okay.  One of.  Who else
2  handles litigation in your office?
3      A   He has another lawyer that has been
4  recently hired to assist.
5      Q   When we say -- when you say recently
6  hired, do you mean in 2021?
7      A   He started, I believe, sometime in late
8  2020.
9      Q   And do you know his name?
10      A   Roy Smith.
11      Q   Okay.  So Roy Smith and Matt Briesacher
12  handle the litigation.  Does Roy Smith also report
13  directly to you?
14      A   No.
15      Q   He reports to Matt Briesacher, and
16  Matt Briesacher reports directly to you?
17      A   Yes.
18      Q   Okay.  I guess now I just want to know,
19  when we say reports -- when we say Matt Briesacher
20  reports directly to you, I want to know -- I mean,
21  I'm not trying to trick you.  I honestly am trying
22  to learn -- when Matt Briesacher finds out about a
23  lawsuit -- does he report that to you?  Does he give
24  you some summary in an e-mail?  Does he come knock
25  on your office door?  I just want to know how he

## Page 31

1  reports litigation matters to you.
2      A   We have started meeting on a monthly
3  basis.  We started that about six months ago,
4  meeting with our legal team to get an update on
5  where cases are, what's going to involve my office,
6  just information like that.  But until then, we met
7  when Matt felt I needed to be made aware of some
8  information.
9      Q   And there was no set frequency of prior to
10  six months ago how often Matt felt like you should
11  be aware of information or litigation?
12      MR. BUCHHEIT:  Objection.  Misstates the
13  testimony.  Objection.  Testimony from counsel.
14  If you understand it, you can answer.
15      A   There was --
16      Q   (By Ms. Snow)  I'm not trying to misstate
17  you, Director Precythe.  I think you just told me
18  six -- as of six months ago, you meet with Matt
19  Briesacher or the legal team once a month.
20      A   That's correct.
21      Q   And you said prior to that -- so seven
22  months ago, eight months ago, a year ago, two years
23  ago, three years ago -- you basically met whenever
24  Matt felt it was necessary to talk to you about
25  litigation?

## Page 32

1      A   That is correct.
2      Q   Okay.  But there was no frequency in
3  those?  Matt could meet you once a quarter, once a
4  year?
5      A   We met more often than that.
6      Q   How often did you meet with Matt, would
7  you say, back in 2017?
8      A   I have no specific time frame.  He would
9  come to me when he had things that he knew or he
10  felt I needed to be aware of.  We had no regular
11  reporting frequency.
12      Q   Okay.  And between 2017 and 2020, when you
13  started meeting monthly, would you say you met about
14  monthly anyways, or did you meet once every six
15  months?  I mean, you just said it was more
16  frequently than once a quarter, so I'm just trying
17  to gauge how often Matt would meet with you.
18      A   I talk with Matt on a regular, recurring
19  basis, but we talk about an assortment of things,
20  not just litigation matters.  So, I mean, he and I
21  meet on -- it's hard to say.  It's not a regular
22  routine, but I talk to him frequently.
23      Q   And are most of your talks or
24  correspondences with him just in person?
25      A   Yes.

8 (Pages 29 to 32)

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 5:19-cv-06022-BP    Document 93-3    Filed 08/13/21    Page 8 of 39

## Page 33

1    Q    Are any of your meetings and
2 correspondences ever, I guess, memorialized into a
3 document or a written e-mail or memo?
4    A    No.
5    Q    Do you recall meeting with Matt Briesacher
6 regarding Teri Dean's lawsuit at any time?
7    A    I do not.
8    Q    Do you remember meeting with Matt
9 Briesacher regarding as Ashley Zieser's lawsuit at
10 any time?
11    A    Could you repeat that question?
12    Q    Yep.  Do you remember meeting with
13 Matt Briesacher regarding Ashley Zieser's lawsuit at
14 any time?
15    A    No.
16    Q    Do you remember a meeting with Matt
17 Briesacher regarding Lynnsey Betz's lawsuit at any
18 time?
19    A    No.
20    Q    Do you remember meeting with
21 Matt Briesacher regarding Karen Keil's lawsuit at
22 any time?
23    A    No.
24    Q    Do you remember meeting with Matt
25 Briesacher regarding a lawsuit that's been filed by

## Page 34

1 a Plaintiff who is now going by the name of Jane
2 Doe?
3    A    No.
4    Q    Is it possible Matt met with you regarding
5 any one of these lawsuits between 2017 and -- let's
6 just say between 2017 and 2018?
7    A    I don't recall.  As I sit here today, I
8 don't recall any of those names or meeting with him
9 on any of those cases.
10    Q    So it's possible he did, it's possible he
11 didn't, you just don't know?
12    A    Correct.
13    Q    Are you notified when lawsuits are
14 originally filed?
15    A    No.
16    Q    Are you notified when PREA reports are
17 filed?
18    A    No.
19    Q    Are you notified when the FBI wants to do
20 an investigation at one of the facilities in
21 Missouri?
22    A    I'm told about those.
23    Q    Okay.  And who kind of -- I assume they
24 don't just come knock on your office door.  Who does
25 the FBI kind of communicate with in your office

## Page 35

1 about doing investigations when they need to?
2    A    I -- I don't know.
3    Q    Are you aware that there was an FBI
4 investigation -- and, actually, I don't think it's
5 been closed yet -- at Chillicothe Correctional
6 Center in 2018?
7    A    I don't recall.  I don't recall that.
8    Q    As you sit here today, you don't know if
9 that happened or not?
10    A    That's correct.
11    Q    If I told you that there was in fact an
12 FBI investigation, FBI's walking around and
13 Department of Justice folks were walking around
14 Chillicothe taking pictures and interviewing people
15 in 2018, would that surprise you?
16        MR. BUCHHEIT:  Objection.  Testimony from
17    counsel.  It's vague and ambiguous.  Subject to
18    that, you can answer.
19    A    It's -- it's possible.  There are a lot of
20 things that go on in our department, and so I rely
21 on other people to keep me informed of the things
22 that I need to be aware of.  It's possible that I
23 was informed back in 2018, but a lot has happened
24 since then, so I just -- I'm -- I just don't recall.
25    Q    (By Ms. Snow)  And who would be -- I

## Page 36

1 already asked this and you said you don't really
2 know.  But who would be the person to tell you that
3 there are FBI investigations happening at one of the
4 facilities in the State of Missouri?
5    A    Matt Briesacher.
6    Q    Okay.  Are you fully staffed in the
7 prisons in Missouri currently?
8    A    No.
9    Q    I figured that was your answer, but you
10 paused, so I didn't know.  Are -- is Chillicothe
11 specifically fully staffed?
12    A    Chillicothe has -- has a few vacancies,
13 but nowhere near what a lot of our other
14 institutions have.  I don't recall the specific
15 number of vacancies they have.
16    Q    Is it hard to find qualified candidates to
17 fill these vacancies?
18    A    No.  No.  It's really more finding people
19 who want to come do the work inside the corrections
20 operation.
21    Q    Okay.  And are you more reluctant to
22 either suspend or terminate correctional officers
23 because of staffing shortages?
24    A    No.
25    Q    And I -- are you aware that in a webinar

ALARIS LITIGATION SERVICES
www.alaris.us        Phone: 1.800.280.3376        Fax: 314.644.1334
Case 5:19-cv-06022-BP   Document 93-3   Filed 08/13/21   Page 9 of 39

## Page 37

1  recently you said you would not fire guards for not
2  wearing masks because you need everybody that you
3  have?
4      A   Yes.  I recall saying that.
5      Q   Do you personally know Edward Bearden?
6      A   I do not.
7      Q   Do you personally know Todd Mustain?
8      A   I do not.
9      Q   Do you know -- personally know
10  Elijah Mosier?
11      A   I do not.
12      Q   Do you personally know Kevin Reed?
13      A   I do not.
14      Q   Have you ever talked with any of the four
15  of them?
16      A   Not that I'm aware of.
17      Q   Never interviewed any of them?
18      A   Not that I'm aware of.
19      Q   Do you know Karen Keil?
20      A   No, I don't.
21      Q   Do you know Lynnsey -- and I guess her
22  name was Karen Backues when she was incarcerated.
23  Does that name ring a bell, or do you know
24  Karen Backues or that name at all?
25      A   I do not.

## Page 38

1      Q   What about Lynnsey Betz?
2      A   I do not.
3      Q   What about Ashley Zieser, used to be
4  Ashley Olsen?
5      A   I do not.
6      Q   What about Teri Dean?
7      A   I do not.
8      Q   What about Trinity George?
9      A   I do not.
10      Q   What about Sara Klein?
11      A   No, ma'am.
12      Q   What about Crystal Gray Ross?
13      A   I do not.
14      Q   What about Crystal Logan?
15      A   I do not.
16      Q   What about Teresa Davis?
17      A   I do not.
18      Q   And I just listed nine names of offenders
19  who at one point were incarcerated at Chillicothe
20  Correctional Center.  I know you said you do not
21  know them.  Do you have any reason to believe you
22  ever talked to any of them?
23      A   No, I don't.
24      Q   Never interviewed any of them?
25      A   No.

## Page 39

1      Q   And there has been -- just so you know,
2  there are -- as I'm sure you are aware, a lot of
3  policies and procedures regarding, you know,
4  harassment, assault, abuse, and kind of the steps
5  that the Department takes in investigating those.
6  But what do you personally do in your office or
7  day-to-day duties when an offender alleges assault
8  and an officer says he didn't do it?
9      A   I don't normally get those.  I don't get
10  those complaints at my level.  Those are
11  investigated in -- through DAI or they're turned
12  over to the PREA unit and Vevia Sturm, who is our
13  PREA coordinator.  She handles those.
14      Q   Do you get -- I guess do you get wind of
15  any of these or all of these investigations when
16  they happen?
17      MR. BUCHHEIT:  Objection.  Vague,
18  ambiguous.
19      A   If I'm aware of them, I turn them over to
20  Vevia's office immediately.
21      Q   (By Ms. Snow)  And does Vevia report back
22  to you about whether any claim is either
23  substantiated or unsubstantiated?
24      A   No.
25      Q   So you would have no way to know either

## Page 40

1  way if claims are substantiated or not
2  substantiated -- or unsubstantiated?
3      MR. BUCHHEIT:  Objection.  Misstates the
4  testimony.
5      A   No.  I mean, I don't -- it's not a regular
6  reporting to me.  Again, I rely on my staff to make
7  me aware of the things that I need to be aware of.
8      Q   (By Ms. Snow)  Were you ever interviewed
9  by the FBI or anyone at the Justice Department or
10  U.S. Attorney's office in 2018?
11      A   As I sit here today, I do not recall.
12      Q   Do you -- and this is going to be a
13  very -- Zach probably is going to object because
14  it's going to be a very vague question.  But do you
15  read the newspapers?
16      A   From time to time.
17      Q   Do you read the Kansas City Star?
18      A   I do not.
19      Q   Do you read the St. Louis Post-Dispatch?
20      A   I do not.
21      Q   Do you read the Springfield Newsletter?
22      A   I do not.
23      Q   What newspapers do you from time to time
24  read?
25      A   The Jefferson City Tribune.

10 (Pages 37 to 40)

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 5:19-cv-06022-BP    Document 93-3    Filed 08/13/21    Page 10 of 39

## Page 41

1  Q  Does your Director of Communications --
2  what was her name, again?
3  A  Karen Pojmann.
4  Q  Pojmann.  Does she ever either collect
5  press clippings for you or kind of give you a
6  rundown of the press happening across the state as
7  it relates --
8  A  Yes.
9  Q  -- to the facilities that you oversee?
10  A  She gives me information when the
11  department is in the news.
12  Q  And do you read -- and I'll pull up some
13  exhibits in a minute.  And I think she e-mails that
14  out?  Is that -- is that fair?  Somebody e-mails
15  them out to you?
16  A  Sometimes I get them in e-mail, yes.
17  Q  And do you read those e-mails?
18  A  Sometimes I do.  Sometimes I don't.
19  Q  All right.  And I'm going to pull up an
20  exhibit here.  Well, let me ask one more question
21  before I do that.  If a specific news article is
22  cited in either an e-mail from Pojmann or anyone
23  else that gets to your desk or to your inbox, do you
24  go pull that news article and read it or do you just
25  rely on the information that's basically in the

## Page 42

1  e-mail that you're given?
2  A  Sometimes I read the article.  Sometimes I
3  rely on the information that's in the e-mail.  It
4  just -- it depends.
5  Q  Okay.  I am going to pull up --
6  MR. BUCHHEIT:  Are you okay?  Do you need
7  a break or anything?
8  THE WITNESS:  I'm okay.
9  Q  (By Ms. Snow)  We'll make this Plaintiff's
10  Exhibit 1.  Can you see my screen?
11  A  I can.
12  Q  And this is -- you can see that this is
13  from the Kansas City Star?
14  A  I can.
15  Q  And the date of this news article is
16  May 30th, 2018.  Do you see that right here?
17  A  Yes.
18  Q  Have you ever seen this news article?
19  MR. BUCHHEIT:  Can you give us a chance to
20  review it?
21  MS. SNOW:  Oh, yeah.  Was I going too
22  fast?
23  A  Okay.  You can go up.
24  MR. BUCHHEIT:  What's the date on that
25  article, Jenifer?

## Page 43

1  MS. SNOW:  May 30th, 2018.
2  MR. BUCHHEIT:  Okay.
3  A  Okay.  Okay.  Stop.  Okay.  I don't recall
4  reading this article.
5  Q  (By Ms. Snow)  Okay.  On June 4, it looks
6  like Karen Pojmann e-mailed -- do you see my screen?
7  A  Yes.
8  MS. SNOW:  And for the record, this is
9  going to be marked as Exhibit 2.
10  Q  (By Ms. Snow)  It looks like right here --
11  I don't know why it's not letting me highlight it.
12  Do you see where -- do you see my mouse?
13  A  Yes.
14  Q  It lists DOC Executive Staff Members
15  Section Heads?
16  A  Correct.
17  Q  And then David Edwards.  And I think those
18  are pretty much the only two people this is sent to.
19  Is it fair to assume that you are receiving this
20  e-mail as part of the Executive Staff Member section
21  head?
22  MR. BUCHHEIT:  Jenifer, you were cutting
23  out there for a minute.  Can you repeat that?
24  Q  (By Ms. Snow)  Yeah, I mean, I'm just
25  trying to -- so just so you know, Director Precythe,

## Page 44

1  this was produced to us from your attorney in
2  relation to me asking for -- or us asking for
3  correspondences to you.  I'm just trying to confirm
4  one of these recipients is in fact getting to your
5  inbox.  So were you part of this DOC Executive Staff
6  Members Section Heads?
7  A  Honestly, I don't know if I'm -- I don't
8  know who created that.  I don't recall seeing
9  section heads, because that's not -- that's not me.
10  DOC executive staff, that's our group e-mailing, but
11  I'm not familiar with DOC Executive Staff Members
12  Section Heads.  I don't know if that's a lower group
13  of people who report to all of those who report to
14  us, but I don't believe that -- I mean, it might be
15  me.  I don't know.
16  Q  Okay.  Do you receive these news roundups?
17  Is this kind of what we were talking about earlier
18  where there's a bunch of news clippings in an e-mail
19  form that's sent to your inbox?
20  A  I do recall Karen used to send the news
21  updates about what was going on in the media related
22  to Department of Corrections things.  So I do recall
23  getting these e-mails.
24  Q  Okay.  And how often would Karen send
25  these to you?

11 (Pages 41 to 44)

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 5:19-cv-06022-BP    Document 93-3    Filed 08/13/21    Page 11 of 39

## Page 45

1  A  She might have sent them every week.
2  Q  Okay.
3  A  Once a week.
4  Q  And I think you said used to.  Does she
5  not do this anymore?
6  A  I haven't seen these in a long time, no.
7  Q  Okay.  So this is the news roundup for
8  June 4th.  Do you see where my mouse is right here?
9  A  Yes.
10  Q  And it looks like this e-mail was sent --
11  I mean, again, we can't confirm that it was sent
12  technically to you, but I will represent to you that
13  this has been produced to us as an e-mail --
14  MS. SNOW:  I mean, Zach, are -- are we
15  going to stipulate that these e-mails went to
16  her at some point?  I don't know how you guys
17  went through the process of eliminating what to
18  give us and what to not give us.  But it's my
19  impression, Zach, that this is an e-mail that
20  Director Precythe received from Karen on
21  June 4th.  Are we going to have a fight about
22  that?  Are we going to stipulate?
23  MR. BUCHHEIT:  No, we produced -- we're
24  not going to have a fight about it.  We
25  produced this as a document from the Director's

## Page 46

1  inbox.
2  MS. SNOW:  Okay.
3  Q  (By Ms. Snow)  So -- yeah.  So Director
4  Precythe, despite your name not being here, your
5  attorney has represented to us that you -- you
6  received this e-mail.  And is it fair to say that
7  your inbox received this e-mail at 9:05 p.m. on
8  June 4th, 2018?
9  A  I would agree to that.
10  Q  Okay.  We'll just -- I'm kind of going a
11  little fast, but just because I want to get -- as
12  much as I love talking about puppies, I want to keep
13  going.
14  Do you see this, Investigations &
15  Lawsuits, Former inmate claims Missouri guard,
16  counselor raped her?
17  A  I do.
18  Q  And this says Associated Press, May 30th,
19  2018 and talks basically about Karen Keil and then
20  the guard, Edward Bearden, and the counselor,
21  John Dunn, and all the allegations that Karen set
22  forth in her lawsuit that we looked at the article
23  from May 30th a moment ago.
24  Do you remember seeing that article?
25  A  I do.

## Page 47

1  Q  And this very clearly lays out again what
2  that article from May 30th laid out, but this did
3  not get to your inbox until June 4, 2018?
4  MR. BUCHHEIT:  Jenifer, just to be clear,
5  this is an article from the Associated Press,
6  not the Kansas City Star, right?
7  MS. SNOW:  Oh, yeah.  There's -- yeah.  I
8  mean, fair point, Zach.  I can pull it up if we
9  need to.
10  Q  (By Ms. Snow)  Do you remember seeing an
11  Associated Press article on May 30th, 2018 --
12  A  No.
13  Q  -- regarding these allegations?  Okay.
14  But as of June 4th, 2018, you were put on notice
15  about both Edward Bearden and John Dunn and them
16  being sued due to Karen's lawsuit saying that she
17  was repeatedly raped by these individuals?
18  MR. BUCHHEIT:  Objection.  Vague,
19  ambiguous, compound.  If you understand, you
20  can answer.
21  A  I would say that I'm familiar with it, but
22  as it says, it's ongoing litigation, and I don't
23  follow cases step by step.  I wait until -- until
24  Matt Briesacher feels I need to be brought into a
25  case, and so I don't necessarily -- I don't read the

## Page 48

1  media to see what they're reporting, because I
2  don't -- I just don't read the media to see what
3  they're reporting.  I don't always trust it and
4  so -- I mean, I'm aware of the e-mail, but I didn't
5  necessarily read the articles.
6  Q  (By Ms. Snow)  Did you read this e-mail,
7  though?
8  A  I saw the e-mail.
9  Q  Okay.  And the e-mail, again, was from
10  June 4th, 2018?
11  A  Right.
12  Q  Okay.  So as of at least June 4, 2018, you
13  were put on notice that Edward Bearden was -- there
14  were allegations pending against Edward Bearden for
15  him raping Karen Keil more than 20 times?
16  MR. BUCHHEIT:  Objection.  Vague as to put
17  on notice.  Ambiguous, compound.  Subject to
18  that, you can answer.
19  A  I'm aware of the allegations.
20  Q  (By Ms. Snow)  Okay.  And you were made
21  aware of those in early June of 2018?
22  MR. BUCHHEIT:  Objection.  Misstates prior
23  testimony.
24  A  I read the e-mail on June 4th of '18 --
25  Q  (By Ms. Snow)  Okay.

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334

Page 49

1    A   -- and I've seen this.
2    Q   Okay.  Going to June 6th -- this is
3    another article, and this will be marked Exhibit 3.
4         MR. BUCHHEIT:  Can we -- is Christal
5    trying to say something?
6         MS. SNOW:  I can't see her.
7         MS. WANG:  Jenifer, sorry about that.
8    Before you go to Exhibit 3, could you give the
9    page number for Exhibit 2 so it's easier to
10   find?
11        MS. SNOW:  Yeah, sure.  I should have done
12   that from the get-go, Christal.  It is -- I
13   guess I didn't need it scrolled all the way up.
14        MS. WANG:  I believe it's page 4 of 8 for
15   Exhibit 2.
16        MS. SNOW:  Sorry.  Yeah, it is page 4 of
17   8.  Do you want the Bates, too, or no?
18        MS. WANG:  That would be great.  I
19   appreciate it.  Thank you.
20        MR. BUCHHEIT:  Hey, Jenifer, the Director
21   would like to use the restroom.  Could we take
22   a quick restroom break?
23        MS. SNOW:  Sure.
24        THE VIDEOGRAPHER:  We're going off the
25   record at approximately 10:03 a.m.

Page 50

1         (Off the record at 10:03 a.m.)
2         (On the record at 10:10 a.m.)
3         THE VIDEOGRAPHER:  We're back on the
4    record at approximately 10:10 a.m.
5    Q   (By Ms. Snow)  Director Precythe, I'm
6    now going to direct your attention to Exhibit --
7    what will be marked as Exhibit 3.  Do you see my
8    screen still?
9    A   I do.
10   Q   And 2 Lawsuits Allege Inmate Sexual
11   Assault by Missouri Guard, dated June 6th, 2018?
12   A   Yes.
13   Q   Do you see it says that?  Have you -- and
14   I'll go slowly, but have you ever seen this article
15   before?
16   A   I don't recall.
17   Q   Okay.  I don't even need to keep going.
18   You don't think you've seen it?
19   A   I don't.
20   Q   Okay.  And what will be marked as
21   Exhibit 4 is the next roundup that's been produced,
22   and it looks like this one is from Karen Pojmann to
23   you and it's the news roundup from June 11th, but it
24   looks like it wasn't sent to you until June 12th,
25   2018 at 7:24 p.m.  Do you see that?

Page 51

1    A   I do.
2    Q   And for the record, this is page 4 of 8 of
3    Exhibit 4, and under Lawsuits & Investigations,
4    Director Precythe, basically kind of just what we
5    saw on the exhibit before, but it says, 2 Lawsuits
6    Allege Inmate Sexual Assault by Missouri Guard.
7         Did I read that correctly?
8    A   Yes.
9    Q   And as we saw in Exhibit 2, which was the
10   roundup from June 4th, 2018, this one -- which was
11   regarding the allegations from Karen Keil, this one
12   is now mentioning Karen Keil, but also a new
13   Plaintiff, if you will, by the name of Lynnsey Betz.
14   Do you see that?
15   A   I do see that.
16   Q   And you received this information on
17   June -- I already forgot -- June 12th, 2018;
18   correct?
19   A   Yes.
20   Q   So as of June 12th, 2018, you were aware
21   not only of Karen Keil's lawsuit against
22   Edward Bearden, but also of Lynnsey Betz's lawsuit
23   against Edward Bearden?  Is that --
24        MR. BUCHHEIT:  Objection.  Mis --
25   misstates prior testimony.  If you understand

Page 52

1    the question, you can answer.
2    A   Oh.  Can you restate the question, please?
3    Q   (By Ms. Snow)  Sure.  I think we already
4    established that you received this roundup e-mail
5    from Karen Pojmann --
6         (Technical difficulty.)
7         MR. BUCHHEIT:  Jenifer, you're breaking
8    up.
9    Q   (By Ms. Snow)  As of June 12th, 2018 --
10        MR. BUCHHEIT:  Jenifer, you're breaking
11   up.
12        THE VIDEOGRAPHER:  Do you want to go off
13   the record real quick?
14        MS. SNOW:  I mean, am I --
15        MR. BUCHHEIT:  Yeah.
16        THE VIDEOGRAPHER:  We're going off the
17   record at approximately 10:13 a.m.
18        (Off the record at 10:13 a.m.)
19        (On the record at 10:14 a.m.)
20        THE VIDEOGRAPHER:  We're back on the
21   record at approximately 10:14 a.m.
22   Q   (By Ms. Snow)  Director Precythe, this
23   e-mail was in your inbox on June -- this roundup
24   e-mail was in your inbox on June 12th, 2018; right?
25   A   Correct.

13 (Pages 49 to 52)

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 5:19-cv-06022-BP   Document 93-3   Filed 08/13/21   Page 13 of 39

Page 53

1    Q   So is it fair to say that as of June 12th,
2  2018, you already knew about Karen Keil's
3  allegations against Bearden, but now you knew of
4  a -- another lawsuit from inmate Lynnsey Betz
5  against Edward Bearden on June -- as of June 12,
6  2018?
7    A   No.  Because the e-mail came on June 12th,
8  but that doesn't necessarily mean that I read it on
9  June 12th.  And it -- because it came to my e-mail
10 and there's an assumption that I read it, I may not
11 have read it.  I may have scanned it.  But if it
12 came on the 12th, it doesn't mean that I actually
13 saw it on the 12th, because I don't get to all my
14 e-mails the day they come.
15   Q   Okay.  Do you get to all of your e-mails
16 eventually?
17   A   Eventually, yes.
18   Q   You don't just delete e-mails that are in
19 your inbox?
20   A   Not as a regular practice, no.
21   Q   So it's your custom and practice to read
22 every e-mail that is in your inbox?
23   A   That is my typical practice, yes, is to
24 read it or scan it.  I may not read everything in
25 the e-mail, but I'll scan them.

Page 54

1    Q   And I assume the answer is you don't
2  remember or you don't know, but do you know if you
3  skimmed this e-mail on June 12th, 2018?
4    A   I don't know if I did.
5    Q   And, now, that's almost -- it's coming up
6  on three years ago.  I imagine you probably can't
7  tell me when you think you scanned this e-mail.  Is
8  that true?
9    A   That's correct.
10   Q   I mean, I guess -- how -- how delayed are
11 you with reading your e-mails sometimes?  I mean, if
12 this came in June, is it going to be your testimony
13 in trial that you didn't read this until September
14 of '18?
15   A   No.
16      MR. BUCHHEIT:  Objection.  Vague,
17 speculation, ambiguous.
18   Q   (By Ms. Snow)  Well, I'm not trying to be
19 vague and I'm not -- I'm not trying to speculate.  I
20 honestly just kind of want to know.  I mean, I also
21 sometimes get so many e-mails, I don't read them
22 that day, but I usually, you know, within 24 hours
23 have read -- at least skimmed what's in my inbox and
24 replied, you know, to who I need to reply to right
25 away and then the others just kind of sit in there

Page 55

1  and I deal with them later.
2    Q   Do you review or skim your e-mails within
3  a day, a week, a month, six months?  I just kind of
4  want to know what you routinely do.
5    A   My basic routine is that I read the
6  e-mails that require immediate attention and I get
7  to those first and then other e-mails like this one
8  would sit until I can get time where I can actually
9  go through and scan them or read through them to see
10 what's there.  So I would say that, for the most
11 part, the longest that e-mails sit unread or
12 unacknowledged in my e-mail box would be a week at
13 the most.
14   Q   Okay.  So if I -- if I do math correctly,
15 by June 19th, 2018, you most likely saw this roundup
16 e-mail dated June 12th?
17   A   This e-mail was sent on June 12th.
18   Q   Right.  And you said the longest e-mails
19 go unread is about a week.  So is it fair to assume
20 by at least a week later, you would have read this
21 e-mail?
22   A   I cannot -- I can't commit to that because
23 I don't know if we would have gotten another e-mail
24 and maybe I deleted this one and just went to the
25 next one that was read.  I really don't -- it was

Page 56

1  three years ago, so -- I get a large number of
2  e-mails daily, so I don't really recall if I read
3  this specific one.
4    Q   That's fine.  I'll move on.  This is going
5  to be marked as Exhibit 5, I believe.  And this is a
6  roundup from June 19th, 2018.  It's both the news
7  roundup for June 19th and it was sent to you,
8  Director Precythe, on June 19th, 2018.  Do you see
9  that?
10   A   I do.
11   Q   And this is probably what you meant.  I
12 mean, you got -- you got what has been marked as
13 Exhibit 4 on the 12th and you got a new roundup on
14 the 19th.  So are you telling me that because you
15 got the one on the 19th, if you hadn't read the one
16 from the 12th, you may have not skimmed that one and
17 just focused on the one from the 19th?
18      MR. BUCHHEIT:  Objection.  Vague,
19 ambiguous.  Misstates prior testimony.
20   A   Okay.  So it -- it is possible that I did
21 not see the one on the 12th and removed it from my
22 e-mail box because this one came in on the 19th.
23 That's possible.
24   Q   (By Ms. Snow)  Okay.  And on page 3 of 6
25 of Exhibit 5, you see under Lawsuits &

14 (Pages 53 to 56)

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 5:19-cv-06022-BP    Document 93-3    Filed 08/13/21    Page 14 of 39

## Page 57

1  Investigations, it says basically that John Dunn had
2  pled guilty to sexual contact with Karen Keil?
3      MR. BUCHHEIT:  Will you give the Director
4  a chance to review this?
5      MS. SNOW:  Yep.
6      MR. BUCHHEIT:  Just take your time and let
7  us know when you're done.
8      A   Right.  Yes.  I see this.  What was the
9  question?
10     Q   (By Ms. Snow)  I was just making sure that
11 we're on the same page as to what is contained in
12 Exhibit 5 so the record is clear.  And this was in
13 your inbox June 19th, 2018.  And, again, Edward
14 Bearden is listed because he is also in a roundup
15 brought by Karen Keil, which was back, you know --
16 given to you on -- in an e-mail on June 4th,
17 which --
18     MR. BUCHHEIT:  Is there a question?
19     MS. SNOW:  What, Zach?
20     MR. BUCHHEIT:  Is there a question?
21     MS. SNOW:  It's coming, maybe.
22     Q   (By Ms. Snow)  I mean, is Edward Bearden's
23 name in this -- in this e-mail?
24     A   Yes.  Edward Bearden's name is in this
25 e-mail.

## Page 58

1      Q   And it's relating to the allegations that
2  were in a prior roundup from June 4th?  And if I
3  need to go back to that exhibit, I can.  But
4  basically Plaintiff Karen Keil sued Edward Bearden
5  and John Dunn.  And this now, in the middle of June,
6  a few weeks later, John Dunn pleaded guilty, and
7  then it just lists again that Edward Bearden is, you
8  know, still on the radar, still on the hook, he's
9  being sued, too, still.
10     MR. BUCHHEIT:  Is there a question?
11     Q   (By Ms. Snow)  I'm just making sure that
12 that is kind of -- I mean, is that what you get from
13 reading this roundup piece on page 3 of 6 of
14 Exhibit 5?
15     MR. BUCHHEIT:  I'm just going to make a
16 standing objection that the exhibit speaks for
17 itself.  The words on the exhibit speak for
18 themselves.  If you give her a question as to
19 what Director Precythe knew or didn't know, I
20 think she can answer that.  But that's going to
21 be my standing objection with respect to this
22 exhibit.
23     MS. SNOW:  Okay.
24     MR. BUCHHEIT:  If you understand the
25 question, you can answer.

## Page 59

1      MS. SNOW:  I'll just move on.  It's fine.
2      Q   (By Ms. Snow)  This is going to be marked
3  as Exhibit 6.  And this is a post -- can you see the
4  whole title, or no?
5      A   I can.
6      Q   Okay.  Your guy's little faces and boxes
7  are covering up some of mine, but as long as you can
8  see it.  This is an article from Stltoday dated
9  July 2nd, 2018, and the title is Missouri Prison
10 Guard Sued for the Third Time Over Alleged Sexual
11 Assault of Inmates.  Is that -- is that correct?
12 Did I read that right?
13     A   Yes.
14     Q   Do you remember seeing -- and I'll go
15 slow, as slow as I need to -- seeing this article at
16 any time?
17     A   I do not.
18     Q   Okay.  Have you ever talked to John Ammann
19 at -- he was -- he used to work in the Legal Clinic
20 at SLU Law.  Have you ever spoken with him about any
21 of the allegations surrounding the officers I listed
22 earlier, so Bearden, Mosier, Mustain, or Reed?
23     A   Not to my recollection.
24     Q   Have you ever spoke to Brendan Roediger,
25 also Professor and working at the Legal Clinic at

## Page 60

1  SLU Law?  Have you ever spoke to him about any of
2  the allegations in any of these lawsuits?
3      A   No, not to my recollection.
4      Q   Have you ever spoke with any of the
5  lawyers from the law firm listed here, Kamykowski,
6  Gavin & Smith about any of the allegations in any of
7  these lawsuits?
8      A   Not that I'm aware of.
9      Q   Okay.  And you said you don't remember
10 reading this article at any time?
11     A   I don't.
12     Q   All right.  Here's another article dated
13 July 3rd, 2018.  Have you ever seen this article
14 before?
15     A   Not to my knowledge.
16     Q   And that will be marked as Exhibit 7, just
17 so the record is clear.
18     Do you know when Edward Bearden -- well,
19 do you know that Edward Bearden is retired from the
20 Department of Corrections?  He no longer is employed
21 at Chillicothe.  Are you aware of that?
22     A   I am.
23     Q   Do you know when he retired?
24     A   I don't.
25     Q   Do you know why he retired?

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 5:19-cv-06022-BP    Document 93-3    Filed 08/13/21    Page 15 of 39

## Page 61

1    A   I do not.

2    Q   Well, he did.

3    A   Excuse me?

4    Q   I'm going to show you -- I'm going to show

5    you did not know Edward Bearden personally.  Is this

6    A   I can.

7    Q   Do you see an e-mail from you to Edward

8    Bearden dated August 17th, 2018?

9    A   I do.

10   Q   And you, I believe, earlier testified that

11   you did not know Edward Bearden personally.  Is this

12   an e-mail that's kind of just a form e-mail that's

13   sent off to correctional officers when they retire?

14   A   This is a standard e-mail that my

15   executive assistant sends to all Department of

16   Corrections employees when they're retiring.  She

17   gets that list and -- this was something that I

18   started when I first got to the department.  It was

19   part of our culture exchange, and employees were not

20   being recognized for their years with the Department

21   prior to retiring, and I thought it was important

22   that they be recognized by the Director's office.

23   Q   Okay.  And do you know if Edward Bearden

24   was planning on retiring in August of 2018?

25   A   I did not.

## Page 62

1    Q   Do you have an opinion one way or the

2    other that correctional officers, when they're under

3    investigation, retire earlier than otherwise

4    planned?

5    MR. BUCHHEIT:  Objection, vague.

6    A   I can't speak to why correctional officers

7    retire or when they retire.

8    Q   (By Ms. Snow)  Are you, I guess, ever

9    aware of where correctional officers work within any

10   given facility in the State of Missouri?

11   A   I don't understand the question.

12   Q   No, and I appreciate you saying that.

13   So I will represent to you that Edward

14   Bearden has testified in this case and has said that

15   he worked utility, so kind of in and out all over

16   Chillicothe for the majority of his time while he

17   was there.  Would you be aware of if or when his job

18   changed to where he did no -- he no longer was

19   assigned to utility and he worked either at a

20   housing unit or the control center or transporting

21   patients to and from?  Would you have any knowledge

22   of any of that at any time?

23   A   No, I would not.

24   Q   Okay.  As of -- if we go back to this

25   exhibit, we can --

## Page 63

1    COURT REPORTER:  Sorry, Jenifer, you cut

2    out there.

3    Q   (By Ms. Snow)  As of June -- as of June,

4    Director Precythe, you were aware that Bearden was

5    involved in litigation due to raping a inmate or

6    offender; correct?

7    MR. BUCHHEIT:  Objection.  Misstates

8    testimony.  Counsel's testimony.

9    MS. SNOW:  I'm not -- and, Zach, I don't

10   think I'm misstating her testimony.  And I'll

11   pull up the exhibit again so we can go over it.

12   MR. BUCHHEIT:  I think we can say she was

13   aware of allegations.  I think that's fair.

14   MS. SNOW:  Okay.  Sure.  Fine.

15   Q   (By Ms. Snow)  Were you -- Director

16   Precythe, were you aware of allegations that

17   Edward Bearden sexually harassed, assaulted, abused

18   an offender -- even one offender -- as of June 2018?

19   A   I would have been.

20   Q   Could you have put Bearden on leave with

21   pay when --

22   (Technical difficulty.)

23   MR. BUCHHEIT:  Jenifer, I don't mean to

24   interrupt you, but you were breaking up again

25   for me.  Could you -- could you start that

## Page 64

1    question over?  I'm sorry.

2    MS. SNOW:  Yeah.

3    Q   (By Ms. Snow)  Could you have put

4    Edward Bearden on leave without pay while, I guess,

5    either the lawsuit was pending or an investigation

6    was pending against him in -- in June of 2018?

7    A   Actually, me?  No.  The appointing

8    authority for the Division of Adult Institution in

9    matters like that is the Division Director, which

10   would have been Alana Boyles at the time.

11   Q   And when did Boyles leave?

12   A   She resigned in January of 2020.

13   Q   Would she discuss these types of matters

14   with you?

15   A   Possibly --

16   Q   And by these -- yeah.  And just so we're

17   both on the same page, when I say these types of

18   matters, I mean deciding to put an officer, or a

19   staff member for that matter, on administrative

20   leave or no contact at any point during their

21   careers with the Department of Corrections.

22   A   Not always.  There was not a requirement

23   that -- that those be discussed with me as the

24   Director.

25   Q   In what situations would that be required?

16 (Pages 61 to 64)

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 5:19-cv-06022-BP   Document 93-3   Filed 08/13/21   Page 16 of 39

## Page 65

1    A   I don't have a particular -- I don't have
2  a particular practice that says all of X needs to
3  come to me before they take action.  By statute, the
4  Division Directors are the appointing authority for
5  their division, and I trust them to handle their
6  staff as appropriate.
7    Q   Has there ever been a time where you
8  stepped in and directed one of your directors to do
9  something that they were otherwise not going to do?
10    MR. BUCHHEIT:  Objection, speculation.
11  Objection, vague.
12    Q   (By Ms. Snow)  I'm not speculating
13  anything, I'm just asking if you've ever done that.
14    MR. BUCHHEIT:  You're speculating as to
15  what they were going to do.  If you understand.
16    MS. WANG:  Jenifer, I'm so sorry.  The
17  question broke up for me, so I don't know what
18  you asked.  Could you please repeat it?
19    MS. SNOW:  Sure.  I mean, I'll just start
20  over.
21    Q   (By Ms. Snow)  Director Precythe, you just
22  told me that by statute, basically the Directors --
23  the Directors or the Division Directors are trusted
24  to handle putting officers or staff on leave,
25  administrative leave, no contact.  Any and all of

## Page 66

1  those decisions are made by them; correct?
2    A   Correct.
3    Q   And you also just told me that they don't
4  have to come to you about it, but they can; correct?
5    A   If they -- if it's something that they
6  need to discuss with me because they're unsure what
7  to do, we may have a discussion, but there's no
8  requirement that they come to me.
9    Q   Has there been at any point between 2017
10  to today, as you sit here and testify, that you have
11  gone to a Division Director and said -- and, I mean,
12  I guess specifically Alana Boyles -- and said this
13  should probably happen with this officer or this
14  staff member due to X?
15    MR. BUCHHEIT:  Objection, vague.
16    A   The answer to that would be no.  I've not
17  gone to Division Directors to tell them to do
18  something different than what they were planning to
19  do.
20    Q   (By Ms. Snow)  You have the authority to
21  do that, though.  True?
22    MR. BUCHHEIT:  Objection, vague.
23    A   We -- they are the appointing authority,
24  which gives them the final say in how personnel
25  matters are handled within their division.  I'm the

## Page 67

1  appointing authority for the Office of Director, not
2  for the Division of Adult Institutions.
3    Q   And who does the Division of Adult
4  Institutions -- I mean, they re -- they report to
5  you.  Alana Boyles, back in 2017, '18, '19 through
6  January 2020, when she left, she reported directly
7  to you; right?
8    A   Correct.
9    Q   So I guess -- I guess I'm just confused if
10  you thought something didn't happen that wasn't
11  happening, would you or would you not have the
12  authority to make it happen?  And -- and before Zach
13  objects 20 different ways, I mean, I can make this
14  as specific as we need.
15    Edward Bearden had been sued numerous
16  times in 2018, specifically before late June and
17  early July of 2018, and we've already shown exhibits
18  and established that you knew of at least one or two
19  as of June of 2018.
20    Would you have the authority to go to
21  Alana Boyles and say Edward Bearden needs to be on
22  leave without pay until we figure out what's going
23  on?
24    MR. BUCHHEIT:  Objection, vague.
25    A   I would have the authority to go and have

## Page 68

1  a discussion with her about matters, but she has the
2  ultimate decision to handle the situation.  She's
3  the appointing authority for the Division -- or she
4  was the appointing authority for the Division.
5    Q   (By Ms. Snow)  Okay.  She could have put
6  Edward Bearden on leave without -- or on leave with
7  pay back in summer of 2018?
8    A   She would have had the authority to do
9  that, yes.
10    Q   And she would have had the authority to
11  have him put on no contact back in June of 2018?
12    A   She would have had the authority to do
13  that.
14    Q   Were you aware that Edward Bearden was
15  under investigation?
16    A   I -- when?
17    Q   Any time in, we'll say, 2018.
18    A   I don't -- I don't recall as I sit here
19  today if I knew he was under investigation.
20    Q   I'm going to share my screen with you
21  again.  Can you see this e-mail from John Ammann
22  dated March 19, 2018?
23    A   I see that.
24    Q   And that actually -- this time, it's
25  directly sent to your inbox.

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334

## Page 69

1      Do you see that?
2      A   I do.
3      Q   And towards the bottom it says, We hope
4   you are following the Bearden investigation in
5   Chillicothe.  Do you see that?
6      A   I do.
7      MR. BUCHHEIT:  Jenifer, what exhibit is
8   this?
9      MS. SNOW:  Sorry, Zach.  Good point.
10   We'll mark this as Exhibit 8.
11      Q   (By Ms. Snow)  As of March 2018, were you
12   aware that there was an investigation regarding
13   Bearden, who was one of your correctional officers
14   at Chillicothe?
15      A   Sitting here today, I don't -- I don't --
16   I honestly do not recall what I was aware of in
17   March of 2018.
18      Q   And I think we established earlier, you --
19   your custom and practice is to review e-mails that
20   require a response from you -- a pretty timely
21   response from you quickly, and other ones can take
22   up to a week for you to skim or read.  Would this
23   e-mail fall under the category of needing a response
24   from you, or no?
25      A   This -- I can tell you, I recall reading

## Page 70

1   this e-mail, and what I can tell you about following
2   the Bearden investigation in Chillicothe, I didn't
3   take any action, I didn't ask anything about it,
4   because this is one of those where there's a lot of
5   things going on, and I trusted my staff to tell me
6   if there was something I needed to know about the
7   Bearden investigation.  So I didn't look into it any
8   further to see what he's talking about in this
9   particular e-mail.
10      I mean, there are a lot of things going on
11   in the Department of Corrections, and looking into
12   personnel investigations is not something I do
13   because there are a lot of other matters that
14   require my attention.  So I was waiting for -- I can
15   tell you, I was waiting to be informed by my staff
16   on what I needed to know.
17      Q   And I think you told me earlier that
18   Matt Briesacher would have been the one to talk to
19   you about any investigations happening; is that
20   right?
21      A   That is correct.
22      Q   Do you remember if Matt Briesacher ever
23   talked to you about the Bearden investigation in
24   Chillicothe?
25      A   I really don't recall ever hearing about

## Page 71

1   any of the Bearden investigations in Chillicothe.
2      Q   Is it possible that Matt Briesacher told
3   you about the investigations into Bearden at
4   Chillicothe in 2018?
5      A   I don't recall any discussions about
6   Bearden and his investigations.
7      Q   And I understand that March 2018, and
8   specifically March 19th, 2018, is obviously over
9   three years ago, and I appreciate you saying that
10   you don't recall events of three years ago.  But
11   can't you agree with me that it's possible that
12   Matt Briesacher talked to you about the Bearden
13   investigation in Chillicothe that was unfolding as
14   early as 2018?
15      A   Again, I can't -- I don't know, because
16   there are -- there's so many things that happen in
17   any given day in the Department of Corrections.  I
18   honestly don't recall if the Bearden investigation
19   was something that I was aware of.  Like I said, I
20   see this e-mail, but I didn't go and ask anything
21   additional about the Bearden investigation because
22   of this e-mail or any other reason.  I -- there are
23   a lot of things that come across my desk on a daily
24   basis, on a weekly basis, on a quarterly basis, and
25   I don't have time to get into every single employee

## Page 72

1   matter that comes to the Office of Professional
2   Standards.
3      Q   Okay.  I'm going to show you what has been
4   marked as Exhibit -- or what will be marked as
5   Exhibit 9.  This e-mail is from Stacey Ross.  Who is
6   Stacey Ross?
7      A   She works in the Office of Professional
8   Standards -- or over in our legal section.  She
9   works in our legal section.  Excuse me.
10      Q   Okay.  Is she, like, Matt Briesacher's
11   assistant or who -- who is she?  What's her title?
12      A   I -- I don't know.
13      Q   Okay.  Fair enough.
14      MS. SNOW:  And, Zach, are you going to
15   agree that this is an e-mail produced by you,
16   that it was retrieved from Director Precythe's
17   inbox?
18      MR. BUCHHEIT:  Yeah, we produced this as a
19   document that was in the Director's inbox.
20   Correct.
21      MS. SNOW:  Thank you.
22      Q   (By Ms. Snow)  So Director Precythe, this
23   is an e-mail from Stacey Ross.  So we'll just say
24   she's with Matt Briesacher's office.  Is that fair?
25      A   Yes.

18 (Pages 69 to 72)

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 5:19-cv-06022-BP    Document 93-3    Filed 08/13/21    Page 18 of 39

## Page 73

1    Q   Okay.  And this was sent to you June 28th,
2  2018, and the subject is Lynnsey Betz v. Edward
3  Bearden, et al.  Do you see that?
4    A   I do.
5    Q   Do you remember receiving this e-mail?
6    A   I don't.
7    Q   But you would have read it or at least
8  skimmed it within a week of June 28th, 2018?
9    A   Actually, not this particular e-mail.
10  When I see e-mails of this nature -- and the "O"
11  means that it's an offender complaint.  I don't know
12  if these complaints are against staff or other
13  offenders, and so I don't -- I don't look at these
14  e-mails.  I wait for the Office of Professional
15  Standards to bring to me the things that I need to
16  be made aware of.  I see these e-mails regularly
17  from the offender population.
18    Q   Okay.  So I don't want to misstate your
19  testimony, but is it fair to say that you somewhat
20  ignore the e-mails if the subject line has an O in
21  parentheses in it?
22    A   I wouldn't say that I ignore them, but
23  what I would say is that I don't place the same
24  emphasis on reading these e-mails as I do from the
25  other e-mails that I receive on a regular basis.

## Page 74

1    Q   Okay.  So, I mean, I guess now I'm
2  confused.  You do or don't read the e-mails that
3  have an O in parentheses?
4    A   I do not read these e-mails.
5    Q   Okay.  Do you know when you were first
6  made aware that Elijah Mosier -- or that there were
7  allegations that Elijah Mosier sexually harassed or
8  assaulted an offender?
9    A   I --
10    MR. BUCHHEIT:  Objection.  Assumes facts
11  not in evidence.
12    A   I do not.
13    Q   (By Ms. Snow)  Are you copied on any
14  officer's disciplinary paperwork?  In other words,
15  if I told you Mosier was disciplined due to
16  allegations relating to sexual harassment or
17  assault, would you have been made aware of that?
18  Are you cc'd on those correspondences?
19    A   I am not.
20    Q   Are you ever involved in any of that?
21    A   No.
22    MR. BUCHHEIT:  Objection, vague.
23    A   Not to my knowledge.  I don't receive hard
24  copies of information or e-mails about discipline.
25    Q   (By Ms. Snow)  I'm going to pull up an

## Page 75

1  exhibit, and I think this is Exhibit 10, but someone
2  please correct me if I'm wrong.  Ms. Precythe, can
3  you see my screen?
4    A   I can.
5    Q   And this looks like a letter that is dated
6  June 23rd, 2017, and it is directed to Correctional
7  Officer Elijah Mosier; is that correct?
8    A   Yes.
9    Q   And I can go as slow as I need to or as
10  quickly as I need to.  I do want you to kind of
11  review it.
12    MR. BUCHHEIT:  Take your time.
13    A   Okay.  Right.
14    Q   (By Ms. Snow)  And so as you said earlier,
15  this would be something that Ms. Boyles would
16  handle.  And then this cc, it says your name right
17  here.  Do you see that?
18    A   I do.
19    Q   Does that mean you were given a copy of
20  this document?
21    A   I don't know where those documents go.  I
22  don't recall receiving them.
23    Q   And did you see the -- kind of the
24  substance of that -- I don't know if it even said it
25  in there -- of the discipline?  So obviously it was

## Page 76

1  for Mosier.  I will represent to you -- and I can
2  open documents if I need to, but it had to do with
3  an incident where he called another staff member at
4  Chillicothe a bubble bitch.
5    Does that ring any bells to you?
6    A   No.
7    Q   Are you aware that Elijah Mosier is a
8  Defendant in this lawsuit?
9    A   No.
10    Q   Even as you sit here today, you have no
11  idea that he is a named officer in this lawsuit
12  that's pending?
13    A   No.
14    Q   Have you ever been given a copy of the
15  Complaint in this case?
16    A   Not to my knowledge.
17    Q   So do you even know what the allegations
18  are that have been made against you personally?
19    A   No.
20    Q   Have you ever asked to see the Complaint?
21    A   No.
22    Q   Is there a reason why?
23    A   No.
24    Q   I think you told me earlier that you've
25  given five depositions.  How many lawsuits have you

19 (Pages 73 to 76)

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 5:19-cv-06022-BP   Document 93-3   Filed 08/13/21   Page 19 of 39

Page 77

1    personally been named in?
2        A    I have no idea.
3        Q    Are you aware that Todd Mustain, who used
4    to be a correctional officer at Chillicothe, is also
5    a named Defendant in this lawsuit?
6        A    No.
7        Q    So you do not know that Teri Dean is
8    alleging that she was sexually harassed and
9    assaulted and abused by Todd Mustain?  Is that a
10    fair statement?
11        A    I'm not aware of that.
12        Q    And I asked you earlier about an offender
13    by the name of Crystal Logan.  Do you remember that?
14        A    At the beginning.
15        Q    Right.  And you said you -- you did not
16    know her name or recognize her name.  I will
17    represent to you that she came forward with a
18    complaint that Mustain exposed himself to her while
19    she was in her cell.
20            I understand that you would not have been
21    given maybe a heads-up about that, but are you made
22    aware of when your correctional officers have
23    substantiated claims against them?
24        A    There -- I'm -- I -- again, I rely on
25    Matt Briesacher or Vevia Sturm to bring information

Page 78

1    to me, substantiated sexual misconduct to me when
2    it's something that I need to be aware of.  I trust
3    them to make me aware of the things that I need to
4    be aware of.
5        Q    And is that the same -- would you say the
6    same for substantiated and unsubstantiated claims?
7        A    If it's something that's going to be high
8    profile in nature or something along those lines,
9    they'll bring what they need to to me, but
10    otherwise, I rely on them to handle all matters that
11    are PREA, unprofessional conduct, civil right
12    violation, that's what the Office of Professional
13    Standards is there to do.  I don't have time to get
14    involved in all employee matters.
15        Q    Are you made aware when correctional
16    officers are fired due to substantiated claims
17    relating to sexual misconduct?
18        A    It's possible.  I can't recall any right
19    offhand.
20        Q    Do you know that Todd Mustain has been
21    fired and no longer works at Chillicothe
22    Correctional Center?
23        A    I'm not familiar with that name.
24        Q    Are you -- are you familiar with the name
25    Kevin Reed?

Page 79

1        A    I am not.
2        Q    So is it fair to assume that you do not
3    know any of the allegations against him in this
4    lawsuit?
5        A    I do not.
6            MS. SNOW:  I think I'm about finished,
7    Zach.  Do you want to take, like, a five-minute
8    break just so I can review my notes and make
9    sure that I have nothing further?
10            MR. BUCHHEIT:  Sure.  Yeah, that's fine
11    with me.
12            THE VIDEOGRAPHER:  Going off the record at
13    approximately 10:54 a.m.
14            (Off the record at 10:54 a.m.)
15            (On the record at 11:05 a.m.)
16            THE VIDEOGRAPHER:  We're back on the
17    record at approximately 11:05 a.m.
18        Q    (By Ms. Snow)  Director Precythe, are you
19    okay to continue going?
20        A    I am.
21        Q    I only have a few more questions and then
22    we'll be done.  Okay?  Thank you for your patience
23    and for being here today.  Just a few questions to
24    end on.
25            Have you had any communications with the

Page 80

1    Governor's office about any of the allegations in
2    this lawsuit?
3        A    No.
4        Q    Have you had any communications with the
5    Governor's office about the FBI investigating
6    Chillicothe in 2018?
7        A    No.
8        Q    Have you had any communications with the
9    Governor's office about any officers at Chillicothe
10    being sued for sexual misconduct?
11        A    No.
12        Q    And I know earlier you told me that
13    Alana Boyles, you know, kind of handles both the
14    disciplinary actions and then, you know, putting
15    officers on leave without pay or no contact.  She --
16    she kind of handles all that.  Could you fire her if
17    you disagreed with how she was handling all of that?
18        A    The directors are at will employees who
19    serve at the pleasure of the director for the
20    department.
21        Q    So the director for Ms. Boyles'
22    department, who -- who is that?
23        A    Me.  I'm -- the department -- they serve
24    at the pleasure of the Department Director.
25        Q    So you could fire her -- or could have

20 (Pages 77 to 80)

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 5:19-cv-06022-BP     Document 93-3     Filed 08/13/21     Page 20 of 39

## Page 81

1    fired her if you disagreed with how she was handling
2    things. Is that true?
3        A   I could fire her if I was not satisfied
4    with her performance, yes.
5        Q   Okay. And I know you testified earlier
6    that you just found out today that there are
7    actually five lawsuits currently pending in Federal
8    Court against Edward Bearden. Do you wish you knew
9    of that sooner?
10       A   I am --
11       MR. BUCHHEIT: I'm just going to object.
12   Vague and ambiguous, but go ahead.
13       A   I -- I mean, it's -- do I wish I had known
14   about it sooner?
15       Q   (By Ms. Snow) Yeah.
16       A   I rely on my team to tell me what I need
17   to know, and I did not -- I was not aware that there
18   were five cases. I was prepared for the case that
19   relates specifically to me.
20       Q   But, again, you don't know of even the
21   allegations against you in the case specifically
22   that relates to you? You testified earlier that you
23   don't -- you've never seen the Complaint and you
24   don't know what the specific allegations against you
25   are. True?

## Page 82

1        A   Correct.
2        Q   I will represent to you that the Complaint
3    that's been filed in this case as it relates to you
4    specifically is your failure to act, specifically
5    during the time frame where you knew about Bearden
6    and did not protect Teri Dean. What -- I mean, what
7    are your thoughts about that?
8        MR. BUCHHEIT: Objection. Vague,
9    ambiguous.
10       MS. WANG: I will also object that
11   counsel's -- I'll join.
12       (Technical difficulty.)
13       MR. BUCHHEIT: Christal, I think, got --
14       MS. WANG: I also wanted to object that
15   counsel is testifying. Thank you.
16       MR. BUCHHEIT: I'll join.
17       Q   (By Ms. Snow) I mean, Director Precythe,
18   do you wish you knew that there were five lawsuits
19   pending against one of your correctional officers in
20   2018 and 2019? Is it something that would be
21   important for you to know?
22       MR. BUCHHEIT: Objection. Vague,
23   ambiguous, compound.
24       A   Again, I rely on my team to make me aware
25   of the things that I need to be aware of.

## Page 83

1        Q   (By Ms. Snow) And I understand that, and
2    I -- I will talk to Briesacher probably pretty soon
3    here to see what he thinks is important and what he
4    doesn't, because I think we might have some
5    disagreements there.
6        But I'm asking you, as you sit here today
7    as a Defendant in a lawsuit that Teri Dean has filed
8    in Federal Court, if you think it's important that
9    one of the Defendants that's going to be sitting
10   next to you in October has actually been named now
11   in five suits within the time span of six to nine
12   months. Is that an important --
13       MR. BUCHHEIT: Objection. Objection.
14   Vague, ambiguous, argumentative.
15       MR. TAULBEE: And I'll further object that
16   it's improper.
17       MR. BUCHHEIT: You can answer.
18       Q   (By Ms. Snow) You can answer, Director.
19       MS. WANG: I'll join in those
20   objections. Thank you.
21       A   It's -- it is information that -- that --
22   it -- I -- I don't know how to respond to the
23   question, quite frankly. I don't. He is not an
24   employee of the department at this point. I
25   don't -- I really don't know how to respond to that

## Page 84

1    question. I rely on my team to tell me what I need
2    to know and when I need to know it.
3        MS. SNOW: Yeah, I have nothing further.
4    Thank you for your time.
5        MR. TAULBEE: I don't have any questions
6    at this --
7                    EXAMINATION
8    QUESTIONS BY MS. WANG:
9        Q   Director Precythe, this is Christal Wang.
10   I represent Director Kevin Reed, and I had a handful
11   of questions.
12       Would it be fair to say that some of the
13   lawsuits against DOC and DOC employees are
14   dismissed?
15       A   Yes.
16       Q   Changing subjects, I was wondering if you
17   could tell me what an exit survey or exit interview
18   is.
19       A   When employees leave the department, they
20   have the opportunity to voluntarily complete an exit
21   survey with their supervisor prior to leaving to
22   give us information about how we're doing, the
23   department, or whatever.
24       Q   I know you already said this, but the exit
25   survey or the exit interview is voluntary; correct?

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334

Case 5:19-cv-06022-BP   Document 93-3   Filed 08/13/21   Page 21 of 39

Page 85

1    A   Yes, it is.
2        Q   And so this is a difference between a PREA
3    investigation and an exit survey or exit interview;
4    correct?
5        A   Yes.
6        MS. WANG:  I have no further questions.
7    Thank you so much.
8        MR. BUCHHEIT:  Does anybody else have
9    questions?  Okay.  If you don't mind, I'd like
10   to take 10 minutes to look over the notes and
11   I'll have a couple of follow-ups.
12       Do you guys want to come back at let's say
13   11:23?
14       THE VIDEOGRAPHER:  We're going off the
15   record at approximately 11:12 a.m.
16       (Off the record at 11:12 a.m.)
17       (On the record at 11:26 a.m.)
18       THE VIDEOGRAPHER:  We're back on the
19   record at approximately 11:26 a.m.
20           EXAMINATION
21   QUESTIONS BY MR. BUCHHEIT:
22       Q   Okay.  Director Precythe, do you remember
23   earlier we talked about interrogatories in this
24   case?
25       A   Yes.

Page 86

1        Q   Do you know what interrogatories are?
2        A   I do.
3        Q   What are they?
4        A   Questions asked before -- or once lawsuits
5    have been filed.
6        Q   And you answered interrogatory in this
7    case, didn't you?
8        A   I did.
9        Q   Who did you work with to answer those?
10       A   Matt Briesacher.
11       Q   Okay.  You and Matt worked together to
12   reach those answers?
13       A   We did.
14       Q   Okay.  Is it fair -- I mean, the answers
15   you worked on to reach with Matt, did those vary
16   substantially from the answers that were submitted
17   to opposing counsel?
18       A   No.
19       Q   You're aware of -- are you aware of every
20   lawsuit you're in?
21       A   No, I'm not.
22       Q   Okay.  You're aware you're a Defendant in
23   this lawsuit, though?
24       A   I am.
25       Q   And you've been -- it's fair to say you've

Page 87

1    been made aware of certain allegations in this
2    lawsuit for the first time today; right?
3        A   Correct.
4        Q   I think you stated earlier you've never
5    seen the Complaint in this lawsuit; is that right?
6        A   That's correct.
7        Q   I think you also stated you've never seen
8    specifically what the allegations were against you
9    in this lawsuit; is that right?
10       A   Correct.
11       Q   This isn't the first time you've been
12   sued?
13       A   No.
14       Q   Is it your understanding that allegations
15   in a lawsuit are -- are not necessarily true and are
16   just allegations?
17       A   Yes.
18       Q   Can you say how often you're sued?
19       A   No.
20       Q   Why don't you know?
21       A   Because we're an incredibly large
22   department, and as head of the department, any time
23   people sue the Department of Corrections, I'm the
24   named person.
25       Q   Do you have to time to read every lawsuit

Page 88

1    that you're named in?
2        A   I do not.
3        Q   Why not?
4        A   Because there's a lot of other things
5    going on in the department besides lawsuits.  We're
6    responsible for things as wide as electric fences,
7    Puppies for Parole, the healthcare, the food,
8    feeding 20,000 people three times a day, Probation
9    and Parole.  I mean, there's a tremendous number of
10   things that we have to deal with, leaky roofs,
11   arresting pilots in St. Louis, just a whole
12   assortment of things in addition to culture change,
13   hiring new management.
14       I mean, the list just goes on and on of
15   all the things that we have to deal with in the
16   department, reentry initiatives, COVID, vaccines,
17   hepatitis C.  I mean, there's just -- there's a lot
18   of things that go on in our department.  I can't be
19   involved with every single thing.
20       Q   So I think you mentioned that you are sued
21   quite often; is that right?
22       A   Yes.
23       Q   I think you mentioned that allegations
24   against you in lawsuits aren't necessarily true; is
25   that right?

22 (Pages 85 to 88)

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 5:19-cv-06022-BP    Document 93-3    Filed 08/13/21    Page 22 of 39

Page 89

1　A　That's true.
2　Q　Is it fair to say that if every allegation
3　in every lawsuit filed against you were true, you
4　might not have a job?
5　A　That would be true.
6　Q　Are you aware of all the allegations in
7　this lawsuit?
8　A　No.
9　Q　And it's true that some of the allegations
10　you've just learned about for the first time today?
11　A　Yes.
12　Q　Have you ever heard of -- I think you
13　testified earlier you've never heard of Defendant
14　Mosier, Mustain, or Reed; is that right?
15　A　I have not.
16　Q　But you have heard about Bearden?
17　A　Yes.
18　Q　Do you recall when you first heard about
19　Bearden?
20　A　No.
21　Q　Do you recall how you might have found
22　out?
23　A　No.
24　Q　So it could have been through e-mail?
25　A　It's possible.

Page 90

1　Q　And it's also possible it could have been
2　through staff?
3　A　Yes.
4　Q　Like Matt Briesacher?
5　A　Yes.
6　Q　But you don't know how you first found
7　out?
8　A　No.
9　Q　Do you get a lot of e-mails?
10　A　I do.
11　Q　How many?
12　A　Hundreds.  Upwards of a hundred a day,
13　easily.
14　Q　Do you remember every e-mail you ever get?
15　A　I do not.
16　Q　Do you remember the content of every
17　e-mail you ever get?
18　A　No.
19　Q　Do you get e-mails with news articles?
20　A　I do.
21　Q　How often?
22　A　Regularly.
23　Q　So it's fair to say DOC is regularly in
24　the news?
25　A　Unfortunately, yes.

Page 91

1　Q　And why?
2　A　We could be in the news for pay,
3　legislation, again, Puppies for Parole, reentry
4　initiatives, cases against staff, allegations,
5　treatment programs.  I mean, there's -- there are a
6　number of reasons the Department of Corrections is
7　in the news.
8　MR. BUCHHEIT:  I think that's all I have
9　for now.  I might have further questions if --
10　if any of you have further questions.
11　MS. SNOW:  I have nothing further.
12　MR. BUCHHEIT:  Nick?  Christal?
13　MR. TAULBEE:  I don't have anything.
14　Thank you.
15　MS. WANG:  I have no further questions.
16　Thank you.
17　MR. BUCHHEIT:  Okay.  I think we're done.
18　We will read and sign.
19　THE VIDEOGRAPHER:  We're going off the
20　record at approximately 11:31 a.m.
21　(Deposition concluded at 11:31 a.m.)

Page 92

1　CERTIFICATE OF REPORTER
2
3　I, Julie Ann Whiting, Certified Court
4　Reporter within and for the State of Missouri
5　and Registered Professional Reporter, do hereby
6　certify that the testimony of said witness was
7　taken by me to the best of my ability and
8　thereafter reduced to typewriting under my
9　direction; that I am neither counsel for,
10　related to, nor employed by any of the parties
11　to the action in which this deposition was
12　taken, and further that I am not a relative or
13　employee of any attorney or counsel employed by
14　the parties thereto, nor financially or
15　otherwise interested in the outcome of the
16　action.
17
18
19
20　Julie Ann Whiting, CCR 830, RPR
21　State of Missouri
22
23
24
25

23 (Pages 89 to 92)

ALARIS LITIGATION SERVICES
www.alaris.us　　Phone: 1.800.280.3376　　Fax: 314.644.1334
Case 5:19-cv-06022-BP　Document 93-3　Filed 08/13/21　Page 23 of 39

## Page 93

ALARIS LITIGATION SERVICES

May 13, 2021

Mr. Zachary Buchheit
Office of Attorney General
207 West High Street
Jefferson City, Missouri  65101

IN RE: KEIL V. MHM SERVICES, INC., ET AL.; LYNNSEY
BETZ V. EDWARD BEARDEN, ET AL.; ASHLEY
ZIESER V. EDWARD BEARDEN, ET AL.; TERI DEAN
V. EDWARD BEARDEN, ET AL.; JANE DOE V.
EDWARD BEARDEN, IN HIS INDIVIDUAL CAPACITY

Dear Mr. Zachary Buchheit:

Please find enclosed your copies of the deposition of
ANNE PRECYTHE taken on April 28, 2021 in the
above-referenced case. Also enclosed is the original
signature page and errata sheets.

Please have the witness read your copy of the
transcript, indicate any changes and/or corrections
desired on the errata sheets, and sign the signature
page before a notary public.

Please return the errata sheets and notarized
signature page within 30 days to our office at 711 N
11th Street, St. Louis, MO 63101 for filing.

Sincerely,


Julie Ann Whiting

Enclosures

## Page 95

STATE OF _____)

COUNTY OF _____)

I, ANNE PRECYTHE, do hereby certify:
     That I have read the foregoing deposition;
     That I have made such changes in form
and/or substance to the within deposition as might
be necessary to render the same true and correct;
     That having made such changes thereon, I
hereby subscribe my name to the deposition.
     I declare under penalty of perjury that the
foregoing is true and correct.
     Executed this _____ day of _____,
20____, at _____.




                    _____
                    ANNE PRECYTHE


                    _____
                    NOTARY PUBLIC
My Commission Expires:

## Page 94

ERRATA SHEET
Witness Name: ANNE PRECYTHE
Case Name: KEIL V. MHM SERVICES, INC., ET AL.; LYNNSEY
BETZ V. EDWARD BEARDEN, ET AL.; ASHLEY
ZIESER V. EDWARD BEARDEN, ET AL.; TERI DEAN
V. EDWARD BEARDEN, ET AL.; JANE DOE V.
EDWARD BEARDEN, IN HIS INDIVIDUAL CAPACITY
Date Taken: APRIL 28, 2021


Page #_____  Line #_____
Should read: _____
Reason for change: _____


Page #_____  Line #_____
Should read: _____
Reason for change: _____


Page #_____  Line #_____
Should read: _____
Reason for change: _____


Page #_____  Line #_____
Should read: _____
Reason for change: _____


Page #_____  Line #_____
Should read: _____
Reason for change: _____


Witness Signature: _____

24 (Pages 93 to 95)

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 5:19-cv-06022-BP   Document 93-3   Filed 08/13/21   Page 24 of 39

**A**

a.m 2:20 7:9,13
9:15,16,18
21:12,13,14,16
49:25 50:1,2
50:4 52:17,18
52:19,21 79:13
79:14,15,17
85:15,16,17,19
91:20,21
ability 92:7
able 19:9
above-refere...
93:13
abuse 10:24
11:9 39:4
abused 63:17
77:9
accent 14:6
acknowledge
8:10,13
act 82:4
action 10:20
65:3 70:3
92:11,16
actions 80:14
adding 17:16
addition 88:12
additional 71:21
administer 7:24
administering
8:14
administrative
64:19 65:25
administrator
15:6,7
Adult 64:8 67:2
67:3
AG's 26:20
ago 31:3,10,18
31:22,22,22
31:23,23
46:23 54:6
56:1 71:9,10
agree 9:10 18:6
46:9 71:11

72:15
AGREED 7:1
agreement 8:19
ahead 9:10
81:12
al 1:14,22 2:5
7:16 73:3 93:6
93:7,7,8 94:2
94:2,3,3
Alana 64:10
66:12 67:5,21
80:13
Alaris 6:18,23
7:22 93:1
allegation 89:2
allegations
10:23 11:7 19:9
19:11,15 27:7
46:21 47:13
48:14,19 51:11
53:3 58:1
59:21 60:2,6
63:13,16 74:7
74:16 76:17
79:3 80:1
81:21,24 87:1
87:8,14,16
88:23 89:6,9
91:4
Allege 4:6,14
50:10 51:6
Alleged 4:12
59:10
alleges 39:7
alleging 77:8
ambiguous
16:24 18:9
19:7 23:17
28:21 35:17
39:18 47:19
48:17 54:17
56:19 81:12
82:9,23 83:14
Ammann 4:17
5:8 59:18
68:21
Analyst 15:13

and/or 93:15
95:8
Ann 2:21 6:23
7:5 92:3,20
93:23
Anne 2:18,19
4:22 5:13 7:4
7:14 9:1 10:7
93:12 94:1
95:5,20
answer 12:22
16:24 23:10
28:23 29:21
29:22 31:14
35:18 36:9
47:20 48:18
52:1 54:1
58:20,25
66:16 83:17,18
86:9
answered 86:6
answers 11:23
12:2,6,13
86:12,14,16
anybody 85:8
anymore 45:5
anyways 32:14
appearing 5:2
5:13,19 6:2 8:7
appointed 14:12
appointing 64:7
65:4 66:23
67:1 68:3,4
appreciate
49:19 62:12
71:9
appropriate
24:12 65:6
approximately
7:13 9:18
15:25 21:12,16
49:25 50:4
52:17,21 79:13
79:17 85:15,19
91:20
April 2:20 7:12
93:12 94:4

argumentative
83:14
arrangement
8:16
arresting 88:11
article 4:2,6,11
4:14 41:21,24
42:2,15,18,25
43:4 46:22,24
47:2,5,11 49:3
50:14 59:8,15
60:10,12,13
articles 48:5
90:19
Ashley 1:20
33:9,13 38:3,4
93:7 94:2
asked 13:1 36:1
65:18 76:20
77:12 86:4
asking 22:13
23:21 28:5,25
29:2 44:2,2
65:13 83:6
assault 4:6,15
10:23 11:9
27:7 39:4,7
50:11 51:6
59:11 74:17
assaulted 63:17
74:8 77:9
Assaults 4:12
assigned 62:19
assist 30:4
assistant 20:8
21:5 61:15
72:11
Associated
46:18 47:5,11
assortment
32:19 88:12
assume 13:18
34:23 43:19
54:1 55:19
79:2
Assumes 74:10
assumption

53:10
attached 4:24
attempted
26:13
attending 8:6
attention 18:1
50:6 55:6
70:14
attorney 5:14
5:20 6:4 26:6
27:12 28:14
44:1 46:5
92:13 93:4
Attorney's
40:10
attorneys 8:9
August 61:8,24
authority 64:8
65:4 66:20
66:23 67:1,12
67:20,25
68:3,4,8,10,12
aware 11:10,18
11:18,22 12:8
12:18 14:19
24:21,22 25:1
31:7,11 32:10
35:3,22
36:25 37:16
37:18 39:2,19
40:7,7 48:4,19
48:21 51:20
60:8,21 62:9
62:17 63:4,13
63:16 68:14
69:12,16 71:19
73:16 74:6,17
76:7 77:3,11
77:22 78:2,3
78:4,15 81:17
82:24,25
86:19,19,22
87:1 89:6

**B**

back 9:17 21:15
25:20 32:7

35:23 39:21
50:3 52:20
57:15 58:3
62:24 67:5
68:7,11 79:16
85:12,18
**Backues** 1:2
7:15 37:22,24
**Bangert** 26:20
27:10
**basic** 55:5
**basically** 21:25
28:11 31:23
41:25 46:19
51:4 57:1 58:4
65:22
**basis** 21:22 31:3
32:19 71:24
71:24,24
73:25
**Bates** 49:17
**battery** 24:5
**Bearden** 1:6,14
1:22 2:5,13
4:22 6:2 9:4
24:23 25:3,17
37:5 46:20
47:15 48:13,14
51:22,23 53:3
53:5 57:14
58:4,7 59:22
60:18,19 61:8
61:11,23 62:14
63:4,17,20
64:4 67:15,21
68:6,14 69:4
69:13 70:2,7
70:23 71:1,3,6
71:12,18,21
73:3 81:8 82:5
89:16,19 93:7
93:7,8,8 94:2
94:3,3,4
**Bearden's**
57:22,24
**beginning** 77:14
**behalf** 8:23,25

9:3,6 22:20
**believe** 13:20
14:12 21:1,18
21:20 25:24
30:7 38:21
44:14 49:14
56:5 61:10
**bell** 26:21 37:23
**bells** 76:5
**best** 23:23 92:7
**Betz** 1:12 38:1
51:13 53:4
73:2 93:7
94:2
**Betz's** 33:17
51:22
**bio** 13:20
**bit** 12:22 27:4
**bitch** 76:4
**born** 14:7,16
**bottom** 69:3
**Boulevard** 5:4
**box** 55:12
56:22
**boxes** 59:6
**Boyles** 64:10,11
66:12 67:5,21
75:15 80:13
**Boyles'** 80:21
**break** 21:8,19
29:5 42:7
49:22 79:8
**breaking** 52:7
52:10 63:24
**Brendan** 5:9
59:24
**brendan.roed...**
5:11
**Briesacher**
20:24 27:18
27:23 28:9,16
29:5 30:11,15
30:16,19,22
31:19 33:5,9
33:13,17,21,25
36:5 47:24
70:18,22 71:2

71:12 77:25
83:2 86:10
90:4
**Briesacher's**
72:10,24
**bring** 73:15
77:25 78:9
**Broadway**
25:25 26:1,7
**broke** 65:17
**brought** 19:4
47:24 57:15
**bubble** 76:4
**Buchheit** 3:4
5:15 8:25,25
9:9,13 12:11,21
16:23 18:8
19:6 21:7,10
23:16,25 24:3
28:4,20 29:1
29:16,19,22
31:12 35:16
39:17 40:3
42:6,19,24
43:2,22 45:23
47:4,18 48:16
48:22 49:4
49:20 51:24
52:7,10,15
54:16 56:18
57:3,6,18,20
58:10,15,24
62:5 63:7,12
63:23 65:10
65:14 66:15
66:22 67:24
69:7 72:18
74:10,22
75:12 79:10
81:11 82:8,13
82:16,22
83:13,17 85:8
85:21 91:8,12
91:17 93:3,10
**Building** 25:25
26:2,7
**built** 17:16

**bunch** 44:18

### C

**C** 5:1,4 6:1 13:15
88:17
**called** 2:19
25:25 76:3
**candidates**
36:16
**Capacity** 2:13
93:8 94:4
**careers** 64:21
**Carolina** 13:25
14:2,5,9,17,21
15:2
**case** 1:4,13,21
2:4,12 7:16
10:18 11:4,6
25:6,7,11,16
47:25 62:14
76:15 81:18,21
82:3 85:24
86:7 93:13
94:2
**cases** 25:9 31:5
34:9 47:23
81:18 91:4
**category** 69:23
**cc** 75:16
**cc'd** 74:18
**CCR** 6:23
92:20
**cell** 77:19
**center** 11:6
24:18 35:6
38:20 62:20
78:22
**centers** 14:23
16:4,5
**Central** 26:10
26:15,18 29:8
**certain** 87:1
**CERTIFICATE**
92:1
**Certified** 2:21
7:6 8:3 92:3
**certify** 92:6

95:5
**chance** 42:19
57:4
**change** 16:11
23:10 88:12
94:8,12,16,20
94:24
**changed** 62:18
**changes** 93:15
95:7,10
**changing** 17:20
84:16
**Chapman** 21:6
**check** 22:24
**Chillicothe**
24:18 27:8
35:5,14 36:10
36:12 38:19
60:21 62:16
69:5,14 70:2
70:24 71:1,4,13
76:4 77:4
78:21 80:6,9
**Christal** 5:21
9:6 49:4,12
82:13 84:9
91:12
**christal.wang...**
5:23
**cited** 41:22
**City** 4:2 5:16,22
6:6 8:8 11:6
13:19 14:11 26:1
26:2,6,8 40:17
40:25 42:13
47:6 93:5
**civil** 78:11
**claim** 39:22
**claims** 40:1
46:15 77:23
78:6,16
**clean** 19:3,4
**clear** 12:25
22:15,17 47:4
57:12 60:17
**clearly** 47:1
**Clinic** 5:8 59:19

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 5:19-cv-06022-BP   Document 93-3   Filed 08/13/21   Page 26 of 39

59:25
clippings 41:5
 44:18
closed 35:5
CLVS 6:18
collect 41:4
come 13:6
 30:24 32:9
 34:24 36:19
 53:14 65:3
 66:4,8 71:23
 85:12
comes 72:1
coming 54:5
 57:21
comment 23:11
comments 23:9
 23:14 24:13
Commission
 95:24
commit 55:22
communicate
 17:12 34:25
communicatio...
 22:10 26:17
 41:1 79:25
 80:4,8
community
 14:24 15:3,9
 15:13 16:4
 17:15
Compact 15:6
 15:12
comparable
 15:4
complaint 73:11
 76:15,20 77:18
 81:23 82:2
 87:5
complaints
 18:10,13,25
 19:15 39:10
 73:12
complete 84:20
compound 28:4
 28:21 47:19
 48:17 82:23

concluded
 91:21
conduct 78:11
confirm 44:3
 45:11
confirmed 14:14
confused 67:9
 74:2
confusion 20:12
consent 8:16
consistent 18:14
contact 57:2
 64:20 65:25
 68:11 80:15
contained 57:11
containing 4:20
content 90:16
continue 79:19
CONTINUED
 6:1
continues 12:15
contract 16:8
control 62:20
coordinator
 39:13
copied 74:13
copies 4:24
 74:24 93:12
copy 75:19
 76:14 93:14
Corporation 1:5
correct 12:12
 13:21 14:18,23
 20:14 22:23
 24:18 25:15
 27:22 29:9
 31:20 32:1
 34:12 35:10
 43:16 51:18
 52:25 54:9
 59:11 63:6
 66:1,2,4 67:8
 70:21 72:20
 75:2,7 82:1
 84:25 85:4
 87:3,6,10 95:9
 95:13

correction
 14:22
correctional
 18:6 24:17,18
 29:12 35:5
 36:22 38:20
 61:13 62:2,6,9
 69:13 75:6
 77:4,22 78:15
 78:22 82:19
corrections
 14:25 15:4,9
 15:13,23 16:18
 18:5 22:21
 27:16 28:13
 29:11,15 36:19
 44:22 60:20
 61:16 64:21
 70:11 71:17
 87:23 91:6
 93:15
correctly 51:7
 55:14
corresponde...
 26:25
corresponde...
 27:1,9 32:24
 33:2 44:3
 74:18
counsel 7:2,2
 8:16,18 31:13
 35:17 82:15
 86:17 92:9,13
counsel's 63:8
 82:11
counselor 46:16
 46:20
COUNTY 95:3
couple 85:11
court 1:1,10,18
 2:1,9,21 7:6,18
 7:24 8:2,3 10:1
 63:1 81:8 83:8
 92:3
covering 59:7
COVID 88:16
created 44:8

Crystal 38:12,14
 77:13
culture 16:11
 17:20,21 18:7
 61:19 88:12
currently 36:7
 81:7
custom 53:21
 69:19
cut 63:1
cutting 43:22

**D**

D 5:9
DAI 39:11
daily 56:2 71:23
data 17:18
date 7:12 14:16
 42:15,24 94:4
dated 4:2,4,7,8
 4:10,12,15,17
 4:18,22 50:11
 55:16 59:8
 60:12 61:8
 68:22 75:5
daughters 13:21
David 43:17
Davis 38:16
day 53:14 54:22
 55:3 71:17
 88:8 90:12
 95:14
day-to-day 39:7
days 93:17
deal 16:7 55:1
 88:10,15
Dean 2:3 10:3
 25:11 38:6
 77:7 82:6
 83:7 93:7
 94:3
Dean's 33:6
Dear 93:10
deciding 64:18
decision 68:2
decisions 66:1
declare 95:12

Defendant 2:14
 5:13,19 9:7
 76:8 77:5
 83:7 86:22
 89:13
Defendants 1:7
 1:15,23 2:6
 6:2 7:3 83:9
delayed 54:10
delete 53:18
deleted 55:24
department
 13:3 14:22
 15:8,14,22
 16:12,13,14,18
 16:25 17:9
 18:5 19:23
 20:7 22:20
 27:16 28:12
 29:11,14 35:13
 35:20 39:5
 40:9 41:11
 44:22 60:20
 61:15,18,20
 64:21 70:11
 71:17 80:20
 80:22,23,24
 83:24 84:19
 84:23 87:22
 87:22,23 88:5
 88:16,18 91:6
depends 42:4
deponent 8:1
depos 10:11
deposed 10:19
deposition 2:16
 2:19 7:4,9,14
 7:19 8:4,6
 10:22 23:20
 25:5,24 91:21
 92:11 93:12
 95:6,8,11
depositions
 10:8 11:8
 76:25
deputy 20:7
 21:1 23:4

ALARIS LITIGATION SERVICES
www.alaris.us   Phone: 1.800.280.3376   Fax: 314.644.1334
Case 5:19-cv-06022-BP   Document 93-3   Filed 08/13/21   Page 27 of 39

desired 93:15
desk 41:23
  71:23
despite 46:4
difference 85:2
different 16:3
  66:18 67:13
difficulty 52:6
  63:22 82:12
direct 50:6
directed 65:8
  75:6
direction 92:9
directly 20:3
  21:19,21,25
  22:4,6,7,12,18
  25:21 27:21
  29:7 30:13,16
  30:20 67:6
  68:25
director 9:1,21
  13:12 14:12
  15:3,17,20,22
  16:17 18:4
  20:6,8,23
  21:2,17 22:9
  22:10 23:18
  26:17 28:10
  28:25 31:17
  41:1 43:25
  45:20 46:3
  49:20 50:5
  51:4 52:22
  56:8 57:3
  58:19 63:4,15
  64:9,24 65:21
  66:11 67:1
  72:16,22
  79:18 80:19,21
  80:24 82:17
  83:18 84:9,10
  85:22
Director's
  45:25 61:22
  72:19
directors 20:5
  20:12 22:8

65:4,8,22,23
  65:23 66:17
  80:18
disagree 18:16
  18:17
disagreed
  80:17 81:1
disagreements
  83:5
disciplinary
  74:14 80:14
discipline 74:24
  75:25
disciplined
  74:15
discovery 2:20
  12:14
discretion 23:14
discrimination
  10:18 18:12
discuss 27:24
  64:13 66:6
discussed
  64:23
discussion 9:14
  66:7 68:1
discussions
  71:5
dismissed 84:14
District 1:1,1,10
  1:10,18,18 2:1,1
  2:9,9 7:17,18
  10:1,1
division 14:24
  17:4,4,5,6
  20:5,12 22:8
  64:8,9 65:4,5
  65:23 66:11,17
  66:25 67:2,3
  68:3,4
divisions 17:3,7
DOC 43:14 44:5
  44:10,11 84:13
  84:13 90:23
document 4:20
  33:3 45:25
  72:19 75:20

documents
  4:20 12:10
  75:21 76:2
Doe 2:10 34:2
  93:8 94:3
doing 8:15 9:22
  35:1 84:22
Donna 21:5
door 30:25
  34:24
due 10:2 47:16
  63:5 66:14
  74:15 78:16
Dunn 1:6 46:21
  47:15 57:1
  58:5,6
duties 39:7

---

### E

E 5:1,1 6:1,1
e-mail 4:4,8,10
  4:18,22 27:5
  30:24 33:3
  41:16,22 42:1
  42:3 43:20
  44:18 45:10,13
  45:19 46:6,7
  48:4,6,8,9,24
  52:4,23,24
  53:7,9,22,25
  54:3,7 55:12
  55:16,17,21,23
  56:22 57:16
  57:23,25 61:7
  61:12,12,14
  68:21 69:23
  70:1,9 71:20
  71:22 72:5,15
  72:23 73:5,9
  89:24 90:14
  90:17
e-mailed 43:6
e-mailing 44:10
e-mails 13:7
  41:13,14,17
  44:23 45:15
  53:14,15,18

54:11,21 55:2
  55:6,7,11,18
  56:2 69:19
  73:10,14,16,20
  73:24,25 74:2
  74:4,24 90:9
  90:19
earlier 44:17
  59:22 61:10
  62:3 69:18
  70:17 75:14
  76:24 77:12
  80:12 81:5,22
  85:23 87:4
  89:13
early 48:21
  67:17 71:14
easier 49:9
easily 90:13
east 13:25
Edward 1:6,14
  1:22 2:5,13
  4:22 6:2 9:4
  24:23 25:3,17
  37:5 46:20
  47:15 48:13,14
  51:22,23 53:5
  57:13,22,24
  58:4,7 60:18
  60:19 61:7,11
  61:23 62:13
  63:17 64:4
  67:15,21 68:6
  68:14 73:2
  81:8 93:7,7,8
  93:8 94:2,3,3
  94:4
Edwards 43:17
eight 21:20
  31:22
either 11:3 12:14
  12:19 27:1
  36:22 39:22
  39:25 41:4,22
  62:19 64:5
electric 88:6
Electronic 15:10

Elijah 6:3 9:4
  37:10 74:6,7
  75:7 76:7
eliminating
  45:17
Email 4:17
emphasis 73:24
employed
  60:20 92:10
  92:13
employee 10:18
  71:25 78:14
  83:24 92:13
employees
  15:25 16:19
  61:16,19 80:18
  84:13,19
employing 17:13
enclosed 93:12
  93:13
Enclosures
  93:25
ensure 19:14
  20:1
entitled 4:6,11
  4:14,20
errata 93:13,15
  93:17 94:1
Esq 5:4,8,9,15
  5:21 6:5
established
  29:6 52:4
  67:18 69:18
estimate 10:12
et 1:14,22 2:5
  7:16 73:3 93:6
  93:7,7,8 94:2
  94:2,3,3
events 71:10
eventually
  53:16,17
everybody 37:2
evidence 74:11
evidence-bas...
  15:11 17:14
Examination
  3:2,3,4 9:19

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 5:19-cv-06022-BP   Document 93-3   Filed 08/13/21   Page 28 of 39

84:7 85:20
exchange 61:19
Excuse 61:3
  72:9
Executed 95:14
executive 19:25
  20:8 21:5
  43:14,20 44:5
  44:10,11 61:15
exhibit 4:1,2,4,5
  4:8,9,11,13,16
  4:18,19,20,21
  41:20 42:10
  43:9 49:3,8,9
  49:15 50:6,7
  50:21 51:3,5,9
  56:5,13,25
  57:12 58:3,14
  58:16,17,22
  59:3 60:16
  61:5 62:25
  63:11 69:7,10
  72:4,5 75:1,1
exhibits 4:24
  41:13 67:17
exit 84:17,17,20
  84:24,25 85:3
  85:3
Expires 95:24
explain 15:20
exposed 77:18
expressly 7:8

_____
**F**
faces 59:6
facilities 16:6
  34:20 36:4
  41:9
facility 62:10
fact 35:11 44:4
facts 74:10
failure 82:4
fair 12:9 19:2,21
  22:2 41:14
  43:19 46:6
  47:8 53:1
  55:19 63:13

72:13,24 73:19
  77:10 79:2
  84:12 86:14
  86:25 89:2
  90:23
fall 69:23
familiar 18:24
  25:9 26:22
  26:23 44:11
  47:21 78:23
  78:24
far 28:16
fast 42:22 46:11
FBI 34:19,25
  35:3,12 36:3
  40:9 80:5
FBI's 35:12
February 14:13
  14:14 25:16
Federal 81:7
  83:8
feeding 88:8
feel 17:10
feels 47:24
felt 31:7,10,24
  32:10
fences 16:7
  88:6
fight 45:21,24
figure 13:1
  67:22
figured 36:9
filed 23:12
  24:23 25:16
  28:3 33:25
  34:14,17 82:3
  83:7 86:5
  89:3
filing 93:18
fill 36:17
final 66:24
financially 92:14
find 36:16 49:10
  93:12
finding 36:18
finds 30:22
fine 9:12,23

56:4 59:1
  63:14 79:10
finish 27:3
finished 79:6
fire 37:1 80:16
  80:25 81:3
fired 78:16,21
  81:1
firm 60:5
first 55:7 61:18
  74:5 87:2,11
  89:10,18 90:6
fit 17:9 23:15
five 10:13 24:22
  25:2,9 76:25
  81:7,18 82:18
  83:11
five-minute 21:8
  79:7
focus 19:1,12
focused 17:23
  19:8 56:17
folks 35:13
follow 47:23
follow-ups 85:11
following 69:4
  70:1
food 88:7
foregoing 95:6
  95:13
forget 15:7,7
forgot 51:17
form 44:19 61:12
  95:7
Former 46:15
forth 46:22
forward 19:19
  77:17
found 81:6
  89:21 90:6
four 17:3 20:5
  22:7 37:14
frame 32:8
  82:5
frankly 83:23
frequency 31:9
  32:2,11

frequently
  32:16,22
full 10:6
fully 36:6,11
further 8:13
  70:8 79:9
  83:15 84:3
  85:6 91:9,10,11
  91:15 92:12

_____
**G**
gauge 32:17
Gavin 60:6
General 5:14,20
  6:4 93:4
General's 26:6
  27:13
Generals 28:14
George 38:8
get-go 49:12
getting 44:4,23
give 23:13,25
  27:25 28:18
  30:23 41:5
  42:19 45:18,18
  49:8 57:3
  58:18 84:22
given 10:8,11,22
  11:11 12:7,20
  12:20 13:4
  42:1 57:16
  62:10 71:17
  75:19 76:14
  76:25 77:21
gives 22:22
  41:10 66:24
giving 22:24
  23:11
go 9:10 25:20
  35:20 41:24
  42:23 49:8
  50:14 52:12
  55:9,19 58:3
  59:14 62:24
  63:11 67:20
  67:25 71:20
  75:9,21 81:12

88:18
goes 16:13
  28:17 88:14
going 10:5 13:5
  21:11 22:1 24:3
  27:3 31:5 34:1
  40:12,13,14
  41:19 42:5,21
  43:9 44:21
  45:15,21,22
  45:24 46:10
  46:13 49:2,24
  50:6,17 52:16
  54:12 56:4
  58:15,20 59:2
  61:4,4 65:9,15
  67:22 68:20
  70:5,10 72:3
  72:14 74:25
  78:7 79:12,19
  81:11 83:9
  85:14 88:5
  91:19
Good 9:21 69:9
gotten 55:23
Governor's 80:1
  80:5,9
Gray 38:12
great 9:13 49:18
Greenwood 5:4
ground 23:19
group 19:20
  44:10,12
guard 4:6,11,15
  46:15,20 50:11
  51:6 59:10
guards 37:1
guess 11:3 12:17
  16:17 30:18
  33:2 37:21
  39:14 49:13
  54:10 62:8
  64:4 66:12
  67:9,9 74:1
guilty 57:2 58:6
guy's 59:6
guys 25:21 26:1

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 5:19-cv-06022-BP   Document 93-3   Filed 08/13/21   Page 29 of 39

45:16 85:12

**H**

H.C 13:15
handful 84:10
handle 28:14
  30:12 65:5,24
  68:2 75:16
  78:10
handled 66:25
handles 27:13
  27:17 28:12
  29:12,18,25
  30:2 39:13
  80:13,16
handling 80:17
  81:1
happen 39:16
  66:13 67:10,12
  71:16
happened 35:9
  35:23
happening
  17:25 36:3
  41:6 67:11
  70:19
happens 17:24
harassed 63:17
  74:7 77:8
harassment
  10:24 11:9 18:7
  18:11,18,19,20
  18:21,23 19:5
  19:10 27:7
  39:4 74:16
hard 32:21
  36:16 74:23
head 22:4
  43:21 87:22
headed 17:8
heads 43:15
  44:6,9,12
heads-up 77:21
healthcare 16:8
  88:7
heard 18:10
  89:12,13,16,18

hearing 70:25
held 7:19
help 24:9
helped 19:3
helping 17:12
  19:8
Henry 13:15
hepatitis 88:17
Hey 21:7 23:25
  49:20
Higgins 21:5
high 5:16,22
  6:5 78:7 93:4
highlight 43:11
hired 30:4,6
hiring 88:13
honestly 30:21
  44:7 54:20
  69:16 71:18
hook 58:8
hope 69:3
hours 54:22
housing 62:20
Human 17:6
hundred 90:12
Hundreds
  90:12
husband's 13:14

**I**

idea 15:21 76:11
  77:2
ignore 73:20
  73:22
imagine 10:8
  54:6
immediate 55:6
immediately
  39:20
impact 18:2
important 61:21
  82:21 83:3,8
  83:12
impression
  45:19
improper 83:16
inbox 41:23

44:5,19 46:1,7
  47:3 52:23,24
  53:19,22
  54:23 57:13
  68:25 72:17
  72:19
incarcerated
  37:22 38:19
incident 76:3
inconsistencies
  17:2
incorrect 26:14
increased 17:17
incredibly 87:21
INDEX 3:1 4:1
indicate 8:18
  93:15
individual 2:13
  8:18 93:8 94:4
individuals
  47:17
information 13:2
  22:7 24:11
  31:6,8,11 41:10
  41:25 42:3
  51:16 74:24
  77:25 83:21
  84:22
informed 28:2
  29:10 35:21
  35:23 70:15
initiatives 88:16
  91:4
inmate 4:6
  46:15 50:10
  51:6 53:4
  63:5
inmates 4:12
  16:1,20 59:11
ins 21:25
inside 16:10
  17:18 27:16
  36:19
instance 2:19
institution 19:25
  64:8
institutional

17:14
institutions 16:3
  16:8,11 17:2,20
  36:14 67:2,4
interested
  92:15
interrogatories
  11:19,23 85:23
  86:1
interrogatory
  86:6
interrupt 63:24
Interstate 15:6
  15:12
interview 84:17
  84:25 85:3
interviewed
  37:17 38:21
  40:8
interviewing
  35:14
investigated
  39:11
Investigates
  4:14
investigating
  39:5 80:5
investigation
  12:15 34:20
  35:4,12 62:3
  64:5 68:15,19
  69:4,12 70:2,7
  70:23 71:13,18
  71:21 85:3
investigations
  35:1 36:3
  39:15 46:14
  51:3 57:1
  70:12,19 71:1,3
  71:6
involve 31:5
involved 25:18
  29:15 63:5
  74:20 78:14
  88:19

**J**

J 5:8 6:5
Jane 2:10 34:1
  93:8 94:3
January 14:15
  64:12 67:6
Jeff 20:15 26:1
  26:2,8
Jefferson 5:16
  5:22 6:6 8:8
  13:19 14:11
  26:6 40:25
  93:5
Jenifer 5:4 8:23
  9:9,24 21:7
  42:25 43:22
  47:4 49:7,20
  52:7,10 63:1
  63:23 65:16
  69:7
Joan 5:3
job 15:2 62:17
  89:4
John 1:6 4:17
  5:8 6:18 7:21
  46:21 47:15
  57:1 58:5,6
  59:18 68:21
john.ammann...
  5:11
join 82:11,16
  83:19
jsnow@jmsllc....
  5:6
Julie 2:21 6:23
  7:5,21 8:2
  20:17 24:9
  92:3,20
  93:23
July 59:9 60:13
  67:17
June 43:5 45:8
  45:21 46:8
  47:3,14 48:10
  48:12,21,24
  49:2 50:11,23
  50:24 51:10,17
  51:17,20 52:9

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 5:19-cv-06022-BP   Document 93-3   Filed 08/13/21   Page 30 of 39

52:23,24 53:1
53:5,5,7,9
54:3,12 55:15
55:16,17 56:6
56:7,8 57:13
57:16 58:2,5
63:3,3,18 64:6
67:16,19 68:11
73:1,8 75:6
**jury** 15:21
**justice** 15:12
35:13 40:9

――――――

**K**

**Kamykowski**
60:5
**Kansas** 4:2 11:6
40:17 42:13
47:6
**Karen** 1:2 7:15
22:11 24:11
33:21 37:19
37:22,24 41:3
43:6 44:20,24
45:20 46:19
46:21 48:15
50:22 51:11,12
51:21 52:5
53:2 57:2,15
58:4
**Karen's** 47:16
**keep** 35:21
46:12 50:17
**keeps** 28:2
**Keil** 1:2 7:15
37:19 46:19
48:15 51:11,12
57:2,15 58:4
93:6 94:2
**Keil's** 33:21
51:21 53:2
**Kemp** 20:17,17
**Kempker** 20:17
20:18,18
**Ken** 21:6
**Kevin** 5:19 9:7
37:12 78:25

84:10
**kind** 15:1 16:17
16:20 18:14
19:1,4,20 22:3
23:13 27:4,17
27:25 28:1,6,7
28:15 29:6
34:23,25 39:4
41:5 44:17
46:10 51:4
54:20,25
55:3 58:12
61:12 62:15
75:10,23
80:13,16
**Klein** 38:10
**knew** 32:9 53:2
53:3 58:19
67:18 68:19
81:8 82:5,18
**knock** 30:24
34:24
**know** 12:15 13:5
13:6,7,8 15:1
17:8,9 24:15
25:9,17 26:20
26:25 27:12
27:14 28:1,7,8
28:13,15,24
29:1 30:9,18
30:20,25
34:11 35:2,8
36:2,10 37:5,7
37:9,9,12,19
37:21,23
38:20,21 39:1
39:3,25 43:11
43:25 44:7,8
44:12,15 45:16
54:2,2,4,20
54:22,24
55:4,23 57:7
57:15 58:8,19
60:18,19,23
60:25 61:11,23
65:17 70:6,16
71:15 72:12

73:11 74:5
75:21,24 76:17
77:7,16 78:20
79:3 80:12,13
80:14 81:5,17
81:20,24
82:21 83:22
83:25 84:2,2
84:24 86:1
87:20 90:6
**knowledge**
60:15 62:21
74:23 76:16
**known** 81:13

――――――

**L**

**L** 5:19
**laid** 47:2
**large** 56:1 87:21
**largest** 16:8,14
**late** 30:7 67:16
**law** 5:3 59:20
60:1,5
**lawsuit** 10:3
11:25 23:12
24:14 29:14
30:23 33:6,9
33:13,17,21,25
46:22 47:16
51:21,22 53:4
57:14 64:5
76:8,11 77:5
79:4 80:2
83:7 86:20,23
87:2,5,9,15,25
89:3,7
**lawsuits** 4:6
9:25 23:9
24:16,23 25:2
25:18 27:13
28:2 34:5,13
46:15 50:10
51:3,5 56:25
60:2,7 76:25
81:7 82:18
84:13 86:4
88:5,24

**lawyer** 12:10
30:3
**lawyers** 60:5
**lays** 47:1
**leadership** 17:1
19:22,24 29:7
**leaky** 88:10
**learn** 28:1
30:22
**learned** 89:10
**leave** 63:20
64:4,11,20
65:24,25
67:22 68:6,6
80:15 84:19
**leaving** 84:21
**left** 67:6
**legal** 5:8 7:22
27:14 28:14
31:4,19 59:19
59:25 72:8,9
**legislation** 91:3
**let's** 14:19 34:5
85:12
**lethal** 16:7
**letter** 75:5
**letting** 43:11
**level** 39:10
**limit** 27:4
**line** 73:20 94:6
94:10,14,18,22
**lines** 78:8
**list** 26:13 61:17
88:14
**listed** 26:12
38:18 57:14
59:21 60:5
**lists** 43:14 58:7
**litigation** 6:18
6:23 7:23
12:11 13:3
27:18,24
28:12,17 29:12
29:17,25 30:2
30:12 31:1,11
31:25 32:20
47:22 63:5

93:1
**little** 12:25 13:4
13:20 27:4
46:11 59:6
**live** 13:23,24,25
14:1
**lived** 14:9
**lives** 13:19
**located** 25:21
**location** 26:5
**locations** 7:20
**Logan** 38:14
77:13
**long** 17:25 45:6
59:7
**longer** 26:24
60:20 62:18
78:21
**longest** 55:11,18
**look** 70:7 73:13
85:10
**looked** 46:22
**looking** 70:11
**looks** 43:5,10
45:10 50:22
50:24 75:5
**lot** 13:1 16:12 17:1
17:11,16,17,25
18:10 35:19,23
36:13 39:2
70:4,10,13
71:23 88:4,17
90:9
**Louis** 5:5,8,10
6:19,24 40:19
88:11 93:18
**love** 46:12
**low** 24:6
**lower** 44:12
**Lynnsey** 1:12
33:17 37:21
38:1 51:13,22
53:4 73:2
93:6 94:2

――――――

**M**

**M** 5:3

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 5:19-cv-06022-BP   Document 93-3   Filed 08/13/21   Page 31 of 39

ma'am 38:11
majority 62:16
making 24:13
  57:10 58:11
manage 17:18
management
  17:24 88:13
manager 20:7
  21:6
manner 8:17
March 68:22
  69:11,17 71:7,8
mark 69:10
marked 43:9
  49:3 50:7,20
  56:5,12 59:2
  60:16 72:4,4
married 13:12
masks 37:2
math 55:14
Matt 20:24 21:2
  23:6,13 27:18
  27:23 28:9,16
  29:5 30:11,15
  30:16,19,22
  31:7,10,18,24
  32:3,6,17,18
  33:5,8,13,16
  33:21,24 34:4
  36:5 47:24
  70:18,22 71:2
  71:12 72:10,24
  77:25 86:10,11
  86:15 90:4
matter 7:15
  64:19 72:1
matters 31:1
  32:20 64:9,13
  64:18 66:25
  68:1 70:13
  78:10,14
MDOC 4:20,20
mean 19:1 20:1
  21:25 22:3,17
  24:15 25:7,8
  27:25 28:6,7
  28:17,19,24

29:4 30:6,20
32:15,20 40:5
43:24 44:14
45:11,14 47:8
48:4 52:14
53:8,12 54:10
54:11,20 56:12
57:22 58:12
63:23 64:18
65:19 66:11
67:4,13 70:10
74:1 75:19
81:13 82:6,17
86:14 88:9,14
88:17 91:5
means 15:23
  73:11
meant 56:11
media 24:13
  44:21 48:1,2
meet 28:17,18
  31:18 32:3,6
  32:14,17,21
meeting 31:2,4
  32:13 33:5,8
  33:12,16,20
  33:24 34:8
meetings 27:24
  33:1
member 43:20
  64:19 66:14
  76:3
Members 43:14
  44:6,11
memo 33:3
memorialized
  33:2
mentally 12:17
mentioned
  88:20,23
mentioning
  51:12
met 31:6,23
  32:5,13 34:4
MHM 1:5 7:15
  93:6 94:2
middle 58:5

mind 85:9
mine 59:7
minute 41:13
  43:23
minutes 85:10
Mis 51:24
misconduct
  19:16 78:1,17
  80:10
Missouri 1:1,10
  1:18 2:1,9,21
  4:6,11,14 5:5
  5:10,15,16,21
  5:22 6:4,6,19
  6:24 7:18 8:4
  8:8 10:1 13:18
  14:7 15:5,23
  16:3,9,15 18:5
  34:21 36:4,7
  46:15 50:11
  51:6 59:9
  62:10 92:4,21
  93:5
misstate 31:16
  73:18
misstates
  29:20 31:12
  40:3 48:22
  51:25 56:19
  63:7
misstating
  63:10
mistreatment
  19:16
MO 93:18
mom 14:4
moment 46:23
Monitoring 15:11
month 31:19
  55:3
monthly 28:18
  31:2 32:13,14
months 31:3,10
  31:18,22,22
  32:15 55:3
  83:12
morning 9:21

Mosier 6:3 9:4
  37:10 59:22
  74:6,7,15 75:7
  76:1,7 89:14
mouse 43:12
  45:8
move 56:4 59:1
moved 14:10
moving 19:19
Mustain 6:3 9:5
  37:7 59:22
  77:3,9,18
  78:20 89:14

—————————

## N

N 5:1 6:1 93:17
name 7:20,21
  8:20 9:24
  10:6 11:4,4,5
  13:14 26:21,22
  26:22 30:9
  34:1 37:22,23
  37:24 41:2
  46:4 51:13
  57:23,24
  75:16 77:13,16
  77:16 78:23
  78:24 94:1,2
  95:11
named 10:3
  25:6,14,14
  29:13 76:11
  77:1,5 83:10
  87:24 88:1
names 20:10,11
  21:20 34:8
  38:18
nature 73:10
  78:8
near 36:13
necessarily
  47:25 48:5
  53:8 87:15
  88:24
necessary
  31:24 95:9
need 17:1 22:14

22:14 35:1,22
37:2 40:7
42:6 47:9,24
49:13 50:17
54:24 58:3
59:15 66:6
67:14 73:15
75:9,10 76:2
78:2,3,9 81:16
82:25 84:1,2
needed 18:1
  31:7 32:10
  70:6,16
needing 69:23
needs 24:12
  65:2 67:21
neglect 18:7
neither 92:9
never 37:17
  38:24 81:23
  87:4,7 89:13
new 51:12 56:13
  88:13
news 4:2,4,8,10
  41:11,21,24
  42:15,18 44:16
  44:18,20 45:7
  50:23 56:6
  90:19,24 91:2
  91:7
News-Leader
  4:14
Newsletter
  40:21
newspapers
  40:15,23
Nick 91:12
Nicolas 6:5 9:3
nicolas.taulbe…
  6:7
Niehaus 6:18
  7:21
nine 38:18 83:11
normally 39:9
Norman 20:15
North 5:9 6:19
  6:24 13:25

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 5:19-cv-06022-BP   Document 93-3   Filed 08/13/21   Page 32 of 39

14:2,5,9,17,21
15:2
notarized 93:17
notary 93:16
95:23
notes 79:8
85:10
notice 2:22
47:14 48:13,17
notified 34:13
34:16,19
number 7:16
18:24 36:15
49:9 56:1
88:9 91:6
numerous 67:15

—— O ——

O 73:10,20 74:3
oath 8:14
object 12:21
40:13 81:11
82:10,14 83:15
objection 9:10
9:11 16:23 18:8
19:6 23:16
28:4,20 29:16
29:19,19 31:12
31:13 35:16
39:17 40:3
47:18 48:16
48:22 51:24
54:16 56:18
58:16,21 62:5
63:7 65:10,11
66:15,22
67:24 74:10
74:22 82:8,22
83:13,13
objections 8:17
83:20
objects 67:13
obviously 24:15
27:12 28:13
71:8 75:25
occurred 27:8
October 83:10

offender 15:10
17:5,19,24
18:2 39:7 63:6
63:18,18 73:11
73:17 74:8
77:12
offender/inma...
17:22
offenders 16:10
16:20 19:13,14
20:2 27:15
38:18 73:13
offhand 78:19
office 5:14,20
6:4 20:6,23
22:8 25:22
26:5,7,8,10,15
26:18,21 27:13
28:10 29:8,24
30:2,25 31:5
34:24,25 39:6
39:20 40:10
61:22 67:1
72:1,7,24
73:14 78:12
80:1,5,9 93:4
93:17
officer 15:15
39:8 64:18
66:13 75:7
76:11 77:4
officer's 74:14
officer-based
17:22
officer-on-off...
18:20
officer-on-offi...
18:19
officers 18:6
24:17 27:15
29:13 36:22
59:21 61:13
62:2,6,9
65:24 69:13
77:22 78:16
80:9,15 82:19
Offices 5:3

Oh 10:14 42:21
47:7 52:2
okay 10:14,22
11:8,13,18,22
13:18 14:6,16
14:19 15:1 19:1
20:3 23:23,24
24:6 25:11,16
26:17 30:1,11
30:18 32:2,12
34:23 36:6,21
42:5,6,8,23
43:2,3,3,3,5
44:16,24 45:2
45:7 46:2,10
47:13 48:9,12
48:20,25
49:2 50:17,20
53:15 55:14
56:20,24
58:23 59:6,18
60:9 61:23
62:24 63:14
68:5 72:3,10
72:13 73:1,18
74:1,5 75:13
79:19,22 81:5
85:9,22 86:11
86:14,22 91:17
Olsen 38:4
on-line 13:20
once 31:19 32:3
32:3,14,16
45:3 86:4
ones 69:21
open 76:2
operate 16:5
operation
36:20
opinion 62:1
opportunity
84:20
opposing 86:17
OPS 28:11
original 4:24
93:13
originally 34:14

outcome 92:15
outlets 19:9,13
19:15
outs 22:1
overall 15:19
oversaw 15:9
oversee 41:9
oversees 27:18
oversight 15:25

—— P ——

P 5:1,1 6:1,1
p.m 46:7 50:25
page 3:2,3,4
4:2,4,5,8,9,11
4:13,16,18,19
4:21 49:9,14
49:16 51:2
56:24 57:11
58:13 64:17
93:13,16,17
94:6,10,14,18
94:22
paid 18:1
paperwork
74:14
parentheses
73:21 74:3
parole 15:5,14
16:2 17:5 88:7
88:9 91:3
part 43:20 44:5
55:11 61:19
participating
8:5,9
particular 19:25
65:1,2 70:9
73:9
parties 8:15
92:10,14
party 25:14
patience 79:22
patients 62:21
Paul 10:16
paused 36:10
pay 63:21 64:4
67:22 68:7

80:15 91:2
penalty 95:12
pending 9:25
25:2 28:2
47:22 48:14
64:5,6 76:12
81:7 82:19
people 16:1 17:8
19:20 21:19
22:6 26:12,15
27:20 29:24
35:14,21 36:18
43:18 44:13
87:23 88:8
people's 20:10
performance
81:4
perjury 95:12
person 8:6,14
24:12 29:11,18
32:24 36:2
87:24
personally 37:5
37:7,9,12 39:6
61:11 76:18
77:1
personnel
66:24 70:12
physically 8:11
pictures 35:14
piece 58:13
pieces 27:19
pilots 88:11
place 19:17 20:2
73:23
Plaintiff 1:3,13,21
2:4,11 11:4,5
34:1 51:13
58:4
Plaintiff's 4:1
42:9
Plaintiffs 2:20
5:2 7:2 8:24
9:25
planned 62:4
planning 61:24
66:18

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 5:19-cv-06022-BP   Document 93-3   Filed 08/13/21   Page 33 of 39

pleaded 58:6
please 7:24
  8:18 10:6 52:2
  65:18 75:2
  93:12,14,17
pleasure 80:19
  80:24
pled 57:2
plug 24:3
point 25:17
  38:19 45:16
  47:8 64:20
  66:9 69:9
  83:24
Pojmann 22:11
  41:3,4,22 43:6
  50:22 52:5
policies 20:2
  39:3
population
  17:19 18:3
  73:17
possession
  12:18
possible 34:4
  34:10,10 35:19
  35:22 56:20
  56:23 71:2,11
  78:18 89:25
  90:1
Possibly 64:15
post 59:3
Post-Dispatch
  40:19
potato 13:17
practice 53:20
  53:21,23 65:2
  69:19
practices 15:11
  17:14 20:1
PREA 34:16
  39:12,13 78:11
  85:2
Precythe 2:18
  2:19 4:22 5:13
  7:4,14 9:1,21
  10:7 21:17

23:19 28:25
31:17 43:25
45:20 46:4
50:5 51:4
52:22 56:8
58:19 63:4,16
65:21 72:22
75:2 79:18
82:17 84:9
85:22 93:12
94:1 95:5,20
Precythe's
72:16
prepare 11:13
prepared 12:16
  25:12 81:18
present 8:11
press 22:21,22
  23:7,14 41:5,6
  46:18 47:5,11
pretty 43:18
  69:20 83:2
primarily 18:21
prior 24:12 31:9
  31:21 48:22
  51:25 56:19
  58:2 61:21
  84:21
prison 4:11,15
  22:1 59:9
prisons 17:4,18
  36:7
probably 14:7
  15:21 40:13
  54:6 56:11
  66:13 83:2
probation 15:4
  15:14 16:2 17:4
  88:8
procedures
39:3
proceeding
  8:10,12,17
process 45:17
produced 12:11
  44:1 45:13,23
  45:25 50:21

72:15,18
Production 11:19
  11:24
Professional
  2:21 20:6,24
  22:8 28:11
  72:1,7 73:14
  78:12 92:5
Professor
  59:25
profile 78:8
program 14:5
programs 17:5
  91:5
protect 82:6
providing 16:10
public 14:22
  15:9 93:16
  95:23
pull 41:12,19,24
  42:5 47:8
  63:11 74:25
Pulliam 20:21
  20:22
puppies 46:12
  88:7 91:3
purposes 2:20
pursuant 2:21
put 47:14 48:13
  48:16 63:20
  64:3,18 68:5
  68:11
putting 65:24
  80:14

_____

Q

qualified 36:16
quarter 32:3,16
quarterly 71:24
question 12:23
  23:17,21 24:8
  28:5,8,23
  29:1,23 33:11
  40:14 41:20
  52:1,2 57:9,18
  57:20 58:10
  58:18,25 62:11

64:1 65:17
83:23 84:1
questions 9:20
  79:21,23 84:5
  84:8,11 85:6,9
  85:21 86:4
  91:9,10,15
quick 21:8,18
  49:22 52:13
quickly 69:21
  75:10
quite 83:23
  88:21

_____

R

R 5:1 6:1
radar 58:8
raised 14:8
raped 46:16
  47:17
raping 48:15
  63:5
reach 86:12,15
read 24:10
  40:15,17,19,21
  40:24 41:12,17
  41:24 42:2
  47:25 48:2,5
  48:6,24 51:7
  53:8,10,11,21
  53:24,24
  54:13,21,23
  55:5,9,20,25
  56:2,15 59:12
  69:22 73:7
  74:2,4 87:25
  91:18 93:14
  94:7,11,15,19
  94:23 95:6
reading 43:4
  54:11 58:13
  60:10 69:25
  73:24
real 52:13
really 23:19 36:1
  36:18 55:25
  56:2 70:25

83:25
reason 38:21
  71:22 76:22
  94:8,12,16,20
  94:24
reasons 91:6
recall 10:21 11:5
  11:7 27:2,11
  33:5 34:7,8
  35:7,7,24
  36:14 37:4
  40:11 43:3
  44:8,20,22
  50:16 56:2
  68:18 69:16
  69:25 70:25
  71:5,10,18
  75:22 78:18
  89:18,21
receive 44:16
  73:25 74:23
received 45:20
  46:6,7 51:16
  52:4
receiving 43:19
  73:5 75:22
recipients 44:4
recognize 77:16
recognized
  61:20,22
recollection
  59:23 60:3
record 7:11 8:19
  9:14,15,16,18
  10:6 21:11,13,14
  21:16 24:10
  43:8 49:25
  50:1,2,4 51:2
  52:13,17,18,19
  52:21 57:12
  60:17 79:12,14
  79:15,17 85:15
  85:16,17,19
  91:20
Recorded 2:16
  2:19 7:3,14
recurring 32:18

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 5:19-cv-06022-BP   Document 93-3   Filed 08/13/21   Page 34 of 39

reduced 92:8
Reed 5:19 9:7
  37:12 59:22
  78:25 84:10
  89:14
reentry 11:6
  20:7 21:6
  88:16 91:3
referred 26:9
regarding 10:23
  11:8 18:25
  27:6 33:6,9,13
  33:17,21,25
  34:4 39:3
  47:13 51:11
  69:12
Registered 2:21
  92:5
regular 21:21
  27:23 32:10
  32:18,21 40:5
  53:20 73:25
regularly 28:17
  73:16 90:22
  90:23
Rehabilitative
  17:6
reinvestment
  15:12
related 44:21
  92:10
relates 41:7
  81:19,22 82:3
relating 58:1
  74:16 78:17
relation 44:2
relationship
  28:16
relative 92:12
reluctant 36:21
rely 35:20 40:6
  41:25 42:3
  77:24 78:10
  81:16 82:24
  84:1
remember 24:7
  27:9 33:8,12

33:16,20,24
  46:24 47:10
  54:2 59:14
  60:9 70:22
  73:5 77:13
  85:22 90:14
  90:16
remote 7:19,25
remotely 8:5,13
  8:15
removed 56:21
render 95:9
repeat 12:23
  33:11 43:23
  65:18
repeatedly
  47:17
rephrase 12:25
  23:23
rephrasing
  28:22
replied 54:24
reply 54:24
report 19:9,11,15
  22:6,7,12,18
  30:12,23
  39:21 44:13,13
  67:4
reported 6:22
  21:19 67:6
reporter 2:21,21
  7:6,24 8:2,3
  63:1 92:1,4,5
reporter's 7:20
reporting 8:12
  22:5 32:11
  40:6 48:1,3
reports 20:3
  21:21,24 22:4
  25:20 27:21
  27:25 28:9,18
  29:7 30:15,16
  30:19,20 31:1
  34:16
represent 9:24
  45:12 62:13
  76:1 77:17

82:2 84:10
represented
  46:5
requested 12:19
  13:9 25:6
Requests 11:19
  11:24
require 55:6
  69:20 70:14
required 23:5
  64:25
requirement
  64:22 66:8
resigned 64:12
resources 17:17
respect 58:21
respond 19:10,11
  83:22,25
response
  69:20,21,23
responses 11:24
  12:3,6,14
responsibilities
  15:20
responsible
  15:24 16:9
  88:6
responsive
  12:18 13:9
restate 52:2
restroom 49:21
  49:22
retaliation 18:11
retire 61:13 62:3
  62:7,7
retired 60:19,23
  60:25
retiring 61:16,21
  61:24
retrieved 72:16
return 93:17
review 11:13,15
  12:2,5 42:20
  55:2 57:4
  69:19 75:11
  79:8
reviewed 12:10

right 15:24
  16:25 26:7
  27:21 41:19
  42:16 43:10
  45:8 47:6
  48:11 52:24
  54:24 55:18
  57:8 59:12
  60:12 67:7
  70:20 75:13
  75:16 77:15
  78:11,18 87:2,5
  87:9 88:21,25
  89:14
ring 26:21
  37:23 76:5
Roediger 6:7
  59:24
roofs 88:10
Ross 4:18 38:12
  72:5,6,23
roundup 4:4,8
  4:10 45:7
  50:21,23 51:10
  52:4,23 55:15
  56:6,7,13 58:2
  58:13
roundups 44:16
routine 32:22
  55:5
routinely 55:4
Roy 30:10,11,12
RPR 6:23 92:20
rules 23:20
run 23:3,5,12,19
rundown 41:6
running 24:6
Ryan 26:20
  27:10

_____
S
_____
S 5:1 6:1
safety 14:22
  15:9 16:10
salesman 13:17
Sara 38:10
satisfied 81:3

saw 48:8 51:5,9
  53:13 55:15
saying 37:4
  47:16 62:12
  71:9
says 13:20 39:8
  46:18 47:22
  50:13 51:5
  57:1 65:2
  69:3 75:16
scan 53:24,25
  55:9
scanned 53:11
  54:7
screen 42:10
  43:6 50:8
  61:5 68:20
  75:3
scrolled 49:13
second 24:1
section 43:15
  43:20 44:6,9
  44:12 72:8,9
see 42:10,12,16
  43:6,12,12
  45:8 46:14
  48:1,2 49:6
  50:7,13,25
  51:14,15 55:9
  56:8,21,25
  57:8 59:3,8
  61:5,7 68:21
  68:23 69:1,5
  70:8 71:20
  73:3,10,16
  75:3,17,23
  76:20 83:3
seeing 44:8
  46:24 47:10
  59:14,15
seen 42:18 45:6
  49:1 50:14,18
  60:13 81:23
  87:5,7
sees 23:15
send 44:20,24
sends 61:15

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 5:19-cv-06022-BP   Document 93-3   Filed 08/13/21   Page 35 of 39

sent 43:18 44:19
45:1,10,11
50:24 55:17
56:7 61:13
68:25 73:1
September
54:13
serve 80:19,23
served 11:22
15:17
services 1:5
6:18,23 7:16
7:23 15:8 17:6
17:7 93:1,6
94:2
set 31:9 46:21
settings 17:15
seven 31:21
Sex 4:12 15:10
sexual 4:6,15
10:23,24,24
27:6,7 50:10
51:6 57:2
59:10 74:16
78:1,17 80:10
sexually 63:17
74:7 77:8
shaking 22:3
share 68:20
SHEET 94:1
sheets 93:13,15
93:17
shortages
36:23
shorthand 7:5
show 61:4,4
72:3
showed 24:5
shown 67:17
side 27:14 28:14
sign 91:18 93:15
signature 7:7
93:13,15,17
94:25
siloed 17:3,7
Sincerely 93:20
single 71:25

88:19
sit 34:7 35:8
40:11 54:25
55:8,11 66:10
68:18 76:10
83:6
sitting 69:15
83:9
situation 68:2
situations
64:25
six 16:4 31:3,10
31:18,18 32:14
55:3 83:11
skim 55:2
69:22
skimmed 54:3
54:23 56:16
73:8
slow 59:15,15
75:9
slowly 50:14
SLU 59:20 60:1
Smith 30:10,11
30:12 60:6
Snow 3:2 5:4
8:23,23 9:12
9:20,24 12:24
17:21 18:13
19:12 21:9,17
23:18 24:7,14
28:6,22 29:4
29:17 30:1
31:16 35:25
39:21 40:8
42:9,21 43:1,5
43:8,10,24
45:14 46:2,3
47:7,10 48:6
48:20,25
49:6,11,16,23
50:5 52:3,9
52:14,22
54:18 56:24
57:5,10,19,21
57:22 58:11
58:23 59:1,2

62:8 63:3,9,14
63:15 64:2,3
65:12,19,21
66:20 68:5
69:9,11 72:14
72:21,22 74:13
74:25 75:14
79:6,18 81:15
82:17 83:1,18
84:3 91:11
Somebody
41:14
somewhat
73:19
soon 83:2
sooner 81:9,14
sorry 14:20 27:3
27:15 49:7,16
63:1 64:1
65:16 69:9
span 83:11
speak 58:17
62:6
speaking 22:19
22:20
speaks 22:21
58:16
specific 28:8
32:8 36:14
41:21 56:3
67:14 81:24
specifically 10:3
23:10 24:24
27:6,24 36:11
66:12 67:16
71:8 81:19,21
82:4,4 87:8
speculate 54:19
speculating
65:12,14
speculation
54:17 65:10
spellings 26:14
spent 17:11
spoke 59:24
60:1,4
spoken 59:20

Springfield 4:14
40:21
St 5:5,8,10 6:19
6:24 40:19
88:11 93:18
Stacey 4:18
72:5,6,23
staff 16:12 17:23
18:2,2,11 19:8
20:2 40:6
43:14,20 44:5
44:10,11 64:19
65:6,24 66:14
70:5,15 73:12
76:3 90:2 91:4
staff-on-inmate
18:23
staff-on-offen...
18:22
staff-on-staff
18:21 19:4
staffed 36:6,11
staffing 36:23
standard 61:14
Standards 20:6
20:24 22:9
28:11 72:2,8
73:15 78:13
standing 58:16
58:21
Star 4:2 40:17
42:13 47:6
start 7:9 63:25
65:19
started 16:22
18:4 25:25
30:7 31:2,3
32:13 61:18
state 5:15,21
6:4 8:4 10:6
15:5,23 16:3,9
16:14,17,21
22:2 36:4
41:6 62:10
92:4,21 95:1
stated 87:4,7
statement 10:9

18:15 77:10
statements
22:22,25
States 1:1,10,18
2:1,9 7:17
stating 8:19
Station 15:11
status 16:18
statute 65:3,22
stay-at-home
14:4
stayed 18:14
step 47:23,23
stepped 65:8
steps 39:4
stipulate 8:20
8:24 9:1,5,7
45:15,22
STIPULATED
7:1
stipulation 7:25
Stltoday 59:8
Stop 43:3
Street 5:16,22
6:5,19,24 93:4
93:18
strike 14:20
24:21
structure 17:16
struggle 18:6
Strum 21:2
Sturm 21:3
39:12 77:25
subject 35:17
48:17 73:2,20
subjects 84:16
submitted
86:16
subscribe 95:11
substance
75:24 95:8
substantially
86:16
substantiated
39:23 40:1,2
77:23 78:1,6
78:16

ALARIS LITIGATION SERVICES
www.alaris.us                    Phone: 1.800.280.3376                    Fax: 314.644.1334
Case 5:19-cv-06022-BP    Document 93-3    Filed 08/13/21    Page 36 of 39

sue 87:23
sued 4:12 27:15
  29:13,13 47:16
  58:4,9 59:10
  67:15 80:10
  87:12,18
  88:20
suits 83:11
summarization
  22:2
summary 30:24
summer 68:7
supervision
  15:10 16:2,5
  17:15
supervisor
  84:21
supervisors
  17:12
supplement
  12:16
Supplemental
  11:24
sure 19:19 20:9
  20:11 21:9
  22:16 27:5
  39:2 49:11,23
  52:3 57:10
  58:11 63:14
  65:19 79:9,10
surprise 35:15
surrounding
  59:21
survey 84:17,21
  84:25 85:3
Susan 20:21
suspend 36:22
Swartz 5:3
swear 7:25 8:21
sweet 13:17
system 16:21
systems 22:1

———————
        T
———————
take 21:7 49:21
  57:6 65:3
  69:21 70:3

75:12 79:7
  85:10
taken 2:20 7:5
  8:5 92:7,12
  93:12 94:4
takes 39:5
talk 22:13 31:24
  32:18,19,22
  70:18 83:2
talked 37:14
  38:22 59:18
  70:23 71:12
  85:23
talking 12:17
  16:19,19 18:18
  18:19 19:18,20
  19:21 20:10
  21:18 44:17
  46:12 70:8
talks 23:6
  32:23 46:19
Taulbee 6:5 9:3
  9:3 83:15 84:5
  91:13
team 19:22,25
  29:7 31:4,19
  81:16 82:24
  84:1
teams 17:12
Technical 52:6
  63:22 82:12
technically
  45:12
tell 14:6 23:22
  36:2 54:7
  66:17 69:25
  70:1,5,15 81:16
  84:1,17
telling 56:14
Teresa 38:16
Teri 2:3 10:3
  25:11 33:6
  38:6 77:7
  82:6 83:7
  93:7 94:3
terminate
  36:22

terms 8:21 9:2
  9:5,8 11:20
Terry 20:19
testified 61:10
  62:14 81:5,22
  89:13
testify 66:10
testifying 82:15
testimony 10:23
  11:11 29:20
  31:13,13 35:16
  40:4 48:23
  51:25 54:12
  56:19 63:8,8
  63:10 73:19
  92:6
Thank 9:23
  24:6 49:19
  72:21 79:22
  82:15 83:20
  84:4 85:7
  91:14,16
Thanks 21:10
thereon 95:10
thereto 92:14
thing 88:19
things 16:7 18:1
  27:14 28:13,15
  32:9,19 35:20
  35:21 40:7
  44:22 70:5,10
  71:16,23 73:15
  78:3 81:2
  82:25 88:4,6
  88:10,12,15,18
think 13:24
  23:21 24:3
  31:17 35:4
  41:13 43:17
  45:4 50:18
  52:3 54:7
  58:20 63:10
  63:12,13 69:18
  70:17 75:1
  76:24 79:6
  82:13 83:4,8
  87:4,7 88:20

88:23 89:12
  91:8,17
thinking 19:24
thinks 83:3
Third 4:12 59:10
thought 24:8
  61:21 67:10
thoughts 82:7
three 31:23
  54:6 56:1 71:9
  71:10 88:8
time 4:12 7:9,12
  12:6 17:11,13
  17:25 27:8
  29:12,13,14
  32:8 33:6,10
  33:14,18,22
  40:16,16,23
  40:23 45:6
  55:8 57:6
  59:10,16
  60:10 62:16
  62:22 64:10
  65:7 68:17,24
  71:25 75:12
  78:13 82:5
  83:11 84:4
  87:2,11,22,25
  89:10
timely 69:20
times 11:1 48:15
  67:16 88:8
title 15:8 59:4,9
  72:11
titles 15:2
today 8:6 9:22
  10:2 11:14 12:5
  12:16 24:16,19
  34:7 35:8
  40:11 66:10
  68:19 69:15
  76:10 79:23
  81:6 83:6 87:2
  89:10
Today's 7:12
Todd 6:3 9:4
  37:7 77:3,9

78:20
told 12:13 28:8
  28:10 29:5
  31:17 34:22
  35:11 65:22
  66:3 70:17
  71:2 74:15
  76:24 80:12
transcribed 7:7
transcript 93:15
transition 16:4
transporting
  62:20
Travis 20:19
treatment 14:5
  91:5
tremendous
  88:9
trial 11:11 54:13
Tribune 40:25
trick 30:21
Trinity 38:8
true 10:9 14:13
  15:17 18:15
  22:22 29:8
  54:8 66:21
  81:2,25 87:15
  88:24 89:1,3,5
  89:9 95:9,13
trust 23:3 24:11
  48:3 65:5
  78:2
trusted 65:23
  70:5
try 28:22 29:4
trying 13:1 30:21
  30:21 31:16
  32:16 43:25
  44:3 49:5
  54:18,19
Tucker 5:9
turn 39:19
turned 39:11
two 13:21 16:4
  27:5 31:22
  43:18 67:18
type 19:16

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 5:19-cv-06022-BP    Document 93-3    Filed 08/13/21    Page 37 of 39

types 64:13,17
typewriting 7:7
  92:8
typical 53:23

**U**
U.S 40:10
ultimate 68:2
ultimately 18:2
unacknowled...
  55:12
understand
  10:2 16:24
  23:17,22
  28:24 29:23
  31:14 47:19
  51:25 58:24
  62:11 65:15
  71:7 77:20
  83:1
understanding
  8:10 87:14
unfolding 71:13
Unfortunately
  90:25
unit 15:10 39:12
  62:20
United 1:1,10,18
  2:1,9 7:17
University 5:8
unprofessional
  78:11
unread 55:11,19
unsubstantiat...
  39:23 40:2
  78:6
unsure 66:6
update 31:4
updates 44:21
Upwards 90:12
use 11:20 49:21
usually 54:22
utility 62:15,19

**V**
v 1:4,13,21 2:4,12
  73:2 93:6,7,7

93:8,8 94:2,2
  94:3,3,3
vacancies 36:12
  36:15,17
vaccines 88:16
vague 12:2
  16:23 18:8
  19:6 23:16,21
  24:8 28:20
  35:17 39:17
  40:14 47:18
  48:16 54:16,19
  56:18 62:5
  65:11 66:15,22
  67:24 74:22
  81:12 82:8,22
  83:14
valued 17:10
vary 86:15
verbally 8:19
versus 7:15
Vevia 39:12,21
  77:25
Vevia's 39:20
Video 2:16,19
  7:3,13
videoconfere...
  2:16,19 5:2,13
  5:19 6:2,22
  7:4 8:7
videographer
  6:17 7:11,22
  9:17 21:11,15
  49:24 50:3
  52:12,16,20
  79:12,16 85:14
  85:18 91:19
violation 78:12
Virginia 1:5
voluntarily
  84:20
voluntary 84:25

**W**
wait 47:23 73:14
waiting 70:14,15
waive 8:16

waived 7:8
walking 35:12
  35:13
Wang 3:3 5:21
  9:6,6 49:7,14
  49:18 65:16
  82:10,14 83:19
  84:8,9 85:6
  91:15
want 9:9 15:1
  19:19 20:9,11
  28:1,7,8,15,23
  30:18,20,25
  36:19 46:11,12
  49:17 52:12
  54:20 55:4
  73:18 75:10
  79:7 85:12
wanted 82:14
wants 34:19
wasn't 50:24
  67:10
Watts 10:16
way 13:6 39:25
  40:1 49:13
  62:1
ways 67:13
we'll 42:9 46:10
  68:17 69:10
  72:23 79:22
we're 7:11 9:17
  16:9,13,14
  17:20 18:18
  19:19 20:10
  21:15 24:3,15
  24:19 45:23
  49:24 50:3
  52:16,20 57:11
  64:16 79:16
  84:22 85:14
  85:18 87:21
  88:5 91:17,19
we've 16:11 17:11
  17:13,16,17
  67:17
wearing 37:2
webinar 36:25

week 45:1,3
  55:3,12,19,20
  69:22 73:8
weekly 28:18
  71:24
weeks 58:6
went 45:15,17
  55:24
West 5:16,22
  6:5 93:4
Western 1:1,10
  1:18 2:1,9 7:18
  10:1
Whiting 2:21
  6:23 7:5,21
  8:2 92:3,20
  93:23
wide 88:6
wind 39:14
wish 81:8,13
  82:18
witness 2:19 7:8
  8:7,11,21 24:2
  24:5 29:3,21
  42:8 92:6
  93:14 94:1,25
Women 4:14
wondering 13:5
  13:8 84:16
words 23:11
  58:17 74:14
work 17:10 24:17
  36:19 59:19
  62:9 86:9
worked 14:21
  24:17 62:15,19
  86:11,15
working 16:11
  16:22 17:11
  59:25
works 14:4 29:8
  72:7,9 78:21
worry 19:13
wouldn't 73:22
written 33:3
wrong 75:2

**X**
X 65:2 66:14

**Y**
yeah 12:24
  23:18 24:2
  29:4 42:21
  43:24 46:3
  47:7,7 49:11,16
  52:15 64:2,16
  72:18 79:10
  81:15 84:3
year 31:22 32:4
years 10:12
  14:10 18:15
  19:3 27:6
  31:22,23 54:6
  56:1 61:20
  71:9,10
Yep 33:12 57:5

**Z**
Zach 8:25 12:11
  12:17,20,20
  13:6 24:8
  40:13 45:14,19
  47:8 57:19
  63:9 67:12
  69:9 72:14
  79:7
Zachary 5:15
  93:3,10
zachary.buch...
  5:17
Zieser 1:20 38:3
  93:7 94:3
Zieser's 33:9,13
Zoom 2:20

**0**
002361 4:20
002367 4:20

**1**
1 4:2 42:10
10 4:19 5:9 75:1
  85:10

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 5:19-cv-06022-BP   Document 93-3   Filed 08/13/21   Page 38 of 39

**10,000-plus**
15:25
**10:03** 49:25
50:1
**10:10** 50:2,4
**10:13** 52:17,18
**10:14** 52:19,21
**10:54** 79:13,14
**11** 4:21
**11:05** 79:15,17
**11:12** 85:15,16
**11:23** 85:13
**11:26** 85:17,19
**11:31** 91:20,21
**11th** 6:19,24
50:23 93:18
**12** 13:8 53:5
**12th** 50:24 51:17
51:20 52:9,24
53:1,7,9,12,13
54:3 55:16,17
56:13,16,21
**13** 93:2
**17th** 61:8
**18** 48:24 54:14
67:5
**19** 67:5 68:22
**19-CV-6161-BP**
2:12
**1983** 10:19
**19th** 55:15 56:6
56:7,8,14,15,17
56:22 57:13
71:8

_____

**2**
**2** 4:4,6 43:9
49:9,15 50:10
51:5,9
**20** 16:2 17:2
48:15 67:13
95:15
**20,000** 13:7
88:8
**2016** 11:7
**2017** 14:13,14,15
14:17 15:16

**16:16**,22 27:1
32:7,12 34:5,6
66:9 67:5
75:6
**2018** 4:3 27:1
34:6 35:6,15
35:23 40:10
42:16 43:1
46:8,19 47:3,11
47:14 48:10,12
48:21 50:11,25
51:10,17,20
52:9,24 53:2
53:6 54:3
55:15 56:6,8
57:13 59:9
60:13 61:8,24
63:18 64:6
67:16,17,19
68:7,11,17,22
69:11,17 71:4,7
71:8,14 73:2,8
80:6 82:20
**2019** 25:17
82:20
**2020** 30:8
32:12 64:12
67:6
**2021** 2:20 7:12
30:6 93:2,12
94:4
**207** 5:16,22 6:5
93:4
**23rd** 75:6
**24** 54:22
**24,000** 16:1
**24/7** 16:5
**28** 2:20 93:12
94:4
**28th** 7:12 73:1,8
**2nd** 59:9

_____

**3**
**3** 4:5,14 49:3,8
50:7 56:24
58:13
**3/19/18** 4:17

**30** 4:3 93:17
**30th** 42:16 43:1
46:18,23 47:2
47:11
**314)471-2032**
5:5
**314)644-2191**
6:20,25
**314)977-2778**
5:10
**3348** 5:4
**3rd** 60:13

_____

**4**
**4** 4:8 43:5 47:3
48:12 49:14,16
50:21 51:2,3
56:13
**42** 4:2
**43** 4:4
**47** 4:20
**49** 4:5
**4th** 45:8,21
46:8 47:14
48:10,24 51:10
57:16 58:2

_____

**5**
**5** 4:9 56:5,25
57:12 58:14
**5:18-CV-0607...**
1:4 7:17
**5:18-CV-0607...**
1:13
**5:18-CV-0610...**
1:21
**5:19-CV-0602...**
2:4
**50** 4:8
**50-some** 14:10
**56** 4:9
**573)751-3321**
5:17,23 6:6
**59** 4:11
**59,000** 16:1

_____

**6**

**6** 4:11 56:24
58:13 59:3
**6/11/18** 4:8
**6/19/18** 4:10
**6/28/18** 4:18
**6/4/18** 4:4
**6/6/16** 4:7
**60** 4:13
**61** 4:21
**63101** 5:10 6:19
6:24 93:18
**63143** 5:5
**65101** 5:16,22
6:6 93:5
**69** 4:16
**6th** 49:2 50:11

_____

**7**
**7** 4:13 60:16
**7/2/2018** 4:12
**7/3/18** 4:15
**7:24** 50:25
**711** 6:19,24
93:17
**72** 4:18
**75** 4:19

_____

**8**
**8** 4:16 49:14,17
51:2 69:10
**8/17/18** 4:22
**830** 92:20
**830(MO)** 6:23
**84** 3:3
**85** 3:4

_____

**9**
**9** 3:2 4:18 72:5
**9:01** 2:20 7:9,13
**9:04** 9:15
**9:05** 46:7
**9:06** 9:16,18
**9:22** 21:12,13
**9:26** 21:14,16

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 5:19-cv-06022-BP   Document 93-3   Filed 08/13/21   Page 39 of 39