# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## ST. JOSEPH DIVISION

| | | |
|---|---|---|
| TERI L. DEAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 19-cv-06022-SRB |
| | ) | |
| EDWARD BEARDEN, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Before the Court is Defendant Anne Precythe's ("Defendant Precythe") Motion for

Summary Judgment.  (Doc. #93.)  For the reasons discussed below, the motion is DENIED.

## I.  BACKGROUND

This lawsuit arises out of the alleged sexual abuse, harassment, and assault of

Plaintiff Terri L. Dean ("Plaintiff") by Corrections Officers Edward Bearden, Elijah L. Mosier,

Todd E. Mustain, and Kevin L. Reed ("Corrections Officer Defendants").  For purposes of

resolving the pending motion, the Court finds the following facts to be undisputed.[1]

Plaintiff is an inmate in the custody of the Missouri Department of Corrections

("MDOC").  Between June 2012 and October 2018, Plaintiff was incarcerated at the Chillicothe

Correctional Center ("Chillicothe"), which is operated by the MDOC.  Plaintiff alleges that she

was sexually abused, harassed, and assaulted by Corrections Officer Defendants during her

incarceration at Chillicothe until she was transferred to the Women's Eastern Reception,

Diagnostic and Correctional Center in Vandalia, Missouri.  Specifically, regarding Corrections

---

[1] The Court notes that the applicable standard requires the disputed facts to be viewed in the light most favorable to the non-moving party, Plaintiff.  The relevant facts are taken from the record, including the parties' briefs and exhibits. Only those facts necessary to resolve the pending motion are discussed, and those facts are simplified to the extent possible.

Officer Defendant Edward Bearden ("Bearden"), Plaintiff claims he sexually abused her at various times between 2012 and 2018, including throughout June 2018 and early July 2018. Defendant Precythe is the Director of the MDOC and has served in that role since February 7, 2017.

Inmate complaints and personnel matters are generally investigated by the Office of Professional Standards. Defendant Precythe typically relies on a team of Division Directors in the Office of Professional Standards to inform her of complaints against MDOC staff. Plaintiff never had specific discussions with Defendant Precythe about Plaintiff's claims of sexual abuse by Corrections Officer Defendants, including the claims against Bearden.

On March 3, 2018, John Ammann, Plaintiff's counsel, emailed Defendant Precythe, stating that "we hope you are following the Bearden investigation in Chillicothe." (Doc. #101-8, p. 2.)[2] On May 29, 2018, Karen Keil ("Keil"), a former MDOC inmate, filed a lawsuit against Bearden and her former counselor, John Dunn ("Dunn"), alleging they sexually assaulted her at Chillicothe. On June 5, 2018, Lynnsey Betz ("Betz"), another Chillicothe inmate, filed a second lawsuit with similar allegations against Bearden.

At all relevant times, Vevia Sturm ("Sturm") was the Prison Rape Elimination Act ("PREA") Manager for the MDOC. Sturm's direct supervisor was Matt Briesacher ("Briesacher"), who is the Director of the Office of Professional Standards. Sturm testified that Briesacher would be informed when a corrections officer is sued by a female inmate, and that Briesacher reports to Defendant Precythe. Briesacher testified that he "did not have communication nor communications with Director Precythe regarding specific allegations by Teri Dean." (Doc. #93-2, p. 1.) Defendant Precythe had general discussions about lawsuits

---

[2] All page numbers refer to the pagination automatically generated by CM/ECF.

involving Chillicothe staff sexually abusing inmates. Precythe does not recall the specifics of those discussions, including whether they involved Bearden's conduct or Betz's and Keil's lawsuits, such discussions occurred between March 2018 and March 2019. Defendant Precythe admits she would have been aware of sexual assault lawsuits against Bearden by June 2018.

Karen Pojmann, the MDOC Director of Communications, emails weekly "News Roundup" emails to MDOC staff, including Defendant Precythe. (Doc. #93-3, p. 11.) On June 4, 2018, Defendant Precythe received a News Roundup with included four articles discussing Keil's allegations against Bearden and Dunn. On June 10, 2018, Defendant Precythe received another News Roundup which included two more articles detailing Keil's lawsuit as well as Betz's lawsuit against Bearden. An excerpt from the *Associated Press* noted that Dunn "pleaded guilty last year to sexual conduct with a prisoner." (Doc. #101-9, p. 5.) On June 19, 2018, Defendant Precythe received another News Roundup. This email included an article detailing that Dunn had previously pled guilty to sexual conduct with a prisoner at Chillicothe and that a pending lawsuit alleged he and Bearden raped an inmate.

Plaintiff subsequently filed this lawsuit on February 22, 2019. Among various claims against Corrections Officer Defendants, Plaintiff asserts a 42 U.S.C. § 1983 claim against Defendant Precythe in her individual capacity for failure to protect Plaintiff from Corrections Officer Defendants' misconduct in violation of the Eighth Amendment (Count V in the First Amended Complaint). Defendant Precythe now moves for summary judgment on the § 1983 claim against her, arguing she was not aware of a substantial risk of harm to Plaintiff and is entitled to qualified immunity. Plaintiff opposes the motion. The Court addresses the parties' arguments below.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of identifying "the basis for its motion, and must identify those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (cleaned up). If the moving party makes this showing, "the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial." *Id.* (quotation marks omitted). If there is a genuine dispute as to certain facts, those facts "must be viewed in the light most favorable to the nonmoving party." *Id.*

## III. DISCUSSION

### A. Failure to Protect in Violation of 42 U.S.C. § 1983

"In order to establish an Eighth Amendment failure-to-protect claim, a plaintiff must show that the prison official was deliberately indifferent to a 'substantial risk of serious harm.'" *Whitson v. Stone Cnty. Jail*, 602 F.3d 920, 923 (8th Cir. 2010) (quoting *Young v. Selk*, 508 F.3d 868, 872 (8th Cir.2007)). "[A] prisoner must satisfy two requirements, one objective and one subjective." *Id.* "First, the deprivation alleged must be, objectively, sufficiently serious[.]" *Farmer v. Brennen*, 511 U.S. 824, 834 (1994). "The second requirement is subjective and requires that the inmate prove that the prison official had a 'sufficiently culpable state of mind.'" *Whitson*, 602 F.3d at 923 (quoting *Farmer*, 511 U.S. at 834). "In prison conditions claims, which include [] failure-to-protect allegations . . . the subjective inquiry regarding an official's

4

state of mind is one of 'deliberate indifference' to inmate health or safety." *Id.* "An official is deliberately indifferent if he or she actually knows of a substantial risk and fails to respond reasonably." *Id.* "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence[.]" *Farmer*, 511 U.S. at 842. "[A]n Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite [her] knowledge of a substantial risk of serious harm." *Id.*

Defendant Precythe argues the § 1983 claim against her should be dismissed because she did not have actual knowledge of a risk of harm to Plaintiff and she did not act with deliberate indifference. Specifically, Defendant Precythe contends she relies on the MDOC's Office of Professional Standards and Division Directors to investigate inmate claims of abuse and act accordingly. Defendant Precythe argues she had no personal knowledge of Plaintiff's claims until she filed this lawsuit, and that Plaintiff never personally spoke with Defendant Precythe about her claims. Plaintiff argues that she need not demonstrate Defendant Precythe knew of a specific harm directed solely to Plaintiff, but instead that Defendant Precythe was aware of a substantial risk of sexual assault of incarcerated women at Chillicothe and was deliberately indifferent to that risk. The Court agrees with Plaintiff.

As set forth above, Plaintiff need only demonstrate that Defendant Precythe was aware of a substantial risk of harm that corrections officers at Chillicothe would sexually assault inmates, not that the specific corrections officers would specifically assault Plaintiff. *Id.* at 843 ("[I]t does not matter whether the risk comes from a single source or multiple sources, any more than it matters whether a prisoner faces an excessive risk of attack for reasons personal to [her] or

because all prisoners in [her] situation face such a risk."); *see also Krein v. Norris*, 309 F.3d 487, 491 (8th Cir. 2002) ("[A] plaintiff is not required to allege and prove that the defendant or defendants specifically knew about or anticipated the precise source of the harm.").

For the reasons discussed below, the record demonstrates a genuine dispute of whether Defendant Precythe had actual knowledge of a substantial risk of harm to inmate sexual abuse by corrections officers at Chillicothe.  For example, Defendant Precythe admits that between March 2018 and March 2019, she had discussions about lawsuits alleging corrections officers sexually abused inmates at Chillicothe with members of MDOC's legal team.  (Doc. #101-2, p. 2.)  On March 19, 2018, Defendant Precythe received an email from Plaintiff's legal counsel which stated that "we hope you are following the Bearden investigation in Chillicothe."  (Doc. #101-8, p. 3.)  On June 4, June 10, and June 19, 2018, Defendant Precythe received emails detailing numerous news articles which described that Chillicothe inmates filed lawsuits against Bearden alleging he sexually assaulted them.  One of the defendants in those lawsuits, Dunn, had already pled guilty to sexual conduct with a prisoner while at Chillicothe.  Defendant Precythe argues Dunn's conduct is immaterial because he is not a defendant in this lawsuit, but, as previously explained, Plaintiff need not demonstrate that Defendant Precythe knew of the precise source of harm and victim.  The Court finds that the known lawsuits against Bearden, in conjunction with Dunn's guilty plea, is circumstantial evidence which creates a genuine issue of fact of whether Defendant Precythe knew of a substantial risk of sexual assault against female inmates at Chillicothe.

Additionally, Sturm testified that when a female offender sues a corrections officer, that is escalated to Matt Briesacher, the Director of the Office of Professional Standards, who reports directly to Defendant Precythe.  While Defendant Precythe attaches an affidavit in which

6

Briesacher testifies he never discussed any of Plaintiff's allegations with Defendant Precythe, the Court agrees with Plaintiff that the affidavit "says nothing to address the issue of whether he had any discussions with Defendant Precythe regarding allegations by Karen Keil or Lynnsey Betz, or their lawsuits." (Doc. #101, pp. 15-16.)

In the light most favorable to Plaintiff, circumstantial evidence supports the inference that Defendant Precythe was aware that female inmates at Chillicothe were subjected to a substantial risk of sexual assault by corrections officers. This risk was documented through lawsuits, news articles, the guilty plea of one of the defendants to sexual conduct with a prisoner a year prior, and was discussed by MDOC staff, including Defendant Precythe. Taken together these facts are similar to the analysis in *Farmer*, which held that:

> "evidence [which shows] a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and . . . the defendant-official being sued had been exposed to information concerning the risk and thus 'must have known' about it . . . could be sufficient to permit a trier of fact to find that the defendant-official had actual knowledge of the risk.

*Farmer*, 511 U.S. at 843-43. The record supports the inference that Defendant Precythe was aware of a substantial risk of sexual assault.

Further, Defendant Precythe argues Plaintiff never reported any retaliation or abuse. However, whether Plaintiff reported the sexual abuse is not dispositive because Plaintiff's claim against Defendant Precythe "does not arise from [Corrections Officer Defendants'] attack per se, but arises from [Plaintiff's] allegation that [Defendant Precythe was] deliberately indifferent to a known substantial risk that such an attack would occur." *Whitson*, 602 F.3d at 924 (citation and quotation marks omitted). Further, while Defendant Precythe argues she was not aware of whether the allegations against Bearden were substantiated, "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious . . . . [She

7

does not] escape liability if the evidence showed that [she] merely refused to verify underlying facts[.]" *Farmer*, 511 U.S. at 842.

At the least, the record supports the inference that Defendant Precythe has knowledge of facts which shows a substantial risk of inmate harm, yet Defendant Precythe refused to verify them. The Court agrees with Plaintiff that "Defendant Precythe offers no evidence she did anything" to respond to the substantial harm posed by Bearden. (Doc. #101,p. 30.) The facts, specifically the evidence of Defendant Precythe's knowledge of a substantial risk of harm at Chillicothe, and her "fail[ure] to respond" might have been unreasonable and amount to deliberate indifference. *Whitson*, 602 F.2d at 923. The Court finds Plaintiff has established the existence of a genuine issue of material fact on whether Defendant Precythe was aware of a substantial risk of harm to Plaintiff and whether her lack of response was reasonable.

### B. Qualified Immunity

Defendant Precythe argues she is entitled to qualified immunity because she was not put on notice that her conduct, at the time of the alleged deprivation of rights, would violate Plaintiff's clearly established Constitutional rights. Plaintiff argues that at the time of her abuse, the Eighth Circuit had clearly established that an inmate had a right to not be sexually assaulted by prison guards. Plaintiff also argues that Defendant Precythe's knowledge of Bearden's assaults on other prisoners indicates that Defendant Precythe knew her failure to remove Bearden would facilitate a substantial risk of harm.

"Qualified immunity shields state officials from both civil liability and the burdens of litigation unless their conduct violates a clearly established right of which a reasonable person would have known." *Patterson v. Kelley*, 902 F.3d 845, 851 (8th Cir. 2018). "Government officials are entitled to qualified immunity unless (1) the plaintiff has asserted a violation of a

constitutional right; (2) the alleged right is clearly established; and (3) there exists a genuine issue of material fact as to whether the official would have known that [her] alleged conduct would violate the plaintiff's clearly established right." *Marsh v. Phelps Cnty.*, 902 F.3d 745, 754 (8th Cir. 2018).

As a threshold issue, "as of December 14, 2002, it was clearly established that a prison official could be held liable under § 1983 for exhibiting deliberate indifference to a substantial risk that a detainee would be sexually assaulted by a guard." *Kahle v. Leonard*, 477 F.3d 544, 554 (8th Cir. 2002). Plaintiff asserts a violation of this Constitutional right. Accordingly, Plaintiff has established the first two conditions set forth in *Marsh*. Whether Defendant Precythe, in her supervisory role, is entitled to qualified immunity thus rests on whether she would have known her alleged conduct, or, in this case, the lack of conduct, would violate Plaintiff's clearly established right.

"Qualified immunity from supervisory liability turns on what [the supervisor] knew of [the correctional officer's] actions." *Marsh*, 902 F.3d at 755. "The supervisor must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what [she] might see." *Ripson v. Alles*, 20 F.3d 805, 809 (8th Cir. 1994). On this point, the Court finds Defendant Precythe's arguments are mostly reiterations of those she makes regarding deliberate indifference; that is, she did not have actual knowledge or was not aware of the substantial risk of sexual assault imposed by Bearden or other correctional officers in Chillicothe. However, as previously discussed, there exists a genuine issue of material fact as to whether Defendant Precythe was aware of the substantial risk of harm, as Plaintiff introduced evidence which supports such an inference. In turn, whether Defendant Precythe knew that Plaintiff's

Constitutional rights would be violated by failing to remove Bearden earlier from Chillicothe is genuinely disputed.

Defendant Precythe also argues that she "reasonable relied on MDOC Division Directors who are familiar with their assigned staff and facilities . . . to manage personnel decisions." (Doc. #107, p. 19.)  However, as discussed above, Plaintiff has identified evidence which indicates that Defendant Precythe's failure to respond and wait for her staff to act amounted to turning a "blind eye" in the face of a substantial risk of harm.  *Ripson*, 20 F.3d at 89.  Defendant Precythe is thus not entitled to qualified immunity at the summary judgment stage.  Defendant Precythe's motion for summary judgment is denied.

### IV.  CONCLUSION

Accordingly, it is **ORDERED** that Defendant Anne Defendant Precythe's Motion for Summary Judgment (Doc. #93) is DENIED.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
STEPHEN R. BOUGH
UNITED STATES DISTRICT JUDGE

Dated:  September 13, 2021